IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DANNY L. WALKINGSTICK, WHITNYE A. FORT, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | JURY DEMAND |
| v. | Case No. _____ |
| SIMMONS BANK, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs, Danny L. Walkingstick and Whitnye A. Fort, on behalf of themselves and all others similarly situated, by counsel, allege:

### INTRODUCTION

1. Plaintiffs bring this action on behalf of themselves and a class of all others similarly situated against Defendant Simmons Bank ("Simmons") over the improper assessment and collection of Overdraft Fees, including fees on accounts that were never actually overdrawn, practices that are in breach of Simmons's contracts and its duty of good faith and fair dealing and have unjustly enriched Simmons.

2. Simmons charges accountholders $35 per Overdraft Fee on accounts that were never actually overdrawn.

1

3. Through the imposition of these fees, Simmons has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue. Plaintiffs, like thousands of others, have fallen victim to Simmons's overdraft fee revenue maximization scheme. Since November 2017, Simmons charged Ms. Fort over $3,700 in Overdraft fees; indeed, in one month alone, Simmons charged Ms. Fort $560 in Overdraft fees. And, since October 2018, Simmons charged Mr. Walkingstick nearly $600 in Overdraft Fees.

4. Plaintiffs assert this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated, for damages and other relief arising from Simmons's routine practice of assessing Overdraft Fees on transactions that did not overdraw checking accounts.

**PARTIES**

5. Plaintiff Danny L. Walkingstick is a citizen and resident of the State of Missouri, residing in Springfield, and has a checking account with Simmons.

6. Plaintiff, Whitnye A. Fort, is a citizen and resident of the State of Arkansas and has a checking account with Simmons.

7. Defendant Simmons Bank is an Arkansas-chartered bank with 200 locations in Arkansas, Colorado, Illinois, Kansas, Missouri, Oklahoma, Tennessee, and Texas. Simmons is incorporated in Arkansas and its headquarters and principal place of business is in Pine Bluff, Arkansas; therefore, it is a citizen of Arkansas. Simmons

provides retail banking services to its customers, including Plaintiffs and members of the proposed Class.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a citizen of a different state than Simmons.

9. Simmons regularly and systematically conducts business and provides retail banking services in this district, and provides retail banking services to its customers, including Plaintiff Walkingstick and members of the putative class. As such, it is subject to the jurisdiction of this Court.

10. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Simmons is subject to personal jurisdiction in this Court and regularly conducts business within this district through its multiple branches located within this district. In addition, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

# FACTS

**Simmons Assesses Overdraft Fees on Accounts That Are Not Overdrawn.**

11. Plaintiffs have checking accounts with Simmons and opted in to Simmons's standard overdraft practices.

12. Simmons issues debit cards to its checking account customers, including Plaintiffs, which allows customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

13. Pursuant to its standard account agreement, Simmons charges Overdraft Fees (currently in the amount of $35) for debit card transactions that purportedly result in an overdraft.

*Mechanics of a debit card transaction*

14. A debit card transaction occurs in two parts.

15. First, when a merchant runs a debit card, authorization for the purchase amount is instantaneously obtained by the merchant from Simmons.

16. At that time, Simmons verifies that the customer's account is valid and that available funds are sufficient to cover the transaction amount. Simmons then sets aside funds in the checking account to cover that specific transaction. As a result, the customer's account always has sufficient available funds to cover that transaction.

17. Second, sometime thereafter and possibly several days after the transaction was initiated, funds are actually transferred from the customer's account to the merchant's account, a process referred to in the banking industry as "posting" or "settling."

18. Despite having previously put aside sufficient available funds for debit card transactions, Simmons still assesses $35 Overdraft Fees on these debit card transactions at the time of "posting" or "settling," in violation of its contractual promises not to do so.

19. Simmons improperly assesses these fees under a systemic policy that the Consumer Financial Protection Bureau ("CFPB") has characterized as deceptive:

> [A] financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted an overdraft and an additional overdraft fee was charged.

