IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DANNY L. WALKINGSTICK,                    )
WHITNYE A. FORT, on behalf of the         )
themselves and all other similarly        )
situated,                                 )
                                          )
        Plaintiffs,                       )
                                          )
        v.                                )
                                          )
SIMMONS BANK,                             )
                                          )
        Defendant.                        )

SUGGESTIONS IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

Introduction ............................................................................................................... 1

Statement of Facts .................................................................................................... 2

I.   The parties vigorously litigated this case. ........................................................ 2

II.  The parties engaged in hard-fought negotiations, including several
     mediation sessions, to reach the proposed Settlement.................................... 3

III. The Settlement provides numerous benefits to Class Members...................... 4

     A.   Agreed certification of the Settlement Class....................................... 4

     B.   Cash Settlement Fund and Forgiven Charge Offs................................ 5

     C.   Notice to the Class............................................................................... 5

Suggestions in Support of the Motion...................................................................... 6

I.   Legal standard for preliminary approval and notice........................................ 6

     A.   In the "preliminary approval" stage, the Court determines only
          whether it "will likely be able" to grant final approval to the
          settlement and "will likely be able" to certify a class for judgment
          on the settlement................................................................................. 6

          1.   The Court evaluates whether it "will likely be able to" grant
               final approval by preliminarily determining whether the
               settlement appears "fair, reasonable, and adequate" based on
               the factors in Rule 23(e)(2) and the *Van Horn* factors. ............... 6

          2.   The Court evaluates whether it "will likely be able to" certify
               the class for purposes of entering judgment on a settlement
               by determining whether the requirements of Rule 23(a) and
               (b)(3) are met................................................................................... 9

     B.   Once a court grants preliminary approval, it must direct notice to
          the class, set deadlines for objections and opt-outs, and set a date
          for a final approval hearing. ................................................................ 11

II.  The Court should grant preliminary approval to the Settlement, direct
     notice to the Class, set deadlines to object and opt out, and schedule a
     final approval hearing on the Settlement approximately 120 days after
     preliminary approval. ...................................................................................... 12

     A.   The Court should grant preliminary approval because it "will likely
          be able to" grant final approval based on the Rule 23(e)(2) and *Van
          Horn* factors. ........................................................................................ 13

     B.   The Court should grant preliminary approval because it will "likely
          be able to" certify the Class for judgment on the Settlement based
          on the requirements of Rule 23(a) and 23(b)(3). ................................. 15

i

C. The Court should approve the notice plan, set the deadlines for opt-outs and objections, and set a final approval hearing date approximately 120 days after entry of the Preliminary Approval Order. ................................................................................. 17

Conclusion ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
  84 F.3d 1525 (8th Cir. 1996) ............................................................. 10, 16

*Ark. Educ. Ass'n v. Bd. of Educ.*,
  446 F.2d 763 (8th Cir. 1971) ............................................................. 10, 15

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988),
  *aff'd*, 899 F.2d 21 (11th Cir. 1990) ............................................................. 8

*Carpe v. Aquila, Inc.*,
  224 F.R.D. 454 (W.D. Mo. 2004) ............................................................. 10

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................................. 9

*Hand v. Beach Entm't KC, LLC*,
  No. 4:18-CV-00668-NKL, 2020 WL 3163672 (W.D. Mo. Apr. 27, 2020) ... 10, 11, 15, 16

*Huyer v. Wells Fargo & Co.*,
  314 F.R.D. 621 (S.D. Iowa 2016) ............................................................. 7, 8, 9

*In re Pre-Filled Propane Tank Antitrust Litig.*,
  No. 14-02567-MD-W-GAF, 2019 WL 7160380 (W.D. Mo. Nov. 18, 2019) ............ 7, 9

*In re Uponor, Inc.*,
  716 F.3d 1057 (8th Cir. 2013) ............................................................. 8

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) ............................................................. 9

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
  921 F.2d 1371 (8th Cir. 1990) ............................................................. 9

*Luiken v. Domino's Pizza, LLC*,
  705 F.3d 370 (8th Cir. 2013) ............................................................. 10, 15

*Marshall v. Nat'l Football League*,
  787 F.3d 502 (8th Cir. 2015) ............................................................. 8, 9