These fees "caused harm" to consumers and the CFPB found that certain entities "acted unfairly when they charged fees in the manner described above." This is because "[c]onsumers likely had no reason to anticipate this practice, which was not appropriately disclosed," and "[t]hey therefore could not reasonably avoid incurring the overdraft fees charged." Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights" https://files.consumerfinance.gov/f/201503_cfpb_supervisory-highlights-winter-2015.pdf.

*Simmons Account Documents*

20. Plaintiffs' checking accounts with Simmons were at all relevant times governed by Simmons's standardized form contract for deposit accounts, the material terms of which are drafted by Simmons, amended by Simmons from time to time at its convenience and complete discretion, and imposed by Simmons on all of its deposit account customers.

21. Simmons's checking account contract documents discussing Overdraft Fees promised that Simmons will only assess Overdraft Fees on "withdrawal requests that overdraw your account." (Ex. A, Personal Terms and Conditions, at 5.) Simmons promises to only assess an Overdraft Fee "if there are insufficient funds in your account." (*Id.* at 23.)

22. But for those debit card transactions that Simmons authorized, which were immediately deducted from a positive account balance and held aside for payment of that same transaction, there was not an overdrawn account and there are always sufficient funds to pay those transactions, yet Simmons assesses Overdraft Fees on them anyway.

23. Simmons is not authorized by contract to charge Overdraft Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

*Reasonable Consumers Understand Debit Card Transactions are Debited Immediately*

24. Simmons's assessment of Overdraft Fees on transactions that have not overdrawn an account is inconsistent with immediate withdrawal of funds for debit card transactions. This is because if funds are immediately debited, they cannot be depleted

by intervening, subsequent transactions. If funds are immediately debited, they are necessarily applied to the debit card transactions for which they are debited.

25. Simmons was and is aware that this is precisely how its accountholders reasonably understand debit card transactions work.

26. Simmons knows that consumers prefer debit cards for these very reasons. Consumer research shows that consumers prefer debit cards as budgeting devices because they don't allow debt like credit cards as the money comes directly out of the checking account.

27. Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *See* https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card (last visited May 3, 2018).

28. This is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States has increased by approximately 1.4 million in the last five years, and with that increasing ubiquity, consumers have (along with credit cards) viewed debit cards "as a more convenient

option than refilling their wallets with cash from an ATM." Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases*, MARKETWATCH, March 23, 2016, http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

29. Not only have consumers increasingly substituted from cash to debit cards, but they believe that a debit card purchase is the functional equivalent to a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

30. Simmons was aware of a consumer perception that debit transactions reduce an account balance *in a specified order*—namely, the order the transactions are actually initiated—and its account agreement only supports this perception.

### *Simmons Imposed Improper Overdraft Fees on Plaintiffs*

31. Plaintiffs have checking accounts with Simmons.

32. On numerous occasions since the inception of his account, including but not limited to October 2, 2018, Plaintiff Walkingstick was assessed an Overdraft Fee in the amount of $35. This is despite the fact that this transaction was previously authorized on sufficient funds.

33. On numerous occasions since the inception of her account, including but not limited to March 12, 2018, March 21, 2018, and August 28, 2018, Plaintiff Fort was assessed an Overdraft Fee in the amount of $35. This is despite the fact that these transactions were previously authorized on sufficient funds.

34. Contrary to Simmons's account agreement, the Overdraft Fees were charged even though the Plaintiffs' accounts were sufficient to cover the transactions. In short, Plaintiffs had sufficient funds to cover the transactions that supposedly caused Overdraft Fees on numerous occasions.

## CLASS ALLEGATIONS

35. Plaintiffs bring this action on behalf of themselves and as a class action on behalf of the following proposed class (the "Class"):

> All Simmons Bank checking account holders who were assessed an overdraft fee that was authorized into a positive available balance.

36. Plaintiffs reserve the right to modify or amend the definition of the Class as this litigation proceeds.

37. Excluded from the Class are Simmons, its parents, subsidiaries, affiliates, officers and directors, any entity in which Simmons has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

39. The Class consist of thousands of members, such that joinder of all Class members is impracticable.

9

40. There are questions of law and fact that are common to the Class members that relate to Simmons's practice of charging Overdraft Fees on transactions that were authorized into a positive balance.