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ............................................................. 9, 13

iii

*Postawko v. Mo. Dep't of Corr.*,
910 F.3d 1030 (8th Cir. 2018) ............................................................... 10

*Stuart v. State Farm Fire & Cas. Co.*,
910 F.3d 371 (8th Cir. 2018) ........................................................... 11, 16

*Swinton v. SquareTrade, Inc.*,
No. 4:18-CV-00144-SMR-SBJ, 2020 WL 1862470 (S.D. Iowa Apr. 14, 2020) ......... 6

*Van Horn v. Trickey*,
840 F.2d 604 (8th Cir. 1988) ......................................................... passim

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................... 10, 16

## Rules

Fed. R. Civ. P. 23(a) ............................................................. 9, 11, 12, 15

Fed. R. Civ. P. 23(b) ............................................................. 9, 11, 12, 15

Fed. R. Civ. P. 23(c) ................................................................. 11, 12, 17

Fed. R. Civ. P. 23(e) .................................................................... passim

# INTRODUCTION

After engaging in motion practice over the legal claims; taking significant discovery into the underlying facts, including production of thousands of pages of documents and numerous depositions; briefing class certification; having an expert project damages; participating in multiple mediation sessions with Judge Morton Denlow (ret.); and engaging in months of additional negotiations, the parties reached the proposed class action Settlement Agreement and Release (the "Settlement") (attached as Exhibit 1 to the Declaration of Lynn A. Toops in Support of the Unopposed Motion for Preliminary Approval of Class Action Settlement ("Toops Decl.")) that is now before the Court for preliminary approval under Federal Rule of Civil Procedure 23(e)(1). The Settlement, which was the result of hard-fought, arm's-length negotiations, provides a cash Settlement Fund of $3,250,000 for the proposed Class and provides for Defendant to forgive additional uncollected fees of Class Members. The Settlement represents a recovery of a significant portion of the projected damages, and the Settlement monies will be distributed to the Class Members without the need for them to complete a claim form or take any additional steps. The Settlement represents an excellent result for the Class in this litigation, and the Court should grant preliminary approval to the Settlement. Granting preliminary approval will allow notice of the Settlement to be distributed to the Class and for a hearing to be scheduled to consider whether to grant final approval after considering any feedback from Class Members.

# STATEMENT OF FACTS

## I.      The parties vigorously litigated this case.

On May 22, 2019, Plaintiffs filed their original Class Action Complaint ("Initial Complaint") alleging that Defendant Simmons Bank had a "systemic policy" of charging overdraft fees on debit card transactions that were authorized on sufficient funds but later settled negative due to intervening transactions on their checking accounts.  Plaintiffs twice amended their complaint, filing an Amended Class Action Complaint on August 9, 2019 (ECF No. 23), and then filing the operative, Second Amended Complaint on October 2, 2019 (ECF No. 39) ("Second Amended Complaint"). In the Second Amended Complaint, Plaintiffs replaced their original theory with allegations that Defendant purportedly charged fees "on accounts that were never actually overdrawn." *Id.* The Second Amended Complaint identifies nine ATM or debit card transactions—one for Plaintiff Walkingstick and eight for Plaintiff Fort—on which Plaintiffs claim Defendant charged fees (the "Challenged Fees") when Plaintiffs' accounts were "not . . . negative." *Id.* The Second Amended Complaint asserts three claims on this basis: (i) Breach of Contract; (ii) Breach of the Covenant of Good Faith and Fair Dealing; and (iii) Unjust Enrichment.  *Id.*

Plaintiffs took the position, through their expert reports and class certification filings, that their accounts were not overdrawn because the customer's ledger balance was positive following the triggering transactions. Plaintiffs maintain that Defendant was not authorized under its account agreements to use customers' available balance in determining when to assess the Challenged Fees.

After full briefing, the Court denied a motion to dismiss filed by Defendant. ECF No. 59.

The Parties have conducted extensive discovery in this case. Toops Decl. ¶ 2. Defendant has produced over 7,600 pages of documents, two expert reports, and millions of rows of account data. *Id.* Plaintiffs have taken the depositions of Defendant's corporate representatives, Lisa Hunter and Marty Casteel, as well as Defendant's expert witnesses, Sonja Kwon and Bob Birmingham. *Id.* Defendant has likewise taken the depositions of Plaintiffs Fort and Walkingstick, and of Plaintiffs' expert witness, Arthur Olsen. *Id.* The parties have briefed class certification, which has not yet been ruled upon. ECF Nos. 109–135.