41. The claims of the Plaintiffs are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiffs have no interests that are antagonistic to the interests of the Class members.

42. The Plaintiffs are adequate representatives of the Class and have retained competent legal counsel experienced in class actions and complex litigation.

43. The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on Simmons's conduct. The predominant questions of law and fact in this litigation include, but are not limited to, whether Simmons:

- Imposed Overdraft Fees on transactions authorized into a positive balance;
- Breached its contract with Plaintiffs and Class members;
- Breached the covenant of good faith and fair dealing imposed on it; and
- Was unjustly enriched when it imposed Overdraft Fees on transactions authorized into a positive balance.

44. Other questions of law and fact common to the Class include the proper method or methods by which to measure damages.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Simmons, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Simmons's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of Simmons's conduct and the claims they may possess.

46. It appears that other persons who fall within the Class definitions set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

47. This proposed class action does not present any unique management difficulties.

11

## COUNT I: BREACH OF CONTRACT
**(*On behalf of the Class*)**

48. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth below.

49. Plaintiffs and Simmons have contracted for bank account deposit, checking, and debit card services. (*See* Ex. A).

50. Simmons misconstrued in the account documents its true debit card processing and Overdraft Fee practices and breached the express terms of the account documents.

51. No contract provision authorizes Simmons to charge Overdraft Fees on debit card transactions that were authorized into a positive available balance.

52. Simmons breached the terms of its account documents by charging Overdraft Fees on transactions that were authorized into a positive available balance, but whose available balances were allegedly insufficient at the time the transactions posted or settled.

53. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

54. Plaintiffs and members of the Class have sustained damages as a result of Simmons's breach of the contract.

# COUNT II: BREACH OF THE COVENANT OF
# GOOD FAITH AND FAIR DEALING
### (*On Behalf of the Class*)

55. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth below.

56. Plaintiffs and Simmons have contracted for bank account deposit, checking, and debit card services. (*See* Ex. A).

57. A duty of good faith and fair dealing is imposed on contracts between banks and their customers because banks are inherently in a superior position to their checking account holders because from a superior vantage point they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

58. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

59. Simmons has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

60. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the account documents.

61. Plaintiffs and members of the Class have sustained damages as a result of Simmons's breach of the covenant of good faith and fair dealing.

## COUNT III: UNJUST ENRICHMENT
**(*On Behalf of the Class*)**

62. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth below.

63. Plaintiffs have contracted for bank account deposit, checking, and debit card services. (*See* Ex. A).

64. Plaintiffs and members of the Class conferred a benefit on Simmons at the expense of Plaintiffs and members of the Class when they paid improper Overdraft Fees.

65. Simmons appreciated this benefit in the form of the substantial revenue that Simmons generates from the imposition of such fees.

66. Simmons has accepted and retained such fees under inequitable and unjust circumstances.

67. Simmons should not be allowed to profit or enrich itself inequitably and unjustly at Plaintiffs' and the Class's expense and should be required to make restitution to Plaintiffs Class.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Restitution of all Overdraft Fees paid to Simmons by Plaintiffs and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

C. Actual damages in an amount according to proof;

D. Pre-judgment interest at the maximum rate permitted by applicable law;

E. Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

F. For attorneys' fees under the common fund doctrine, and all other applicable law; and

G. Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs, by counsel, demand trial by jury.

Dated: May 22, 2019

Respectfully submitted,

**PAUL LLP**

 /s/ *Ashlea G. Schwarz*
Ashlea G. Schwarz, Mo. Bar 60104
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
T: (816) 984-8100
Ashlea@PaulLLP.com

Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
T: (317) 636-6481
ltoops@cohenandmalad.com

Christopher D. Jennings
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
T: (501) 372-1300
chris@yourattorney.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH
  & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
gerards@bsjfirm.com

*Counsel for Plaintiffs and the Proposed Plaintiff Class*