## II. The parties engaged in hard-fought negotiations, including several mediation sessions, to reach the proposed Settlement.

On March 2, 2021, the Court granted the Parties' joint motion to stay the litigation pending mediation scheduled for April 19, 2021. ECF Nos. 123, 126. On April 19, 2021, the Parties participated in good faith in the scheduled mediation (the "Mediation") before Judge Morton Denlow (ret.) (the "Mediator"). Toops Decl. ¶ 3. At the conclusion of the Mediation, the Parties arrived at a settlement in principle. *Id.*

For several weeks after the Mediation, the parties worked on memorializing the settlement in principle into a written term sheet. *Id.* On July 26, 2021, the parties fully executed a written term sheet ("Term Sheet"), which memorialized the parties' good-faith intention to resolve this litigation, subject to the parties

executing a formal settlement agreement setting forth all of the details of settlement. *Id.*

The details turned out to be tricky.

Eventually, the parties participated in additional mediation sessions and calls with the Mediator to try to bridge their differences on the final detailed terms of settlement. *Id.* In addition, the parties engaged in exhaustive direct discussions and negotiations. *Id.* Throughout this process, the Court extended the deadlines for the parties to submit a final agreement for approval. ECF Nos. 141, 143, 145, 147, 151.

Finally, on May 4, 2022, the parties executed the Settlement.

## III. The Settlement provides numerous benefits to Class Members.

The Settlement provides, in exchange for a release of Defendant, for numerous benefits to be provided to the Class Members, including the following:

### A. Agreed certification of the Settlement Class.

Defendant agrees, for purposes of Settlement, that certification of a Class is appropriate under Rules 23(a) and (b)(3), defined as:

> All current and former holders of a Simmons Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder who, during the Class Period, incurred one or more Overdraft Fees or NSF Fees when the Available Balance in the customer's Simmons account was negative but the customer's Ledger Balance (or any other account balance) in their Simmons's account was positive. "Class" excludes all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiffs' counsel and Simmons officers and employees.

Settlement ¶¶ 26, 70–71. The Class Period runs from May 22, 2014, to the date of preliminary approval. Settlement ¶ 29.

4

**B.    Cash Settlement Fund and Forgiven Charge Offs.**

Defendant will pay $3,250,000.00 in cash to resolve the claims. Settlement ¶ 64. The Settlement Fund will be used to pay the Court-approved costs of notice and administration fees (estimated to be $78,000), attorneys' fees (up to one-third of the Value of the Settlement, which is comprised of the cash payment and forgiven charge offs), and service awards (up to $10,000 to each Plaintiff), with the remaining Net Settlement Fund to be distributed to the Class Members. Settlement ¶¶ 81, 91. Distributions to Class Members will be by direct credit to the account of current customers and by check mailed directly to former customers. Settlement ¶ 91. Class Members' payments will be based on the amount of unrefunded Challenged Fees paid, with a *de minimis* cash award of $5. Settlement ¶ 84. None of the cash will revert to Defendant; any uncollected funds will be paid in a second distribution to Class Members or to a cy pres charity. Settlement ¶¶ 92, 96.

In addition to the cash payment, Defendant will forgive and not attempt to collect the Challenged Fees on accounts with a negative balance, up to $500 per overdrawn account. Settlement ¶ 98. As part of this debt forgiveness, Defendant will also update any negative reporting to ChexSystems for Class Members receiving debt relief. Settlement ¶ 99.

**C.    Notice to the Class.**

The Settlement includes proposed forms of notices to the Class to inform persons of the terms of the Settlement and their rights to object to, opt-out of, or participate in the Settlement. Settlement Exs. 3–5. The Notice will also include the date, time, and location for the final approval hearing, Notice will be provided by

email and mail, along with a Settlement website. The Settlement Administrator will provide the notice.

## SUGGESTIONS IN SUPPORT OF THE MOTION

## I. Legal standard for preliminary approval and notice.

### A. In the "preliminary approval" stage, the Court determines only whether it "will likely be able" to grant final approval to the settlement and "will likely be able" to certify a class for judgment on the settlement.

In deciding whether to grant "preliminary approval" to a proposed settlement, the Court evaluates two issues: (1) whether "the court will likely be able to" grant final approval to the settlement as a fair, reasonable, and adequate compromise; and (2) whether "the court will likely be able to" certify the class for purposes of entering judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B).

#### 1. The Court evaluates whether it "will likely be able to" grant final approval by preliminarily determining whether the settlement appears "fair, reasonable, and adequate" based on the factors in Rule 23(e)(2) and the *Van Horn* factors.

In the Eighth Circuit, courts use the factors recently codified in the 2018 amendment to Federal Rule of Civil Procedure 23(e)(2), along with four circuit-specific factors, commonly known as the *Van Horn* factors, to evaluate whether the court "will likely be able to" grant final approval to a settlement as being "fair, reasonable, and adequate." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2020 WL 1862470, at *5 (S.D. Iowa Apr. 14, 2020) (holding that it is "appropriate for the Court to consider the Rule 23(e)(2) factors along with the *Van Horn* Factors."); *In re Pre-Filled*

*Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 7160380, at *1

(W.D. Mo. Nov. 18, 2019). The factors to be considered under Rule 23(e)(2) are

whether:

(A)  the class representatives and class counsel have adequately
     represented the class;
(B)  the proposal was negotiated at arm's length;
(C)  the relief provided for the class is adequate, taking into account:
     (i)    the costs, risks, and delay of trial and appeal;
     (ii)   the effectiveness of any proposed method of distributing
            relief to the class, including the method of processing class-
            member claims;
     (iii)  the terms of any proposed award of attorney's fees, including
            timing of payment; and
     (iv)   any agreement required to be identified under Rule 23(e)(2);
            and
(D)  the proposal treats class members equitably relative to each other.

In addition, in the Eighth Circuit, courts also consider the four *Van Horn*

factors, which are: (1) the merits of the plaintiffs' case weighed against the terms of

the settlement; (2) the defendants' financial condition; (3) the complexity and

expense of further litigation; and (4) the amount of opposition to the settlement.

*Van Horn*, 840 F.2d at 607. The first *Van Horn* factor is the most important, but so

long as "[t]he settlement fund ensures that class members will receive an adequate

percentage of their damages and mitigates the risk inherent in taking these legal

claims to trial," then the first *Van Horn* factor "weighs strongly in favor of

approving the settlement and finding it to be fair and reasonable." *Huyer v. Wells

Fargo & Co.*, 314 F.R.D. 621, 627 (S.D. Iowa 2016). Courts have found that

settlements that provide as little as 10% or less of potential damages provide an

"adequate percentage" recovery. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118

F.R.D. 534, 542–43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (approving

settlement equal to 3 to 5% of the recovery sought by plaintiffs and observing that

"the fact that a proposed settlement amounts to only a fraction of the potential

recovery does not mean the settlement is unfair or inadequate" and that "[a]

settlement can be satisfying even if it amounts to a hundredth or even a thousandth

of a single percent of the potential recovery.").

In evaluating the Rule 23(e)(2) factors and the *Van Horn* factors, a court

The other three *Van Horn* factors are less important. For example, even

where, under the second *Van Horn* factor, a defendant is financially sound and able

to pay more or continue with litigation, that circumstance is merely "neutral" to the

fairness analysis. *Marshall v. Nat'l Football League*, 787 F.3d 502, 5012 (8th Cir.

2015) (fact that the NFL could afford to pay more was only "neutral"). And under

the third *Van Horn* factor, courts note that "[c]lass actions, in general, place an

enormous burden of costs and expense upon [ ] parties," which favors approval. *Id.*

(internal quotations and citation omitted). The fourth *Van Horn* factor applies for

final approval—after the class has received notice and an opportunity to object—but

does not apply at the preliminary approval stage because there has been no notice

of the settlement to the class and therefore no opposition.

In evaluating the Rule 23(e)(2) factors and the *Van Horn* factors, a court

should bear in mind that "[s]ettlement agreements are generally encouraged, and

are presumptively valid." *Huyer*, 314 F.R.D. at 626 (citing *In re Uponor, Inc.*, 716

F.3d 1057, 1063 (8th Cir. 2013)). "A strong public policy favors [settlement]

agreements, and courts should approach them with a presumption in their favor."

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). This presumption is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005). And the presumption is even stronger where the settlement is the product of arm's-length negotiations facilitated by a mediator. *Huyer*, 314 F.R.D. at 626. The "guiding principle" is that "a class action settlement is a private contract negotiated between the parties" and thus a court's review is limited to ensuring "that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall*, 787 F.3d at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005). A court's decision on the fairness of a class action settlement will be affirmed absent a clear abuse of discretion. *Van Horn*, 840 F.2d at 607.

> **2.    The Court evaluates whether it "will likely be able to" certify the class for purposes of entering judgment on a settlement by determining whether the requirements of Rule 23(a) and (b)(3) are met.**

In deciding whether the court "will likely be able to certify" a class for purposes of entering judgment on a settlement, courts evaluate whether the proposed class meets the four requirements of Rule 23(a) and any one of the requirements of the subsections of Rule 23(b), which in a damages case is subsection 23(b)(3). *See, e.g.*, *In re Pre-Filled Propane*, 2019 WL 7160380, at *3. Under Rule 23(a), the proposed class must satisfy the four "requirements of numerosity,

commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

Numerosity is satisfied if there are merely forty or more class members. *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971). Commonality is satisfied if there is any common issue of law or fact and "is easily satisfied in most cases." *Hand v. Beach Entm't KC, LLC*, No. 4:18-CV-00668-NKL, 2020 WL 3163672, at *26 (W.D. Mo. Apr. 27, 2020). Commonalty exists if the claims "depend upon a common contention" that "is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Typicality just "means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). It is "fairly easily met," and "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018) (internal citations omitted). "The adequacy requirement is met where: '1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.'" *Hand*, 2020 WL 3163672, at *28 (quoting *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004)).

Finally, the requirements of Rule 23(b)(3) are satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are "relaxed in the settlement context." *Hand*, 2020 WL 3163672, at *30. Predominance is satisfied "if the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374–75 (8th Cir. 2018) (quotation and citation omitted). The test is not whether any individual issues exist but is simply whether one or more of the central issues in the case is common to the class. *Id.* (citation omitted).

Upon finding that the requirements of Rule 23(a) and 23(b)(3) for class certification will likely be met for entry of judgment of the settlement and that the court will likely be able to grant final approval to the settlement as fair, reasonable, and adequate, the court grants preliminary approval.

**B.** **Once a court grants preliminary approval, it must direct notice to the class, set deadlines for objections and opt-outs, and set a date for a final approval hearing.**

Upon the granting of preliminary approval, the court "must direct notice in a reasonable manner to all class members" to inform them of the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice may be given by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;

      (ii)     the definition of the class certified;

      (iii)    the class claims, issues, or defenses;

      (iv)    that a class member may enter an appearance through an attorney if the member so desires;

      (v)     that the court will exclude from the class any member who requests exclusion;

      (vi)    the time and manner for requesting exclusion; and

      (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). After the time for objections and opt-out requests has passed, the Court then holds a hearing to consider whether to grant final approval, taking into account any objections raised by class members and all other relevant factors. Fed. R. Civ. P. 23(e)(2).

## II. The Court should grant preliminary approval to the Settlement, direct notice to the Class, set deadlines to object and opt out, and schedule a final approval hearing on the Settlement approximately 120 days after preliminary approval.

The Court should enter an order granting preliminary approval to the Settlement, certifying the Class and appointing Class Representatives and Class Counsel, approving the notice and notice plan, and scheduling a final approval hearing for approximately 120 days after preliminary approval because: (1) the settlement is fair, reasonable, and adequate and will likely be granted final approval; (2) the Class meets the requirements for certification under Federal Rule of Civil Procedure 23(a) and (b)(3); and (3) the form and method of notice meets the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

### A. The Court should grant preliminary approval because it "will likely be able to" grant final approval based on the Rule 23(e)(2) and *Van Horn* factors.

All of the Rule 23(e)(2) and *Van Horn* factors support that the Court "will likely be able to" grant final approval because the settlement is "fair, reasonable, and adequate." *Van Horn*, 840 F.2d at 607. Thus, the strong presumption that a negotiated settlement is fair and should be approved holds true here. *See Petrovic*, 200 F.3d at 1148.

Rule 23(e)(2)(A) supports approval because the Class Representatives and Class Counsel have adequately represented the Class by investigating and vigorously pursuing the claims in this case. Toops Decl. ¶ 2. The Class Representatives and Class Counsel also convinced the Defendant to agree to pay $3,250,000 and to forgive uncollected fees rather than to continue litigation that would have risked Class Members potentially receiving no recovery, or at the very least a delayed recovery. Toops Decl. ¶¶ 4–5.

Rule 23(e)(2)(B) supports approval because the Settlement was negotiated at arm's length and through the use of a neutral mediator. *Id.* ¶¶ 3. The numerous mediation sessions and hard-fought terms should give the Court comfort that the Settlement is the result of the adversarial process. *Id.*

Rule 23(e)(2)(C) supports approval for several reasons. First, the substantial relief provided accounts for a significant portion of what the classes could have hoped to achieve in their best day in Court, while at the same time it eliminates the costs, and delays of litigation and eliminates the risk that the Class could have suffered a defeat on summary judgment, class certification, trial, or appeal. Toops

Decl. ¶¶ 4–5; Fed. R. Civ. P. 23(e)(2)(C)(i). Second, the method of distributing the relief to the Class is highly efficient because it requires Class Members to do nothing—they will automatically receive a credit to their bank accounts or a check in the mail, without the need to submit a claim form or take any other steps. Settlement ¶ 91; Fed. R. Civ. P. 23(e)(2)(C)(ii). Third, the requested fees are subject to Court approval, are in-line with the amounts typically awarded, and will be paid near the time that the Class Members will also receive their payments. Fed. R. Civ. P. 23(e) (2)(C)(iii). Finally, there are no other agreements that would need to be identified under Rule 23(e)(3). Toops Decl. ¶ 6; Fed. R. Civ. P. 23(e)(2)(C)(iv).

Rule 23(e)(2)(D) also supports approval because the Settlement treats Class Members equitably relative to each other by awarding them a pro rata share of the Settlement Fund that is based on the amount of disputed fees they were charged. Settlement ¶ 84.

The four *Van Horn* factors likewise support granting preliminary approval. First, the terms of the Settlement are very favorable to the Class because the terms include a cash payment of $3,250,000.00 and direct distribution to Class Members, along with automatic forgiveness of uncollected fees. Toops Decl. ¶¶ 4–5. This is substantial relief for Class Members. *Id*. And while Defendant certainly has financial resources, it is precisely those resources that would have permitted it to vigorously contest the claims in this case, which would have increased the complexity and expense of the litigation, which would in turn lower any potential recovery to the Class. Moreover, while Plaintiffs believe in the merits of the case,

class action litigation is inherently risky and involves numerous procedural hurdles. *Id.* For instance, the Court could have ruled for Defendant on class certification and, even if the Court ruled for Plaintiffs, that ruling could potentially have been immediately appealed. *Id.* Without a certified class, no Class Member would likely receive any recovery. *Id.* And summary judgment, trial, and appeal present significant risks in any case. *Id.* In counsel's experience, a settlement in this range is likely to be viewed favorably by the Class Members who will appreciate receiving compensation from this lawsuit without having to expend any resources of their own. *Id.* Thus, all of the Rule 23(e)(2) and *Van Horn* factors support preliminary approval of the Settlement.

### B. The Court should grant preliminary approval because it will "likely be able to" certify the Class for judgment on the Settlement based on the requirements of Rule 23(a) and 23(b)(3).

The Settlement is not only fair, reasonable, and adequate, but certifying the Class for judgment on the Settlement is, as Defendant agrees, appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3). The proposed Class satisfies Rule 23(a)'s four "requirements of numerosity, commonality, typicality, and fair and adequate representation," and Rule 23(b)(3)'s requirements of predominance and superiority. *Luiken*, 705 F.3d at 372.

Numerosity is satisfied here because the Class, consists of thousands of persons who hold approximately 75,000 accounts at Defendant. *Ark. Educ. Ass'n*, 446 F.2d at 765 (twenty or more class members is sufficient for numerosity requirement). Commonality "is easily satisfied in most cases," *Hand*, 2020 WL

3163672, at *26, and that is true here because common issues exist including whether Defendant's agreement permitted it to charge the Challenged Fees or not. Because the case is based on Defendant's uniform practices, the claims all depend upon common contentions that resolve "in one stroke" issues central to each Class Members' claims. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Typicality is satisfied because "there are 'other members of the class[ ]who have the same or similar grievances as the plaintiff,'" *Alpern*, 84 F.3d at 1540, because the thousands of Class Members were, by definition, subject to the exact same practice of Defendant in charging the Challenged Fees. Adequacy is satisfied because the Class Representatives and Class Counsel have vigorously prosecuted this action and their interests are aligned with those of the class—to obtain the largest recovery possible. *Hand*, 2020 WL 3163672, at *28. Predominance is satisfied because "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," because the central issues— whether Defendant was permitted to charge the Class Members the Challenged Fees is the driving force of the litigation and predominates over any individual issues. *Stuart*, 910 F.3d at 374–75. Superiority is satisfied because the individual claims for the Challenged Fees are not large enough to economically pursue on an individual basis and would, if pursued individually, tax judicial resources, but a class action allows the claims to be resolved in an economical manner that conserves judicial resources. Thus, all of the requirements to certify the Class for judgment on the Settlement, after notice and a final approval hearing, are met, and

the Court should grant preliminary approval, appoint Plaintiffs as Class

Representative, and appoint Plaintiffs' counsel as Class Counsel. Settlement ¶ 116.

**C. The Court should approve the notice plan, set the deadlines for opt-outs and objections, and set a final approval hearing date approximately 120 days after entry of the Preliminary Approval Order.**

As part of the Preliminary Approval Order, the Court should also approve the

proposed forms and manner of notice of the Settlement to the Class. The notice

constitutes the "best practicable notice" under the circumstances and is direct notice

to each Class Member individually. The long-form of notice is based off of plain-

English forms adopted by the Federal Judicial Center and informs the Class

Members of all the required information under Federal Rule of Civil Procedure

23(c)(2)(B), including (i) the nature of the action; (ii) the Class definition; (iii) the

Class claims; (iv) that a Class Member may enter an appearance through an

attorney if the member so desires; (v) that the Court will exclude from the Class any

member who requests exclusion; (vi) the time and manner for requesting exclusion;

and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The

Settlement Administrator will provide the notice and report to Class Counsel who

will in turn report to the Court on the effectiveness of the notice plan. The notice

also provides for the Court to schedule a final approval hearing, which the parties

request be held approximately 120 days after the Court grants preliminary

approval, or as soon thereafter as the Court's calendar permits.

## CONCLUSION

The Court should enter the tendered, agreed Preliminary Approval Order, which grants preliminary approval, certifies the Class, appoints Class Representatives and Class Counsel, approves and directs notice to the Class, sets deadlines for objections or opt-outs, and schedules a hearing to consider final approval of the Settlement.

Dated: May 6, 2022

Respectfully submitted,

*s/ Lynn A. Toops*

Lynn A. Toops*
Vess A. Miller*
Lisa M. La Fornara*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
T: (317) 636-6481
ltoops@cohenandmalad.com
vmiller@cohenandmalad.com
llafornara@cohenandmalad.com

Ashlea G. Schwarz, Mo. Bar 60104
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
T: (816) 984-8100
Ashlea@PaulLLP.com

Christopher D. Jennings*
JOHNSON FIRM
610 President Clinton Avenue, Ste. 300
Little Rock, Arkansas 72201
T: (501) 372-1300
chris@yourattorney.com

J. Gerard Stranch, IV*
Anthony Orlandi*
Martin F. Schubert*
BRANSTETTER, STRANCH
& JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
T: (615) 254-8801
gerards@bsjfirm.com
aorlandi@bsjfirm.com
martys@bsjfirm.com

Jeffrey D. Kaliel*
Sophia Goren Gold*
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, DC 20005
T: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served on the following parties by the Court's ECF system on May 6, 2022:

Jason C. Smith
Rodney H. Nichols
SPENCER FANE LLP
2144 E. Republic Road, Suite B300
Springfield, MO 65804
jcsmith@spencerfane.com
rnichols@spencerfane.com

Debra Bogo-Ernst
Lucy L. Holifield
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
dernst@mayerbrown.com
lholifield@mayerbrown.com

*s/Lynn A. Toops*
Lynn A. Toops Case