## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

**DANNY L. WALKINGSTICK,** )
**WHITNYE A. FORT, on behalf of the** )
**themselves and all other similarly** )
**situated,** )
           )
      **Plaintiffs,** )
           )
      **v.** )
           )
**SIMMONS BANK,** )
           )
      **Defendant.** )

## DECLARATION OF LYNN A. TOOPS IN SUPPORT OF
## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION

I, Lynn A. Toops, declare:

1.      I am a partner at the law firm of Cohen & Malad, LLP. Along with my co-counsel, I represent the Plaintiff in this case. Collectively, our firms have extensive experience in class action and complex litigation across the country, including bank fee litigation in particular. *See* Exs. 2–5 (Firm Resumes).

2.      The parties have conducted extensive discovery in this case. Defendant has produced over 7,600 pages of documents, two expert reports, and millions of rows of account data. Plaintiffs have taken the depositions of Defendant's corporate representatives, Lisa Hunter and Marty Casteel, as well as Defendant's expert witnesses, Sonja Kwon and Bob Birmingham. Defendant has likewise taken the depositions of Plaintiffs Fort and Walkingstick, and of Plaintiffs' expert witness,

Arthur Olsen. The parties have briefed class certification, which has not yet been ruled upon.

3.     On April 19, 2021, the Parties participated in good faith in the scheduled mediation (the "Mediation") before Judge Morton Denlow (ret.) (the "Mediator"). At the conclusion of the Mediation, the Parties arrived at a settlement in principle. For several weeks after the Mediation, the parties worked on memorializing the settlement in principle into a written term sheet. On July 26, 2021, the parties fully executed a written term sheet ("Term Sheet"), which memorialized the parties' good-faith intention to resolve this litigation, subject to the parties executing a formal settlement agreement setting forth all of the details of settlement. The details turned out to be tricky. Eventually, the parties participated in additional mediation sessions and calls with the Mediator to try to bridge their differences on the final detailed terms of settlement. In addition, the parties engaged in exhaustive direct discussions and negotiations. Ultimately, the parties' executed the Settlement Agreement and Release (the "Settlement"), a true and accurate copy of which, with its exhibits, is attached to this Declaration as Exhibit 1.

4.     As part of the Settlement, Defendant will pay $3,250,000.00 in cash to resolve the claims. The Settlement Fund will be used to pay the Court-approved costs of notice and administration fees (estimated to be $78,000), attorneys' fees approved by the Court (up to one-third of the Value of the Settlement, which is comprised of the cash payment and forgiven charge offs), and service awards (up to $10,000 to each Plaintiff), with the remaining Net Settlement Fund to be distributed to the Class

Members directly. The Settlement represents a significant portion of the damages that would have been recoverable had the Class prevailed through trial and appeal. In my professional judgment as a class action litigator, the Settlement represents an excellent result for the Class.

5. The substantial relief provided by the Settlement eliminates the costs, and delays of litigation and eliminates the risk that the Class could have suffered a defeat on summary judgment, class certification, trial, or appeal. And while Defendant certainly has financial resources, it is precisely those resources that would have permitted it to vigorously contest the claims in this case, which would have increased the complexity and expense of the litigation, which would in turn lower any potential recovery to the Class. Moreover, while Plaintiffs believe in the merits of the case, class action litigation is inherently risky and involves numerous procedural hurdles. For instance, the Court could have ruled for Defendant on class certification and, even if the Court ruled for Plaintiffs, that ruling could potentially have been immediately appealed. Without a certified class, no Class Member would likely receive any recovery. And summary judgment, trial, and appeal present significant risks in any case. In counsel's experience, a settlement in this range is likely to be viewed favorably by the Class Members who will appreciate receiving compensation from this lawsuit without having to expend any resources of their own.

6. There are no other agreements in connection with the Settlement that would need to be identified under Rule 23(e)(3).

I affirm, under the penalties for perjury, that the foregoing representations are true.

Dated: May 6, 2022          /s/*Lynn A. Toops*
                                           Lynn A. Toops

# EXHIBIT 1

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement") is entered into by and between Simmons Bank ("Defendant" or "Simmons," as defined herein), and Danny L. Walkingstick and Whitnye A. Fort (collectively, "Plaintiffs," as defined herein), both individually and on behalf of the Settlement Class (as defined herein), subject to the Court's preliminary and final approval as required by Rule 23 of the Federal Rules of Civil Procedure. As provided herein, Simmons, Class Counsel (as defined herein) and Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the court of a Final Order and Judgment, all claims of the Settlement Class against Simmons in the action currently pending in the United States District Court for the Western District of Missouri as *Walkingstick v. Simmons Bank*, Case No. 6:19-cv-03184-RK (the "Litigation"), shall be settled, compromised, and dismissed upon the terms and conditions contained herein.

## I. RECITALS

The following recitals and the exhibits to this Agreement ("Exhibits") are material terms of this Settlement Agreement. Capitalized terms as used in these Recitals and the Exhibits hereto shall have the meaning ascribed to them herein and in the Definitions below. This Settlement Agreement is made with reference to, and in contemplation of, the following facts and circumstances:

1. Plaintiffs in this Litigation challenge the methodology Simmons uses to assess customer the Challenged Fees (defined below). On May 22, 2019, Plaintiffs filed their original Class Action Complaint ("Initial Complaint") alleging that Simmons had a "systemic policy" of charging overdraft fees on debit card transactions that were authorized on sufficient funds but later settled negative due to intervening transactions on their checking accounts.

2. Simmons moved to dismiss the Initial Complaint, in part on the ground that Simmons's preliminary investigation showed that Simmons had *not*, in fact, charged Plaintiffs any overdraft fees on transactions that were authorized on sufficient funds. Thereafter, Plaintiffs twice amended their complaint, filing an Amended Class Action Complaint on August 9, 2019 (Dkt. No. 23) ("First Amended Complaint"), and then filing the operative, Second Amended Complaint on October 2, 2019 (Dkt. No. 39) ("SAC" or "Second Amended Complaint"). The Initial Complaint, the First Amended Complaint, the SAC, and any subsequent amendment thereto shall be referred to collectively herein as the "Complaint."

3. In the SAC, Plaintiffs abandoned their original theory that Simmons charged overdraft fees on transactions authorized on sufficient funds but which settled negative. Instead, Plaintiffs alleged that Simmons purportedly charged fees "on accounts that were never actually overdrawn." SAC ¶ 1. The SAC identifies nine ATM or debit card transactions—one for Plaintiff Walkingstick and eight for Plaintiff Fort— on which Plaintiffs claim Simmons charged fees when Plaintiffs' accounts were purportedly "not … negative". SAC ¶ 19, 22. The SAC asserts three claims on this basis: (i) Breach of Contract; (ii) Breach of the Covenant of Good Faith and Fair Dealing; and (iii) Unjust Enrichment.

4. Plaintiffs take the position in this Litigation, through their expert reports and class certification filings, that their accounts were not overdrawn because the customer's Ledger Balance was positive following the triggering transactions. And Plaintiffs maintain that Simmons was not authorized to use customers' Available Balance in determining when to assess the Challenged Fees.

5. The Parties have conducted extensive discovery in this case. To date, Simmons has produced over 7,600 pages of documents, two expert reports, and millions of rows of account data. Plaintiffs have taken the depositions of Simmons's corporate representative, Lisa Hunter, and Marty Casteel

as well as Simmons's expert witnesses, Sonja Kwon and Bob Birmingham. Simmons has likewise taken the depositions of Plaintiffs Fort and Walkingstick, and of Plaintiffs' expert witness, Arthur Olsen.

6.     On March 2, 2021, the Court granted the Parties' joint motion to stay the litigation pending mediation scheduled for April 19, 2021, except as to Simmons's opposition to Plaintiffs' motion for class certification (Dkt. Nos. 123, 126). Simmons filed its opposition to Plaintiffs' motion for class certification on March 9, 2021.

7.     On April 19, 2021, the Parties participated in good faith in the scheduled mediation (the "Mediation") before Judge Morton Denlow (ret.) (the "Mediator'). At the conclusion of the Mediation, the Parties arrived at a settlement in principle.

8.     On April 26, 2021, the Parties filed a Joint Status Report, informing the Court that they had reached an agreement in principle, subject to the contingencies identified above. Dkt. No. 137. On April 27, 2021, the Court issued an order staying all deadlines, and directing Plaintiffs to file a notice of dismissal or status report including an anticipated timeline for perfecting the Parties' settlement within 60 days. Dkt. No. 138. On June 28, 2021, the Parties filed another Joint Status Report, informing the Court that they had made progress on a settlement term sheet with the assistance of the Mediator, but were still finalizing the terms. Dkt. No. 140.

9.     For several weeks after the Mediation, the Parties worked on memorializing the settlement in principle into a written term sheet. On July 26, 2021, the Parties fully executed a written term sheet ("Term Sheet"), which memorialized—subject to a mutually acceptable written settlement agreement and preliminary and final approval by the Court as required by Federal Rule of Civil Procedure 23—the Parties' good-faith intention to fully, finally, and forever discharge and release all rights and claims of the Settlement Class Members on the terms as reflected herein. The parties also had a follow-up mediation session on January 19, 2022 to resolve the Parties' remaining disagreements on a written settlement agreement.

10.    This Settlement Agreement resulted from good faith, arm's-length settlement negotiations, including the Mediation, as well as telephonic conferences between Counsel. This Settlement Agreement supersedes the Term Sheet.

11.    Simmons denies any liability or wrongdoing of any kind associated with the alleged claims in the Litigation. Simmons has denied and continues to deny all claims asserted or that could have been asserted against it in the Litigation. Nothing herein shall constitute an admission of wrongdoing or liability, or of the truth of any allegations in the Litigation. Nothing herein shall constitute an admission by Simmons that the Litigation has been properly brought on a class or representative basis, or that classes may be certified in the Litigation, other than for settlement purposes. To this end, the settlement of the Litigation, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the settlement: (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Simmons or of the truth of any of the allegations in the Litigation; (ii) are not and shall not be deemed to be, and may not be used as an admission or evidence of any fault or omission on the part of Simmons in any civil, criminal, or administrative proceeding in any court, arbitration forum, administrative agency, or other tribunal; and (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification.

12.    Class Counsel have investigated the facts and the law regarding the Litigation. In connection with the underlying Litigation, Class Counsel reviewed and analyzed thousands of pages of documents and discovery responses produced in this Litigation. Class Counsel and their expert have also reviewed account data provided by Simmons.

13.     Based on their investigation, Class Counsel have concluded that a settlement according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of Plaintiffs and the Class Members (as defined herein) recognizing: (i) the existence of complex and contested issues of law and fact; (ii) the risks inherent in litigation; (iii) the likelihood that future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement; (iv) the magnitude of the benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever; and (v) the Plaintiffs' determination that the settlement is fair, reasonable, adequate, and will substantially benefit the Class Members.

14.     The Parties shall use their best efforts to effectuate this Agreement, including, but not limited to, cooperating in promptly seeking the Court's approval of this Agreement, certification of the Settlement Class, and release by the Releasors of the Released Claims.

15.     No Party shall be deemed the drafter of this Agreement or any provision thereof.  No presumption shall be deemed to exist in favor of or against any Party as a result of the preparation or negotiation of this Agreement.

16.     This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the state of Arkansas without regard to conflict of laws principles.  If any dispute related to this Settlement Agreement arises, the Parties agree to attempt to resolve the dispute in the first instance via mediation before Judge Denlow.

17.     Nothing express or implied in this Agreement is intended or shall be construed to confer upon or give any person or entity other than the Parties, Released Parties, and Settlement Class Members any right or remedy under or by reason of this Agreement.  Each of the Released Parties is an intended third-party beneficiary of this Agreement with respect to the Released Claims and shall have the right and power to enforce the release of the Released Claims in his, her, or its favor against all Releasors.

18.     This Agreement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Settlement Agreement.

19.     This Agreement may not be modified or amended unless such modification or amendment is in writing executed by the Parties, except as specifically permitted by this Agreement.

20.     Where this Agreement requires any Party to provide notice or any other communication or document to any other Party, such notice, communication, or document shall be provided by email or letter by overnight delivery to their Counsel in the Litigation using the mail and email addresses identified in this Agreement.

21.     In consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Litigation be settled and compromised, and that the Releasors release the Released Parties of the Released Claims, without costs as to the Released Parties, Plaintiffs, Class Counsel, or the Settlement Class, except as explicitly provided for in this Agreement, subject to the approval of the Court, on the following terms and conditions.

3

## II.  **DEFINITIONS**

In addition to the terms defined at various points within this Agreement, the following defined terms ("Definitions"), as used in this Agreement and the attached Exhibits, apply and shall have the following meanings:

22. "Administrative Expenses" shall mean the expenses associated with the Settlement Administrator and the performance of the Settlement Administrator's duties hereunder, including but not limited to, costs in providing notice, maintaining the Settlement Website, maintaining or disbursing the Settlement Fund, communicating with Class Members or Counsel for the Parties, and disbursing Cash Award payments to the proposed Settlement Class Members, or disbursing any other payments called for hereunder.

23. "Available Balance" means the balance of a customer's checking account that is the result of the total debit and credit activity (including, without limitation, float, memo-posted debits, memo-posted credits, and holds) as of a specific date and time.

24. "Cash Award" means a cash payment to an eligible Settlement Class Member as described in Section VI of this Agreement.

25. "Challenged Fees" mean fees challenged by Plaintiffs in this lawsuit including Overdraft Fees or NSF Fees when the Available Balance in the customer's Simmons checking account was negative but the customer's Ledger Balance in their Simmons account was positive.  Challenged Fees do not include fees charged when a debit card or ATM transaction is authorized on a positive balance but later settles on a negative balance, as Simmons represents that it has not charged fees in that circumstance during the Class Period.

26. "Class" or "Class Members" mean all current and former holders of a Simmons Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder who, during the Class Period, incurred one or more Overdraft Fees or NSF Fees when the Available Balance in the customer's Simmons account was negative but the customer's Ledger Balance (or any other account balance) in their Simmons's account was positive.  "Class" excludes all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiffs' counsel and Simmons officers and employees.

27. "Class Counsel" refers individually and collectively to Lynn A. Toops of Cohen & Malad, LLP; Ashlea G. Schwarz of Paul LLP; Christopher D. Jennings of Johnson Firm;  J. Gerard Stranch, IV of Brannstetter, Stranch & Jennings, PLLC; and Jeffrey D. Kaliel of Kaliel Gold PLLC.

28. "Class List" means a confidential (unredacted) compilation of Settlement Class Members, identified by name, mail address, and email address, denoting each Settlement Class Member's calculated Cash Award amount and/or Forgiven Charge Offs.  The Class List shall be compiled by the Settlement Administrator, using information provided by Simmons and/or Simmons's expert as set forth in Section VI, *infra*.  The Class List shall be kept and maintained by Simmons and Simmons's Counsel, and shall be disclosed only as described in Paragraph 89, *infra*. The Settlement Administrator shall prepare and provide to Class Counsel a redacted, anonymized version of the Class List ("Redacted Class List") denoting Class Members by a unique identifier number.

29. "Class Period" is defined as May 22, 2014 to and including the date on which the Court enters a Preliminary Approval Order as to this Settlement Agreement.

30.     "Class Release" shall have the meaning set forth in Section VII of this Agreement.

31.     "Class Representatives" or "Plaintiffs" refers collectively to Danny L. Walkingstick ("Walkingstick") and Whitnye A. Fort ("Fort"), the named plaintiffs in the Litigation.

32.     "Counsel" refers collectively to both Class Counsel and Simmons's Counsel, as defined herein.

33.     "Court" shall mean the United States District Court for the Western District of Missouri and the Honorable Roseann A. Ketchmark, and her successors, if any.

34.     "De-Identified Notice Database" means a de-identified version of the Notice Database (as defined herein) with the names, email addresses, and mail addresses of Class Members removed such that Members are identifiable solely by reference to the randomly generated numbers associated with each Class Member.

35.     "Effective Date" shall mean five (5) business days after all of the following events or conditions have occurred:

    a.     the Court has entered a Final order with respect to any attorneys' fees and expenses to be awarded to Class Counsel, and with respect to any Service Award to Plaintiffs, and any such order(s) is/are final and non-appealable;

    b.     the time for appeal has expired and no appeal has been timely filed; or the settlement is affirmed on appeal without material change; no other appeal or petition is pending, and the time period during which any petition for rehearing or certiorari could be filed has expired and relief from the failure to file such a petition is not available; and

    c.     the Final Approval Order and judgment of dismissal are Final as defined herein.

36.     "Email Notice" means the notice of proposed class action settlement that will be provided to Simmons accountholders who have provided an email address to Simmons in accordance with Paragraph 124 of this Agreement, to be approved by the Court, and substantially in the form attached hereto as Exhibit 4.

37.     "Escrow Account" means the escrow account established by the Settlement Administrator to hold the Settlement Fund following the Settlement Funding Deadline (defined in Paragraph 74 *infra*).

38.     "Execution Date" shall mean the date on which this Agreement is fully executed by all Parties.

39.     "Final" means the Final Approval Order and judgment of dismissal have been entered on the Court's docket in the Litigation and: (a) the time to appeal from such order and judgment has expired and no appeal has been timely filed; (b) if such an appeal has been filed, it has been finally resolved and has resulted in an affirmation of the Final Approval Order and judgment; or (c) the Court following the resolution of the appeal enters a further order or orders approving settlement on the material terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s).

40. "Final Approval Hearing" means the hearing before the Court in which Plaintiffs will request the Final Approval Order be entered by the Court approving the Settlement Agreement, approving Class Counsel's request for an award of attorneys' fees and costs, and approving a Service Award to the Class Representatives. The Parties will request that the Court schedule the Final Approval Hearing no fewer than one hundred twenty (120) days after entry of the Preliminary Approval Order.

41. "Final Approval Order" shall mean the final approval order and judgment of dismissal substantially in the form as shown in Exhibit 2, or as otherwise agreed to by the Parties, to be entered by the Court, granting final approval of the settlement. The Final Approval Order shall contain such provisions as set forth in Exhibit 2 and described in Section XIV. The form of the Final Approval Order and Judgment as attached hereto as Exhibit 2 is a material term of this Settlement Agreement.

42. "Forgiven Charge Offs" shall mean debt forgiveness of Challenged Fees as provided for in Paragraph 98 of this Agreement.

43. "Ledger Balance" means the balance of a customer's checking account without regard to holds, memo-posted credits, and memo-posted debits.

44. "Long Form Notice" means the notice of proposed class action settlement that will be posted on the Settlement Website pursuant to Section X, *infra*, to be approved by the Court, and substantially in the form as Exhibit 5 to this Agreement.

45. "Net Settlement Fund" shall have the meaning set forth in Paragraph 81 of this Agreement.

46. "NSF Fees" are nonsufficient funds fees charged by Simmons when it returns an item because the Available Balance in the customer's account was not sufficient to cover the transaction.

47. "Notice" or "Settlement Class Notice" means the notice of proposed class action settlement that will be provided: (i) via email for current Class Members who have provided their email address to Simmons; (ii) via U.S. mail to Class Members who have not provided an email address or to whom the Email Notice is not successfully delivered; and/or (iii) via posting of the Long Form Notice on the Settlement Website, all pursuant to Section X of this Settlement Agreement, which the Parties will ask the Court to approve in connection with the motion for preliminary approval of the settlement, substantially in the forms attached hereto as Exhibits 3 (Postcard Notice), 4 (Email Notice), and 5 (Long Form Notice).

48. "Notice Database" means a file containing data sufficient to identify, to the extent reasonably available in Simmons's records, each Class Member's name, last known email address, and last known mail address.

49. "Notice Program" means the method provided for in this Settlement Agreement for giving Notice to Class Members, as provided in Section X, *infra,* of this Settlement Agreement.

50. "Opt-Out" shall mean a written request for exclusion from the Settlement Class as provided in Section XI of this Settlement Agreement.

51. "Opt-Out Period" shall have the meaning set forth in Section XI of this Settlement Agreement.

52. "Overdraft Fees" are paid item fees that Simmons charged customers when the Available Balance in the customer's account was insufficient to fully cover the amount of the customer's transaction but Simmons paid the item.

53.     "Party" or "Parties" shall mean Simmons, Plaintiffs, and the proposed Settlement Class Members.

54.     "Postcard Notice" means the notice of proposed class action settlement that will be provided via U.S. Mail in accordance with the procedures set forth in Paragraph 124 of this Agreement, to be approved by the Court, substantially in the form attached hereto as Exhibit 3.

55.     "Preliminary Approval Order" shall mean an order substantially in the form as shown in Exhibit 1 to be entered by the Court preliminarily approving the Settlement Agreement. The Preliminary Approval Order shall contain such provision as set forth in Exhibit 1 and described in Section VIII.

56.     "Protective Order" means the Agreed Protective Order entered in this Litigation as Docket No. 57.

57.     "Released Claims" shall mean the claims against the Released Parties described in Paragraph 106 of this Agreement.

58.     "Released Parties" means Simmons and each of its respective past, present, and future parents, subsidiaries, acquired and affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, agents, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives.

59.     "Releasors" shall refer, jointly and severally, and individually and collectively, to Plaintiffs, the Settlement Class Members, and each of their predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, through, or on behalf of them.

60.     "Residual Funds" shall refer to all proceeds remaining in the Net Settlement Fund following the initial Cash Award distributions provided for in Section VI(b), *infra*.

61.     "Service Award" means the award that the Court may individually provide to Plaintiffs in connection with their participation in this Litigation to be paid solely from the Settlement Fund.

62.     "Settlement Administrator" means the entity (which will be mutually selected and retained by the Parties), to administer the settlement and perform all settlement, escrow, notice, fund distribution, and such other administration functions set forth in this Agreement. Simmons will also execute a Non-Disclosure Agreement ("NDA") with the Settlement Administrator to protect Class Members's personally identifiable financial and other confidential information. Simmons's Counsel and Class Counsel may, by agreement, substitute a different organization to perform some or all of the functions of the Settlement Administrator, subject to approval by the Court if the Court has previously granted Preliminary Approval or Final Approval of the settlement.

63.     "Settlement Class" or "Settlement Class Members" shall mean all persons who are members of the Class who do not timely and validly request exclusion from the Settlement Class. The persons comprising the Settlement Class shall be identified by name and mail address on the confidential Class List to be created by the Settlement Administrator.

64.     "Settlement Amount" means the total sum of $3,250,000 (Three Million Two Hundred and Fifty Thousand Dollars) that Simmons will pay to settle the Litigation and obtain a release of all Released Claims.

65.     "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following the Preliminary Approval Order, and prior to issuance of the Email Notice and Postcard Notice, as a means for Class Members to obtain notice and information about the settlement, through and including hyperlinked access to this Agreement, the Long Form Notice, the Email Notice, the Postcard Notice, the Preliminary Approval Order, Class Counsel's motion for attorneys' fees, costs, and Service Award, and such other documents as Counsel together agree to post or that the Court orders posted on the Settlement Website.  An additional description of the contemplated Settlement Website and its contents is provided in Section X, *infra*,

66.     "Simmons" or "Defendant" shall mean Simmons Bank, its past and present parents, predecessors, successors, affiliated or acquired companies, holding companies, subsidiaries, partners, employees, agents, assigns, and board members.

67.     "Simmons's Counsel" or "Defendant's Counsel" refers collectively to Debra Bogo-Ernst and Joshua D. Yount of Mayer Brown LLP.

68.     "Value of the Settlement" means the amount of the Settlement Fund plus the amount of the Forgiven Charge Offs.

69.     "*Wilkins* Litigation" shall mean the matter titled *Wilkins v. Simmons Bank* that is currently pending before the United States District Court for the Eastern District of Arkansas as Case No. 3:20-cv-00116 (Judge D.P. Marshall Jr.).

## III.     <u>SETTLEMENT CLASS CERTIFICATION</u>

70.     Simmons disputes that any litigation class could be certified on the claims asserted in the Litigation.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, Simmons does not oppose the certification of the Class for settlement purposes only.  Preliminary certification of the Class for settlement purposes shall not be deemed a concession that certification of a litigation class is appropriate, nor would Simmons be precluded from challenging class certification in further proceedings in the Litigation or in any other action if the Settlement Agreement is not finalized or finally approved.  If the Settlement Agreement is not finally approved by the Court for any reason whatsoever, any certification of the Class will be void, and no doctrine of waiver, estoppel, or preclusion will be asserted against Simmons in any litigated certification proceedings in the Litigation.  No agreements made by or entered into by Simmons in connection with the Settlement Agreement may be used by Plaintiffs, Class Members, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Litigation or any other judicial proceeding.

71.     Subject to Court approval, and for settlement purposes only, the following Settlement Class shall be certified:  "All current and former holders of a Simmons Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred one or more Overdraft Fees or NSF Fees when the Available Balance in the customer's Simmons account was negative but the customer's Ledger Balance (or any other account balance) in their Simmons's account was positive."

72.     If for any reason this settlement is not granted preliminary and final approval, or if this Agreement is terminated in accordance with its terms, the Parties, pleadings and proceedings will return to the status quo ante as if no settlement had been negotiated or entered into.  Plaintiffs shall file such motions and pleadings as are necessary to return this case to the Litigation posture that existed before this settlement was reached.  Simmons's agreement herein to certification of the Settlement Class as described in the Second Amended Complaint or otherwise shall not be used for any purpose, including in resolving

8

Plaintiffs' motion for class certification in the Litigation or any request for certification in any other proceeding.

## IV.  SETTLEMENT OF LITIGATION AND ALL CLAIMS AGAINST THE RELEASED PARTIES

73.    Final approval of this Settlement Agreement will settle and resolve with finality, on behalf of Plaintiffs and the Settlement Class Members, the Litigation and the Released Claims.

## V.  ESTABLISHMENT OF SETTLEMENT FUND AND NET SETTLEMENT FUND

In consideration of a full, complete, and final settlement and dismissal of the Litigation with prejudice as set forth herein and of the Release provided in Section VII below, and, subject to Court approval as provided herein, the Parties agree to the following relief.

### (a)  ESTABLISHMENT OF SETTLEMENT FUND

74.    Within fourteen (14) business days after entry of the Preliminary Approval Order by the Court, the Settlement Amount of $3,250,000 (Three Million Two Hundred and Fifty Thousand Dollars) less any amounts already advanced by Simmons for Administrative Expenses as per Paragraph 120 of this Agreement, shall be held by Simmons in a separate internal account at Simmons ("Simmons Holding Account"), as the settlement fund ("Settlement Fund"). Simmons shall transfer the Settlement Fund, less the total amount that will be credited to Settlement Class Members by Simmons as provided in Paragraph 91(a) below, to the Escrow Account no later than seven business days after the Effective Date ("Settlement Funding Deadline"). Notwithstanding anything in this Agreement to the contrary, Simmons shall not be required to pay more than a total of $3,250,000 towards the Settlement Fund, inclusive of all attorneys' fees, costs, expenses, notice expenses, any Service Award, any other amounts ordered by the Court, and any and all Administrative Expenses, except for Simmons's Expert Expenses (as defined below in Paragraph 82). For the avoidance of doubt, Simmons shall not bear any other fees, costs, charges, or expenses incurred by Plaintiffs or Class Counsel, including but not limited to, those of any experts retained by Plaintiffs or by Class Counsel.

75.    The Settlement Fund shall be used for the following purposes:

a.    payment and distribution of all Cash Awards (including, without limitation and for the avoidance of doubt, *de minimis* Cash Awards) to Settlement Class Members, pursuant to Section VI, *infra*;

b.    payment of the Court-ordered Service Award to the Class Representatives, pursuant to Section XVII, *infra*;

c.    payment of any of Class Counsel's attorneys' fees, costs, and expenses, that are awarded by the Court, pursuant to Section XVII, *infra* (subject to Simmons reserving its rights with respect to attorneys' fees that exceed one-third of the Value of the Settlement);

d.    payment of all costs, expenses, fees, and invoices associated with the Administrative Expenses, including but not limited to, all costs, expenses, and fees of the Settlement Administrator in performing any and all settlement administration, notice, or escrow related functions under this Agreement;

e.      payment of all costs, expenses, fees, and taxes associated with establishing and maintaining the Settlement Fund as a Qualified Settlement Fund as set forth in Section XIX, or otherwise, including but not limited to any payments to any escrow agent providing services hereunder; and disposition of Residual Funds after the initial distribution of Cash Awards to Settlement Class Members pursuant to Section VI, Paragraphs 92 & 96 of this Agreement, including without limitation payment of the Administrative Expenses associated with such disposition of Residual Funds; and

f.      additional fees, costs, and expenses not specifically enumerated in subparagraphs (a) through (e) above, subject to agreement and approval of Class Counsel and Simmons's Counsel.

76.      Notwithstanding the foregoing, any other award of attorneys' fees, Administrative Expenses, or any other fees, costs, expenses, or benefits otherwise awarded by the Court in connection with the Settlement Agreement shall be payable solely out of the Settlement Fund, except Simmons's Expert Expenses.

77.      As more fully set forth below in Section XIX, after the Settlement Funding Deadline, the Settlement Fund payments provided by Simmons to the Settlement Administrator will be maintained by the Settlement Administrator in an Escrow Account to be held as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and shall be deposited in an interest-bearing escrow account.

78.      Provided that this Agreement is finally approved by the Court without material modification or amendment, the Net Settlement Fund (defined in Paragraph 81 of this Agreement) will be used to satisfy the Cash Award for Settlement Class Members in exchange for a release and covenants set forth in this Agreement, including, without limitation, a full, fair, and complete release of all the Released Parties from Released Claims, and dismissal of the Litigation with prejudice.

79.      The Court may require changes to the method of allocation to Settlement Class Members without invalidating this Settlement Agreement, provided that the other material terms of the Settlement Agreement are not materially altered, including but not limited to the scope of the Release, the Class Period, and the amount of the Settlement Fund.

80.      Simmons's contribution to the Settlement Fund shall be fixed under this Section and be final. Simmons shall have no obligation to make further payments into the Settlement Fund and shall have no financial responsibility or obligation relating to the settlement beyond establishing the Settlement Fund, except Simmons's Expert Expenses. If the Settlement Agreement is not finally approved, or is terminated in accordance with this Agreement, the Settlement Fund belongs to and shall be returned to Simmons, less any Administrative Expenses paid to date.

**(b) <u>NET SETTLEMENT FUND</u>**

81.      The net settlement fund ("Net Settlement Fund") is equal to the Settlement Fund plus any interest earned on that fund, less the following:

a.   the amount of the Court-ordered Service Award to the Class Representatives;

b. the amount of any Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses;

c. the amount of any other Court-ordered award of fees in connection with the settlement;

d. the amount of all Administrative Expenses, including but not limited to, all costs, expenses, and fees of the Settlement Administrator in performing any and all settlement administration, notice, distribution, or escrow related functions hereunder;

e. the amount of all costs, expenses, fees, and taxes associated with establishing or maintaining the Settlement Fund as a Qualified Settlement Fund as set forth in Section XIX, or otherwise, including but not limited to any payments to any Escrow Agent providing services hereunder;

f. the amount of all Administrative Expenses associated with issuance of Forgiven Charge Offs, Cash Awards, and/or disposition of Residual Funds after distribution of Cash Awards to Settlement Class Members;

g. and additional fees, costs, and expenses not specifically enumerated in subparagraphs (a) through (f) above, subject to agreement and approval of Class Counsel and Simmons's Counsel.

Simmons's Expert Expenses shall not be deducted from the Settlement Fund.

## VI.    PAYMENTS TO CLASS

Cash Awards shall be determined and calculated as set forth herein.

### (a)  Cash Award Calculations

82.    Subject to the Protective Order, Simmons shall retain an expert at its own expense ("Simmons's Expert Expenses") to identify Class Members and implement the allocation of the Net Settlement Fund as provided in this Section of this Agreement (Section VI), and to identify the amount of Forgiven Charge Offs as provided in Paragraph 98 of this Agreement. The identification and allocation methodologies set forth in this Section VI shall be applied as consistently, sensibly, and conscientiously as reasonably practicable recognizing and taking into consideration the nature and completeness of the data and the purpose of the computation.

83.    To identify Class Members, Simmons's expert will examine Simmons data from the Class Period to identify Simmons checking account customers who incurred Challenged Fees.

84.    The following methodology shall be used by Simmons's expert to calculate Cash Awards to Settlement Class Members who paid Challenged Fees: (i) to be credited to Settlement Class Members who are current accountholders; or (ii) paid by check to Settlement Class Members who are former accountholders ("Qualifying Settlement Class Members"):

a. Identify all Challenged Fees charged to Settlement Class Members ("Gross Fees");
b. Reduce the Gross Fees, on an individual Settlement Class Member basis, to account for any refunds or similar credits of Challenged Fees to those accountholders ("Net Fees");
c. Quantify each Settlement Class Member's relative proportion of the total Net Fees charged to the Settlement Class;

11

d. Determine whether: (i) a Cash Award is appropriate; (ii) a *de minimis* Cash Award to a Settlement Class Member is necessary of $5 if the calculated Cash Award is too small for distribution to a Settlement Class Member so they will not qualify for a Cash Award; and/or (iii) whether Forgiven Charge Offs are warranted. For the avoidance of doubt, a Settlement Class Member will not receive both a *de minimis* Cash Award and Forgiven Charge Offs, but a Settlement Class Member could receive both a Cash Award and Forgiven Charge Offs if the Settlement Class Member both paid Challenged Fees and also had uncollected, negative account balances as a result of additional Challenged Fees which were incurred, but not paid, by the Settlement Class Member. For further avoidance of doubt, a Settlement Class Member will not receive both a *de minimis* Cash Award and Forgiven Chargeoffs; a Settlement Class Member will receive a *de minimis* Cash Award, not a Forgiven Chargeoff, if eligible for both; and

e. Determine Cash Award based on each Settlement Class Member's proportion of the Net Fees charged to the Settlement Class or determine if a *de minimis* Cash Award or Forgiven Charge Offs is appropriate, per Paragraph 84(d) *supra*.

85.      After Simmons's Cash Award calculations are complete, the Settlement Administrator shall update the Class List to reflect the corresponding Cash Award amounts for Settlement Class Members and provide the Redacted Class List to Class Counsel upon completion of the Cash Award calculations as described in Paragraph 84 above.

86.      Plaintiffs may retain an expert to review and approve Simmons's expert's calculation of the Cash Awards. Plaintiffs' expert will be paid from the Settlement Fund.

87.      Subject to the Protective Order in the Litigation, Simmons and/or Simmons's expert shall make available to Plaintiffs' expert: (i) an anonymized list identifying Settlement Class Members and calculated Cash Awards and/or Forgiven Charge Offs ("Cash Award File"), and (ii) a file containing de-identified transactional data necessary for Plaintiffs' expert to review and approve Simmons's expert's calculations set forth in the Cash Award File ("Supporting Data File"). The Cash Award File and Supporting Data File shall be provided as soon as reasonably feasible after the deadline to opt out of the Settlement. For the avoidance of confusion, any Settlement Class Member for whom account data is provided under this Agreement shall be identified solely by reference to the random identifier number assigned to the Account. Plaintiffs' expert shall then have twenty-one (21) days from receipt to review Simmons's Cash Award File and Supporting Data File to assess whether the allocation methodology was performed and applied by Simmons's expert in accordance with this Agreement ("Review Period"). In the event Plaintiffs' expert raises any concerns, the Parties shall cooperate in good faith to resolve any concerns as expeditiously as possible. If the Parties cannot reach agreement, then the dispute shall be submitted to the Mediator for assisting the Parties with resolution. The Parties shall cooperate together to ensure that the Cash Awards and Forgiven Charge Offs are calculated in advance of final approval time and sufficiently in advance so as to permit payment in accordance with the time schedule set forth in Section VI(b), *infra*.

88.      Upon expiration of the Review Period, and subject to resolution of any objections, the final allocation results shall be transmitted to the Settlement Administrator for purposes of effectuating payment of Cash Awards and/or Forgiven Charge Offs and for purposes of creating the confidential Class List. The Settlement Administrator shall prepare the Class List within five (5) business days of receipt of the final allocation results.

89.      The confidential Class List shall be maintained by Simmons and provided to the Settlement Administrator for the sole purpose of facilitating the notice and payments contemplated herein.

The confidential Class List and identities of Settlement Class Members shall *not* be disclosed to anyone else, including Class Counsel, except that Simmons shall disclose information about the identity of Settlement Class Members to the limited extent required for Class Counsel to provide necessary assistance in response to a question from a Settlement Class Member. Such disclosure shall be subject to the Protective Order entered in this Litigation.

90.     The Parties agree the foregoing methodologies are exclusively for purposes of computing retrospectively, in a reasonable and efficient fashion, Cash Awards and Forgiven Charge Offs. The fact that the methodologies are used herein is not intended and shall not be used for any other purpose or objective whatsoever.

### (b)  Distribution of Cash Awards & Residual Funds

91.     Within forty-five (45) days of the Effective Date and subject to applicable tax reporting or withholding requirements, every Settlement Class Member shall be paid as follows:

    a.  For Settlement Class Members who are current accountholders, Simmons shall credit the Cash Award payments to the Settlement Class Members' accounts, using funds within the Simmons Holding Account defined in paragraph 74 *supra*.

    b.  For Settlement Class Members who are former accountholders, the Settlement Administrator shall cause a check from the Net Settlement Fund to be mailed to the former accountholder's last known mail address (as updated by the Settlement Administrator).

    Checks shall be made payable to the accountholder, and where applicable, jointly to the joint accountholders during the Class Period. Cash Award checks shall be mailed to the mail addresses of record used for Class Notice purposes, or such other mail addresses as the Settlement Administrator identifies as valid Settlement Class Member mail addresses through the Notice Program. The Settlement Administrator will make reasonable efforts to locate the proper mail address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated mail address.

    Checks shall be valid for one hundred and twenty (120) days from the date of the check and the check shall state that it is invalid after one hundred and twenty (120) days of issuance. If any Settlement Class Member fails to negotiate their check within that time period, such Settlement Class Member shall forever waive his/her claim for payment hereunder. In the event that checks sent to Settlement Class Members are not cashed within one hundred and twenty (120) days of their initial mailing date, whether because the checks were not received or otherwise, those checks will become null and void as provided for herein.

92.     If it is administratively feasible to do so, unclaimed Residual Funds in the Settlement Fund held in the Escrow Account shall be used to make a second distribution, on a pro rata basis, to all Settlement Class Members who received an account credit or cashed a Settlement Award check ("Second Cash Award Distribution"). The Parties will confer as to whether a Second Cash Award Distribution is administratively feasible, with input from the Settlement Administrator. If the Parties dispute whether there should be a Second Cash Award Distribution, they will jointly ask the Mediator to assist with resolution of the issue. In the event that any redistributed checks are not cashed within one hundred and

twenty (120) days of their mailing date, whether because the checks were not received or otherwise, those checks will become null and void.

93. Cash Awards shall be distributed and paid solely from the Net Settlement Fund. If this Settlement Agreement is not approved, or for any reason the Effective Date does not occur, no Cash Award payments or distribution of any kind shall be made to Settlement Class Members under this Agreement.

94. The Parties make no representation regarding the tax treatment of Cash Awards or Forgiven Charge Offs received by Settlement Class Members. The Parties will defer to the Settlement Administrator's recommendation regarding when Settlement Class Members must provide a W-9 form and/or a Taxpayer Identification or Social Security Number, as may be required by applicable Internal Revenue Service reporting requirements. Class Counsel and Plaintiffs shall timely furnish to the Settlement Administrator any required tax information or forms before any payments are made to them from the Settlement Fund.

95. The Parties agree that the Settlement Administrator has permission to seek reasonable documentation before distributing settlement funds to an estate.

**(c) _Cy Pres_ Distribution**

96. Any funds in the Net Settlement Fund following a Second Cash Award Distribution, or any Residual Funds in the Net Settlement Fund held in the Escrow Account if a Second Cash Award Distribution is not feasible ("_Cy Pres_ Funds"), shall be paid through _cy pres_ to non-profit charities that assist low-income consumers and/or provide consumer financial education in the geographic area of the Settlement Class Members, subject to Court approval. The Parties shall confer in good faith about appropriate _cy pres_ beneficiaries after the stale date on checks to Settlement Class Members passes, and shall each propose beneficiaries for Court approval. Plaintiffs will propose a beneficiary for 50% of the _Cy Pres_ Funds, subject to approval by Defendant. Simmons intends to propose that the remaining 50% of _Cy Pres_ Funds be paid to the Simmons First Foundation, with an earmark that the money be used specifically for financial literacy. Plaintiffs do not agree that the Simmons First Foundation is an appropriate _cy pres_ beneficiary. If the Court rejects Simmons First Foundation as a _cy pres_ beneficiary, Simmons will propose Go Forward Pine Bluff as an alternate _cy pres_ beneficiary.

97. The Court may revise this _cy pres_ provision as necessary without terminating or otherwise impacting this settlement, provided the Court's revision does not increase the amount that Defendant would otherwise pay under this Agreement.

**(d) Forgiven Charge Offs**

98. For Settlement Class Members with uncollected, negative account balances as a result of Challenged Fees (to the extent that Simmons has records to identify such uncollected, Challenged Fees), Settlement Class Members will receive Forgiven Charge Offs, that is, Simmons will forgive, and not attempt to collect on, all uncollected Challenged Fees, up to $500 per overdrawn account. The $500 limit will apply regardless of the number of accountholders associated with the account. The amount of any Forgiven Charge Offs will be updated and reflected in Simmons's business records. Settlement Class Members cannot receive both Forgiven Charge Offs and _de minimis_ Cash Awards under Paragraph 84(d) _supra_.

99. Simmons will also update any negative reporting to ChexSystems with respect to any Settlement Class Members who receive Forgiven Charge Offs of any Challenged Fees, to the extent feasible based on the time period of information that ChexSystems maintains.

**(e) No Double Recovery**

100. To the extent Plaintiffs and/or any putative class member in the *Wilkins* Litigation receive any Cash Award or Forgiven Charge Offs pursuant to this Agreement, that accountholder will not receive a "double" recovery for the same fee or fees in the *Wilkins* Litigation—whether by settlement, judgment, or otherwise. For the avoidance of doubt, this provision applies whenever any Settlement Class Member is receiving any Cash Award or Forgiven Charge Offs as compensation for any Challenged Fee in this Litigation, and the same Challenged Fee is also being challenged and claimed as any type of purported damage in the *Wilkins* Litigation. Whenever such overlap occurs, the entire Challenged Fee shall be deemed "credited" by this Agreement and no part of such fee shall be available for recovery as "damages" in the *Wilkins* litigation. For the avoidance of doubt, Settlement Class Members in this Litigation will receive a Cash Award, which may be a *de minimis* Cash Award (the precise amount of which will be determined following expert review of the data but which is anticipated to be in the range of $5 or $10), or Forgiven Charge Offs of outstanding debt as contemplated in Paragraph 84(d) *supra*. The receipt of such Cash Award, which may be a *de minimis* Cash Award, or Forgiven Charge Offs shall cause the entire Challenged Fee to be deemed "credited" and preclude any recovery based on the same Challenged Fee(s) in the *Wilkins* Litigation.

101. Neither Party shall object to the use of the Redacted Class List for the purpose of excluding any Class Award or Forgiven Charge Offs conveyed in this Settlement from the class claims in the *Wilkins* Litigation., to facilitate the exclusion of fees included in this settlement from the class claims in that matter.

**(f) Other Relief**

102. Simmons will <u>not</u> stop using customers' Available Balance as the balance on which Simmons assesses Overdraft Fees (or any other similar fees).

103. Simmons will in its sole discretion agree to modify certain checking account opening documents and/or disclosures to further emphasize to customers that Simmons uses customers' Available Balance when determining whether to assess Overdraft Fees. Plaintiffs are entitled to no other specific relief under this Agreement and take no position on the sufficiency of Simmons's modifications.

## VII. RELEASE

104. In addition to the effect of any final judgment entered by the Court in accordance with this Agreement, upon the Effective Date, and for other valuable consideration as described herein, the Released Parties shall be completely released, acquitted, and forever discharged from any and all Released Claims ("Class Release").

105. As of the Effective Date, and with the approval of the Court, Plaintiffs and each Settlement Class Member, as well as their respective, heirs, assigns, executors, administrators, beneficiaries, successors, and agents, hereby release, resolve, relinquish, and discharge each and all of the Released Parties from each of the Released Claims (as defined below). The Settlement Class Members further agree that they will not institute any action or cause of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal, or local government

15

agency or with any administrative or advisory body, arising from the Released Claims. The release does not apply to members of the Class who timely opt-out of the settlement.

106. "Released Claims" means any and all claims, demands, damages, costs, attorneys' fees, disputes, liabilities, actions, rights, suits or causes of action, losses or remedies of any kind or nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or any legal or equitable theory, right of action or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of, or relate to, or are based upon or in any manner related or connected with: (i) any Challenged Fee incurred by any Simmons Bank personal or business checking account based on Simmons' use of an account's Available Balance (rather than its Ledger Balance or any other balance) to assess such fees, regardless of the state of residence or citizenship of the accountholder; (ii) a claim that Simmons assessed a Challenged Fee on any Simmons personal or business checking account transaction that purportedly did not "overdraw" the account, under any methodology; and (iii) any alleged failure to adequately or clearly disclose Simmons's practices and policies related to the use of the Available Balance rather than any other balance (including but not limited to the Ledger Balance) to assess the Challenged Fees. Such release applies regardless of how such claims are pled. This Agreement does not imply that any such claims exist or are valid.

107. Notwithstanding Paragraph 106, *supra*, "Released Claims" do not include the claims pending in the litigation styled as *Pace v. Landmark Bank*, currently pending as Case No. 20-BA-CV-00244 in the 13th Judicial Circuit of Missouri (Boone County) ("*Landmark Bank* Litigation"). None of the claims in the *Landmark Bank* Litigation for the time period of January 1, 2015 to February 14, 2020 are released by this Agreement.

108. Notwithstanding Paragraph 106, *supra*, "Released Claims" do not include the claims in the *Wilkins* Litigation, except to the extent that any Settlement Class Members whose claims "overlap" with the *Wilkins* Litigation as set forth in Paragraph 100, *supra*. Whenever such overlap occurs, the Settlement Class Members release any claims in the *Wilkins* Litigation relating to the overlapping Challenged Fees.

109. Provided that the Plaintiffs have been paid a Service Award, in such amount as the Court approves and consistent with the terms of this Agreement, and without in any way limiting the generality of the foregoing release, and in addition to the Release provided by Plaintiffs in paragraph 104-106 as to the Released Claims, Plaintiffs, as well as their respective, heirs, assigns, executors, administrators, beneficiaries, successors, and agents, hereby release, resolve, relinquish, and discharge each and all of the Released Parties from any and all claims, demands, damages, costs, attorneys' fees, disputes, liabilities, actions, rights, suits or causes of action, and losses or remedies of any kind or nature whatsoever related to Fort's checking account and Walkingstick's current, or former, checking and savings accounts, that Plaintiffs may have, whether on their own behalf and on behalf of their heirs, assigns, executors, administrators, beneficiaries, successors and agents, and whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or any legal or equitable theory, right of action or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the Execution Date, against the Released Parties.

110. Plaintiffs or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the

claims released pursuant to the terms of this Section VII, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, and contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Section VII. Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the releases contained in this Section VII, and that all of their claims in the Litigation shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the settlement or never receives a distribution of Cash Award, Forgiven Charge Offs, or other funds from the settlement.

111.     Without limiting the foregoing, the Released Claims specifically extend to claims that Plaintiffs and Settlement Class Members do not know or suspect to exist in their favor at the time that the settlement and the releases contained therein become effective. Each Releasor hereby further waives and releases California Civil Code Section 1542 and similar provisions in other states. Each Releasor hereby certifies that he, she, or it is aware of and has read and reviewed the following provision of California Civil Code Section 1542 ("Section 1542"):

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

112.     The provisions of the Class Release shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction.

113.     Each Releasor waives any and all defenses, rights, and benefits that may be derived from the provisions of applicable law in any jurisdiction that, absent such waiver, may limit the extent or effect of the release contained in this Agreement.

114.     The Parties and each member of the proposed Settlement Class agree that the amounts to be paid under this Settlement Agreement to each Settlement Class Member represent the satisfaction of that Settlement Class Member's claims for the Released Claims. No portion of such settlement represents the payment of punitive or exemplary damages. In consideration for the satisfaction of each Settlement Class Member's claim for compensatory damages, claims for punitive or exemplary damages arising from the Released Claims shall be released. Without limiting the foregoing, Plaintiffs agree and covenant, and each Settlement Class Member shall be deemed to have agreed and covenanted, not to sue any Released Party with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity or any other forum. In addition, Plaintiffs and each Settlement Class Member are hereby enjoined from asserting as a defense, including as a set-off or for any other purpose, any argument that if raised as an independent claim would be a Released Claim.

## VIII.     PRELIMINARY APPROVAL AND  SETTLEMENT CLASS CERTIFICATION

115.     This settlement shall be subject to approval of the Court. As set forth in this Agreement, Simmons shall have the right to withdraw from the settlement and the Settlement Agreement if the Court does not issue the Preliminary Approval Order or the Final Approval Order or if the Class is not certified for settlement purposes or as otherwise permitted under this Agreement.

116. Within no later than seven (7) days following execution of this Agreement by all Parties, Plaintiffs through Class Counsel shall submit to the Court a motion (the "Preliminary Approval Motion"), consistent with the terms of this Agreement: (a) for certification of the Settlement Class; and (b) for preliminary approval of the Agreement, and authorization to disseminate notice of class certification and settlement contemplated by this Settlement Agreement to all potential Class Members. Consistent with the terms of this Agreement, the Preliminary Approval Motion shall apply for entry of the Preliminary Approval Order in the form attached hereto Exhibit 1. The Preliminary Approval Motion shall also request that Plaintiffs be appointed as class representatives for the Class and that Class Counsel be appointed as counsel for the Class.

The Preliminary Approval Order shall contain such provisions as set forth in Exhibit 1 including provisions:

    a.   preliminarily certifying the Class for settlement purposes only;

    b.   preliminarily approving this settlement and finding this settlement sufficiently fair, reasonable, and adequate to allow Notice to be disseminated to the Class;

    c.   approving the form, content and manner of Settlement Class Notice;

    d.   appointing KCC Class Action Services LLC as the Settlement Administrator;

    e.   setting a schedule for proceedings with respect to final approval of this settlement, including scheduling a Final Approval hearing for no earlier than 120 days from the date of the Preliminary Approval Order;

    f.   providing that, pending entry of a Final Approval Order and Judgment, no member of the Settlement Class (either directly or in any representative or other capacity) shall commence or continue any action against Defendant or any of the Released Parties asserting any of the Released Claims;

    g.   staying the Litigation, other than such proceedings as are related to this settlement; and

    h.   providing that no admissions have been made by Simmons.

## IX.   <u>SETTLEMENT ADMINISTRATOR</u>

117. Class Counsel and Simmons's Counsel have jointly selected and retained KCC Class Action Services LLC to serve as the Settlement Administrator. The Settlement Administrator shall administer various aspects of the settlement as described in Paragraph 118 of this Agreement, and perform such other functions as are specified for the Settlement Administrator elsewhere in this Settlement Agreement including, but not limited to, establishing the Settlement Fund, providing mailed notice or other required notices to Class Members, distributing settlement funds as provided herein, and returning the Settlement Fund to Simmons in the event of termination of this Agreement, as set forth in Section XVI of this Agreement.

118. The duties of the Settlement Administrator, in addition to other responsibilities that are described elsewhere in this Agreement, include:

    a.   obtaining from Simmons's Counsel the names, last known email addresses, and last known mail addresses for the Class Members in the Notice Database; verifying and

updating the mail addresses so received through the National Change of Address database; and completing Class Notice as provided in Section X of this Agreement;

b. establishing and maintaining a Post Office box for Opt-Out requests as set forth in Section XI of this Agreement, as well as for correspondence from Class Members;

c. establishing and maintaining a Settlement Website that will contain and make available to Class Members certain information regarding the Litigation and the settlement through that website;

d. responding to any mailed Class Member inquiries;

e. processing all requests for exclusion from Class Members;

f. providing to Counsel written monthly reports, and a written final report no later than five (5) business days after the end of the Opt-Out Deadline, that lists all timely and valid Opt-Outs from the Settlement, and other pertinent information;

g. interfacing with any escrow agents who may assist with the Qualified Settlement Fund (if different from the Settlement Administrator);

h. preparing and providing to Simmons's Counsel the confidential Class List and the Redacted Class List to Class Counsel;

i. at Class Counsel and/or Simmons's Counsel request in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Class Member who timely and properly requested exclusion from the Settlement Class and that confirms that the Notice Program as set forth in this Agreement was completed in a timely manner;

j. processing and transmitting Cash Award checks from the Net Settlement Fund to the Settlement Class Members who are former accountholders in accordance with the terms of this Agreement;

k. providing its recommendation concerning whether sufficient Residual Funds remain in the Net Settlement Fund for a Second Cash Award Distribution (defined *supra*) to Qualifying Settlement Class Members, as set forth in Paragraph 92 of this Agreement, and providing a report and/or affidavit of such pertinent information to Counsel;

l. if sufficient funds remain, processing and transmitting a Second Cash Award Distribution to Qualifying Settlement Class Members and providing a report and/or affidavit of such pertinent information to Counsel;

m. qualifying under, and agreeing to comply with, all applicable confidentiality, privacy, and security protocols required by Simmons;

n. complying with the terms of the Protective Order and all applicable provisions of this Agreement;

o. providing, at the direction and on behalf of Simmons, such notice(s) of the settlement as may be required in accordance with the timing and notice requirements of the Class Action Fairness Act;

19

p.   establishing an escrow account and maintaining the Settlement Fund therein as a Qualified Settlement Fund and performing such duties and functions as associated therewith, including without limitation the duties and functions set forth in Section XIX *infra,* or elsewhere in this Agreement; and

q.   performing any other tasks reasonably required to effectuate the settlement.

119.    In the event of termination as provided in Section XVI of this Agreement, the Settlement Administrator shall return the Settlement Fund to Simmons within seven days of termination, less any money that the Settlement Fund has already paid, or incurred an obligation to pay, in accordance with the terms of this Agreement for Administrative Expenses. Plaintiffs shall have no financial responsibility for any Administrative Expenses paid out of the Settlement Fund in the event that the Settlement Agreement is not finally approved or terminated.

## X.    NOTICE TO PROPOSED CLASS MEMBERS

### (a)    Payment of Administrative Expenses Relating to Notice

120.    Simmons shall pay the reasonable Administrative Expenses incurred prior to the creation of the Settlement Fund, and Simmons will be given credit for all such payments which shall be deducted from the Settlement Fund as set forth below. The Settlement Administrator shall provide the Parties with an estimate of the initial Administrative Expenses, *e.g.,* costs of sending Postcard Notice, establishing the Settlement Website, etc. ("Initial Administrative Expenses"). Simmons shall pay the estimated Initial Administrative Expenses to the Settlement Administrator within ten (10) business days after the entry of the Preliminary Approval Order. After that upfront payment of Initial Administration Expenses by Simmons, the Settlement Administrator shall bill Simmons monthly for any reasonable additional Administrative Expenses, until such time as the Settlement Fund is established. Any amounts paid by Simmons for the estimated costs of administration which are not incurred by the Settlement Administrator shall be used for other Administrative Expenses, or shall be deducted from future billings by the Settlement Administrator. The Settlement Administrator estimates that Initial Administrative Expenses will be $43,500, and Administrative Expenses overall shall be $78,000.

121.    The Settlement Administrator shall maintain detailed records of the Administrative Expenses and shall provide those to Counsel monthly. At such time that Simmons funds the Settlement Fund, all amounts previously paid to the Settlement Administrator by Simmons shall be deducted from the total payment which it is required to pay to create the Settlement Fund under Section V. After Simmons has created the Settlement Fund, Simmons shall have no further obligation to pay any amount under this Settlement Agreement, and any additional Administrative Expenses shall be paid out of the Settlement Fund.

### (b)    Form of Notice

122.    In the event the Court enters the Preliminary Approval Order, Notice shall be provided to Class Members via email, mail, and/or website, as provided herein:

a.   For Class Members who have provided their email address to Simmons, the Settlement Administrator will provide Email Notice substantially in the Form shown in Exhibit 4, subject to approval by the Court, to the most recent email address provided by the customer to Simmons.

b. For Class Members who have not provided an email address or, if the Email Notice is not successfully delivered (as shown by an undeliverable message back to the Settlement Administrator), the Settlement Administrator will provide Postcard Notice substantially in the form shown in Exhibit 3, subject to approval by the Court.

c. Notice of the settlement (substantially in the form of Exhibit 5, the Long Form Notice) shall also be posted by the Settlement Administrator on the Settlement Website by the Notice Deadline. The Settlement Administrator shall establish and administer the Settlement Website, which website shall contain information about the settlement, including electronic copies of Exhibits 3 & 4 (or any forms of these notices that are approved by the Court), this Settlement Agreement, and all court documents related to the settlement or otherwise agreed to by Counsel. The URL of the Settlement Website shall be www.WalkingstickFeeSettlement.com or such other URL as Counsel may subsequently agree upon in writing, provided the URL shall not include the name "Simmons" or "Simmons Bank". The Settlement Website shall not include any advertising and shall not bear or include the Simmons Bank logo or Simmons Bank trademarks. Ownership of the Settlement Website URL shall be transferred to Simmons within 10 days of the date on which operation of the Settlement Website ceases. The Settlement Website shall remain operational until sixty days past the stale date of any check mailed to Settlement Class Members. Other than the Settlement Website, there shall be no publication notice (except as Simmons or its affiliates may be required or advised to make under applicable law), and there shall be no press release or other public communication by or on behalf of Plaintiffs and/or Class Counsel.

123. The Notice shall be used for the purpose of informing proposed Class Members, prior to the Final Approval Hearing, that there is a pending settlement, and to further (i) inform Class Members as to how they may obtain a copy of the Settlement Agreement; (ii) protect their rights regarding the settlement; (iii) request exclusion from the Settlement Class and the proposed settlement, if desired; (iv) object to any aspect of the proposed settlement, if desired; and (v) participate in the Final Approval Hearing, if desired. The Notice shall make clear the binding effect of the settlement on all Class Members who do not timely request exclusion from the Settlement Class.

124. **Email & Postcard Notice**. Email Notice and Postcard Notice will be provided by the Settlement Administrator, as follows:

a. To facilitate the provision of Email Notice and Postcard Notice, Simmons will provide to the Settlement Administrator, within ten (10) business days of entry of the Preliminary Approval Order, in an electronically searchable and readable format, a Notice Database containing data sufficient to identify, to the extent reasonably available in Simmons's records, each Class Member's name, last known email address, and last known mail address. Simmons is obligated to provide only such information as is contained and reasonably available in its computerized account records for the applicable Class Period. The Settlement Administrator will prepare and provide a De-Identified Notice Database to Class Counsel.

b. Any personal information relating to members of the Class that is provided to the Settlement Administrator pursuant to this Settlement Agreement shall be provided solely for the purpose of providing Settlement Class Notice to members of the Class and allowing them to recover under this settlement. Such information shall be kept in strict confidence, shall be used only for purposes of this settlement, and shall not be disclosed to any third party.

21

c. Prior to mailing the Postcard Notice, the Settlement Administrator shall run the last known mail addresses for Class Members (as contained in the Notice Database) through the United States Postal Services' National Change of Address Database, and shall update the mail addresses accordingly for mailing and other settlement administration purposes in the Notice Database. Once this process is complete, the Settlement Administrator shall cause individual Postcard Notice (substantially in the form of Exhibit 3) to be sent by the Notice Deadline (as defined in Paragraph 129 of this Agreement), through U.S. Mail to potential Class Members ("Initial Postcard Notices").

d. The Settlement Administrator shall cause Email Notice (substantially in the form of Exhibit 4) to be sent to the last known email address in Simmons's records by the Notice Deadline (as defined in Paragraph 129 of this Agreement).

e. For all Initial Postcard Notices that are returned undeliverable and without a forwarding mail address and for Email Notices that are not successfully delivered, the Settlement Administrator shall perform reasonable address traces. No later than 15 days after the Notice Deadline in Paragraph 129 of this Agreement, the Settlement Administrator shall mail Postcard Notices to those Class Members: (i) whose new mail addresses were identified as of that time through address traces; (ii) whose initial emails were not successfully delivered and the Settlement Administrator located a mail address; or (iii) for whom there was a forwarding mail address ("Notice Remailing Process"). Except as set forth herein, there shall be no further obligation or attempt to obtain a forwarding mail address for any such returned mail or to further re-mail any such Postcard Notices or returned mail after this Notice Remailing Process is complete.

f. Within seven days after the Objection Deadline, the Settlement Administrator shall provide Class Counsel and Simmons's Counsel with an affidavit that confirms that the Notice Program as set forth in this Agreement was completed in a timely manner, reports the details of returned and undeliverable notices, and reports any objections or Opt Outs received by the Settlement Administrator.

g. Within seven days after the date the Settlement Administrator completes the later of the Email Notice and the Notice Remailing Process, the Settlement Administrator shall provide Simmons's counsel with an updated Notice Database reflecting any new mail address information.

125. Class Counsel shall file the affidavits of completion that it receives from the Settlement Administrator pursuant to Paragraph 124(f), *supra*, with the Court as exhibits to or in conjunction with Plaintiffs' motion for Final Approval of the Settlement.

126. CAFA Notice. At the request, expense, and direction of Simmons, the Settlement Administrator shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within ten (10) days of the filing of the Preliminary Approval Motion. It is Simmons's obligation to ensure that notice required by 28 U.S.C. § 1715 is timely provided to the appropriate recipients.

127. Before Class Notice is commenced, Counsel for the Parties shall first be provided with proof copies of the final form of the Class Notices and shall have the right to inspect and approve the same for compliance with the Settlement Agreement and with the Court's orders.

128.     The Parties agree that compliance with the procedures described in this Section X is the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency the Litigation, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval Hearing, and shall satisfy the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable rule or regulation.

### (c)     Notice Deadline

129.     Both the Email Notice and Initial Postcard Notices shall be sent directly to all identified potential Class Members as soon as reasonably practicable following transmission of the Notice Database to the Settlement Administrator and no later than forty-five (45) days after the date that the Court enters the Preliminary Approval Order, or such other date that the Court may set ("Notice Deadline").

## XI.     OPT-OUTS

130.     **Opt-Out Period.**  Class Members will have up to and including approximately forty-five (45) days following the Notice Deadline to opt out of the settlement in accordance with this Section (the "**Opt-Out Deadline**").  If the settlement is finally approved by the Court, all Settlement Class Members who have not opted out by the Opt-Out Deadline will be bound by the Settlement Agreement and the Class Release, and the relief provided by the settlement will be their sole and exclusive remedy for the claims alleged by the Settlement Class.

131.     **Opt-Out Process**

a.  Any Class Member who wishes to be excluded from the Settlement Class must provide a written request for exclusion to the Settlement Administrator, known as an "Opt-Out."  The Opt-Out must be mailed, by first class mail, postage prepaid, and postmarked and addressed to the address of the Settlement Administrator indicated in the Notice on or before the Opt-Out Deadline.  The Settlement Administrator will provide Counsel for the Parties copies of each request for exclusion it receives.

b.  In order to be valid, the Opt-Out must be in writing and include: (i) the Class Member's name, address, telephone number, and the last four digits of the account number; (ii) the name and/or number of this Litigation; and (iii) a statement that the Class Member wishes to be excluded from the Settlement Class.  An Opt-Out must be signed by the Class Member.  An Opt-Out request that does not contain the required information, is not signed, or is not postmarked by the Opt-Out Deadline, shall be invalid and the person serving such a request shall be considered a member of the Settlement Class and shall be bound by the settlement, if approved.

c.  Except as provided in this Section XI, no Class Member may purport to exercise any exclusion rights of any other person, or purport to exclude other persons as a group, aggregate, or class involving more than one person, or as an agent or representative.  Any such purported exclusion shall be invalid and any Class Member that does not submit an opt-out request on his or her own behalf shall be a Settlement Class Member and be bound as a Settlement Class Member for all purposes.  If an accountholder for any joint account submits a valid-opt out request, the request will be effective for all accountholders or signatories to such account.

d.  A list reflecting all timely and valid Opt-Outs shall also be filed with the Court at the time of the motion for final approval of the settlement.

## XII.  OBJECTIONS

132.    Class Members who have not validly opted-out of the settlement in accordance with its terms may object to this Agreement up to and including the date set by the Court in the Preliminary Approval Order, which shall be approximately forty-five (45) days following the Notice Deadline ("Objection Deadline").

133.    The Parties will request that the Court order that any Class Member who has any objection to certification of the Settlement Class, to approval of this Settlement Agreement or any of its terms, or to the approval process must send his, her or its objection to the Settlement Administrator providing the following elements ("Required Objection Elements"):

      a.   the case name and case number(s) of this Litigation;

      b.   the objector's full name, current address, and the last four digits of the account number of any Simmons account the objector claims was charged Challenged Fees in this Litigation;

      c.   a statement that the Settlement Class Member objects to the Settlement, in whole or in part;

      d.   the reasons why the objector objects to the settlement along with any supporting materials;

      e.   the identity of any lawyer who assisted, provided advice, or represents the objecting Class Member as to this case or such objection, if any;

      f.   the objector's signature; and

      g.   a statement indicating whether the objecting Settlement Class Member intends on appearing at the Final Approval Hearing either *pro se* or through counsel and whether the objecting Settlement Class Member plans on offering testimony at the Final Approval Hearing.

134.    The Parties will request that the Court set the Objection Deadline approximately forty-five (45) days after the Notice Deadline.  The Parties will request that the Court order that failure to comply timely and fully with these procedures shall result in the invalidity and rejection of an objection. The Parties will request that the Court order that no Class Member shall be entitled to object to certification of the Class or to the Settlement Agreement, and no written objections or briefs submitted by any Class Member shall be received or considered by the Court at the Final Approval Hearing, unless the Class Member provides written notice with the Required Objection Elements no later than the Objection Deadline.

135.    The Parties will request that the Court order that no Class Member shall be entitled to appear at the Final Approval Hearing unless the Class Member states in his or her objection that he or she intends to appear at the Final Approval Hearing either personally or through counsel.

136.    The Parties will request that the Court order that Class Members who fail to file and serve timely written objections in accordance with this Section shall be deemed to have waived any objections and shall be foreclosed from making any objection to the certification of the Settlement Class or to the Settlement Agreement.

24

# XIII.    FINAL APPROVAL HEARING

137.    The Parties will request that the Court hold a Final Approval Hearing.  The date for the Final Approval Hearing shall be set for approximately one hundred twenty (120) days after entry of the Preliminary Approval Order, or at such other later time as complies with all applicable timing requirements under CAFA and as the Court determines.

138.    At the Final Approval Hearing, the Parties will request that the Court consider whether the Class should be certified pursuant to Federal Rule of Civil Procedure 23 for settlement, and, if so: (i) consider and rule on any properly filed objections to the Settlement Agreement; (ii) determine whether the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith; and (iii) enter the Final Approval Order and Judgment, including final approval of the Settlement Class and the Settlement Agreement and any award of attorneys' fees and expenses and Service Awards.

# XIV.    FINAL APPROVAL ORDER AND JUDGMENT

139.    If the settlement is approved preliminarily by the Court, and all other conditions precedent to the settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing, the Parties shall jointly seek entry of a Final Approval Order.  Class Counsel shall file a memorandum of points and authorities in support of the motion for Final Approval of the Class Settlement.  Class Counsel and/or Simmons may file a memorandum addressing any Objections submitted to the settlement.  The dismissal orders, motions, or stipulation to implement this Section shall, among other things, seek or provide for a dismissal with prejudice and waive any rights of appeal.  The motion for entry of a Final Approval Order will include a declaration from the Settlement Administrator stating that the Notice required by the Agreement has been completed in accordance with the terms of the Court's Preliminary Approval Order.

140.    The Parties shall jointly submit to the Court a proposed Final Approval Order and Judgment, in the form attached hereto as Exhibit 2, that, without limitation, approves the settlement and certifies the Settlement Class pursuant to Federal Rule Civil Procedure 23 and:

   a.  finds that this Agreement is fair, reasonable, and adequate and was entered into in good faith and without collusion, and approves and directs consummation of this Agreement according to its terms;

   b.  finds that the Class Notice provided satisfied the requirements of due process and of Federal Rules of Civil Procedure Rule 23(e)(1);

   c.  approves the Class Release provided in Section VII and finds that, as of the Effective Date, the Settlement Class Members will each be bound by this Agreement, including the Release and Covenant not to sue set forth in Section VII;

   d.  dismisses, on the merits and with prejudice, all Released Claims of Plaintiffs and of the Settlement Class Members against Simmons in the Litigation, without costs and fees except as ordered by the Court;

   e.  permanently enjoins each and every Settlement Class Member from bringing, joining, or continuing to prosecute any Released Claim, or from asserting as a defense, including as a set-off or for any other purpose, any argument that if raised as an independent claim would be a Released Claim, against Simmons or any of the Released Parties;

f. reserves continuing and exclusive jurisdiction over the settlement and this Agreement, including but not limited to the Litigation, the settlement, the Settlement Class Members, and Simmons, for the purposes of administering, consummating, supervising, construing, and enforcing the Settlement Agreement and the Settlement Fund; and

g. finds that, pursuant to Federal Rule Civil Procedure 54(b), there is no just reason for delay of entry of Final Judgment with respect to the foregoing.

141. This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order that grants final approval of this Agreement and enters a Final Judgment as set forth in this Agreement. Class Counsel shall use their best efforts to assist Simmons in obtaining dismissal with prejudice of the Litigation accordingly and take all steps necessary and appropriate to otherwise effectuate all aspects of this Agreement.

## XV. FINAL ORDER

142. As part of the Final Approval Order and Judgment, the Court's order shall operate to permanently enjoin any and all pending or future claims by Settlement Class Members against the Released Parties raising or arising out of any Released Claim.

143. The Court's Final Approval Order and Judgment shall enjoin and forever bar any and all Settlement Class Members from commencing and/or maintaining any action, legal or otherwise, against the Released Parties raising or arising out of any Released Claim.

144. This provision is not intended to prevent or impede the entitlement to Cash Awards under this Settlement Agreement.

## XVI. TERMINATION OF THE SETTLEMENT

145. Plaintiffs and Simmons shall have the right to unilaterally terminate this Agreement by providing written notice of its election to do so ("Termination Notice") to each other hereto within ten (10) calendar days of any of the following occurrences:

a. the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement Agreement;

b. an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated without material change by the Court on remand;

c. any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order and Judgment, or the Settlement Agreement in a way that is material, unless such modification or amendment is accepted in writing by all Parties;

d. notification from the Settlement Administrator that more than one percent (1%) or 500 of the Class Members Opt-Out, whichever is less;

e. the Effective Date does not occur; or

f. any other ground for termination provided for elsewhere in this Agreement occurs.

26

146.     In the event the Settlement Agreement is not approved or does not become final, or is terminated consistent with this Settlement Agreement, the Parties, pleadings, and proceedings will return to the *status quo ante* as if no settlement had been negotiated or entered into, and the Parties will negotiate in good faith to establish a new schedule for the Litigation.  In such event, the Parties' rights and defenses will be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with this Agreement will be vacated.

147.     In the event of a termination as provided for herein or elsewhere in this Agreement, the Settlement Administrator shall return the Settlement Fund to Simmons within seven days of termination, less any money that the Settlement Fund has already paid or incurred an obligation to pay in accordance with the terms of this Agreement for Administrative Expenses.

## XVII.     ATTORNEYS' FEES AND SERVICE AWARD

148.     Class Counsel shall file any petition to the Court for an award of attorneys' fees and costs from the Settlement Fund at least fifteen (15) days prior to the Objection Deadline.  Simmons will take no position on a request for attorneys' fees that is one-third or less of the Value of the Settlement, but Simmons reserves the right to object to any request for attorneys' fees that exceeds one-third of the Value of the Settlement.

149.     In no event will Simmons have any financial responsibility or liability whatsoever for attorneys' fees, expenses, or costs beyond its obligation to establish the Settlement Fund and pay Simmons's Expert Expenses, as set forth in this Agreement.  In particular and without limiting the foregoing, Simmons shall have no financial responsibility or liability for attorneys' fees and costs sought by any member of the Class or by any counsel representing or working on behalf of one or more Class Members or the Settlement Class, and no obligation for allocation of fees and costs among Class Counsel or attorneys representing or working on behalf of Class Members.

150.     At the same time Class Counsel seeks approval of their attorneys' fees and costs, Class Counsel shall petition the Court for a Service Award for the Class Representatives in an amount not to exceed $10,000.  The Service Award shall be paid solely from the Settlement Fund and no interest shall accrue or otherwise be due or payable in connection with any such award.  The Service Award shall be paid to Plaintiffs in addition to any Cash Award or Forgiven Charge Offs, and Plaintiffs shall be entitled to any Cash Award or any other Settlement Class Member payment.  The Parties warrant that they commenced negotiations on the proposed Service Award only after they reached agreement on all other material terms of this Settlement Agreement.

151.     The payments of attorneys' fees, costs, and a Service Award set forth in Paragraphs 148 and 150 above are subject to and dependent upon the Court's approval of the settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class.  However, this settlement is not dependent or conditioned upon the Court approving Plaintiffs' and/or Class Counsel's request for such payments or awarding the particular amounts sought by Plaintiffs and/or Class Counsel.  In the event the Court declines Plaintiffs' and/or Class Counsel's requests or awards less than the amounts sought, this settlement, including but not limited to the Releases provided herein, shall continue to be effective and enforceable by the Parties.

## XVIII.     REPRESENTATIONS

152.     The Parties agree that the Settlement Agreement provides fair, equitable, and just compensation, and a fair, equitable, and just process for determining eligibility for compensation for any given Settlement Class Member related to the Released Claims.

153.    Class Counsel represent and agree that, upon request by Defendant, within seventy (70) days after the dismissal of the Litigation ("Final Disposition"), they will certify compliance with Paragraph 5(b) of the Stipulated Protective Order entered in the Litigation.  Litigation, Dkt. 57.

154.    The Parties shall use their best efforts to conclude the settlement and obtain the Final Approval Order and Judgment, including affirmatively supporting the settlement in the event of an appeal or an objection.

155.    The Parties specifically acknowledge, agree, and admit that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any other equivalent or similar rule of evidence of any state, and shall not: (a) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party; or (b) be used to establish a waiver by Simmons of any defense or right, or to establish or contest jurisdiction or venue in other litigation.  Notwithstanding the foregoing, any Party shall be entitled to use this Settlement Agreement and its Exhibits in connection with enforcement of the obligations and waivers set forth herein and for all other purposes set forth below at Paragraph 158.

156.    In consideration of the agreements made herein, Class Counsel hereby warrant and represent to Simmons that as of the execution date of this Agreement: (a) Class Counsel are not aware that any current clients have claims against Simmons similar to the claims alleged in the Litigation, except the *Landmark Bank* Litigation and *Wilkins* Litigation discussed herein; and (b) Class Counsel are not actively soliciting clients to bring cases specifically against Simmons for violations similar to those alleged in the Litigation.

157.    The Parties also agree that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders, or other documents entered in furtherance of this Settlement Agreement, and any acts in the performance of this Settlement Agreement are not intended to establish grounds for certification of any class involving any Class Member other than for certification of the Class for settlement purposes.

158.    The provisions of this Settlement Agreement, and any orders, pleadings, or other documents entered in furtherance of this Settlement Agreement, may be offered or received in evidence solely: (i) to enforce the terms and provisions hereof or thereof; (ii) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a Party hereto; (iii) in order to establish payment, or an affirmative defense of preclusion or bar in a subsequent case; (iv) in connection with any motion to enjoin, stay or dismiss any other action; or (v) to obtain Court approval of the Settlement Agreement.

159.    Subject to settlement notice process set forth in Section X, the Parties agree that they will not initiate any publicity of the settlement and will not respond to requests by any media (whether print, online, or any traditional or non-traditional form), except to say "no comment" and direct any inquiries to the information on the settlement website about the settlement.  Notice of the settlement will be delivered exclusively through the notice process set forth in Section X above.  Nothing in this provision shall be interpreted to limit representations that the Parties or their attorneys may make to the Court to assist it in its evaluation of the proposed settlement, nor shall this provision prohibit Class Counsel from having communications about the settlement directly with the Settlement Administrator or with Class Members.

160.    This Agreement shall be deemed executed as of the date that the last Party signatory signs the Agreement.  This Agreement and the Exhibits hereto constitute the entire agreement between the Parties and shall fully supersede any previous agreement entered into by the Parties and represent the full and final agreement between the Parties.

161.    The Parties agree to request that the Court approve the forms of the Preliminary Approval Order attached hereto as Exhibit 1, the Final Approval Order and Judgment attached as Exhibit 2, the Postcard Notice attached as Exhibit 3, the Email Notice attached as Exhibit 4, and the Long Form Notice attached as Exhibit 5.  The fact that the Court may require non-substantive changes to any of these documents does not invalidate this Settlement Agreement.

## XIX.    TAXES

162.    **Qualified Settlement Fund.**  The Parties agree that the escrow account into which the Settlement Fund is deposited, following the Settlement Funding Deadline, is intended to be and will at all times constitute a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B 1 ("Qualified Settlement Fund').  The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of Section VI.  It shall be the responsibility of the Settlement Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

163.    **The Settlement Administrator is "Administrator."**  For the purpose of §1.468B of the Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund.  The Settlement Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B 2(k)).  Such returns shall reflect that all Taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

164.    **Taxes Paid by Administrator.**  All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax purposes shall be paid by the Settlement Administrator from the Settlement Fund.

165.    **Expenses Paid from Fund.**  Any Administrative Expenses reasonably incurred by the Settlement Administrator in carrying out its duties, including fees of tax attorneys and/or accountants, shall be paid by the Settlement Administrator from the Settlement Fund.

166.    **Responsibility for Taxes on Distribution.**  Any person or entity that receives a distribution from the Settlement Fund shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such taxes and tax-related expenses shall not be paid from the Settlement Fund.

167.    **Simmons Is Not Responsible.**  In no event shall Simmons or any of the other Released Parties have any responsibility or liability to Plaintiffs, Settlement Class Members, or to Class Counsel for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Plaintiffs, Settlement Class Members, or Class Counsel.  The Settlement Fund shall indemnify and hold Simmons and the other Released Parties harmless for all such taxes and tax-related expenses (including, without limitation, taxes, and tax-related expenses payable by reason of any such indemnification).

29

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, dated as of April __, 2022.

4/28/2022
DATED: _____

Danny Walkingstick /alkingstick
5267FCB9A7DA4C4...

DATED: _____          Plaintiff Whitnye A. Fort

DATED: _____          Defendant Simmons Bank

By: _____

Name: _____

Title: _____

APPROVED AS TO FORM AND CONTENT

DATED: _____          COHEN & MALAD, LLP

By: _____
    Lynn A. Toops

DATED: _____          PAUL LLP

By: _____
    Ashlea G. Schwartz

DATED: _____          JOHNSON FIRM

By: _____
    Christopher D. Jennings

DATED: _____          BRANSTETTER, STRANCH & JENNINGS PLLC

By: _____
    J. Gerard Stranch, IV

*Counsel for Plaintiffs and Class Counsel*

30

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, dated as of April __, 2022.

DATED: _____    Plaintiff Danny L. Walkingstick

5/2/2022

DATED: _____    _____ Fort

*WHITYNE A FORT*
9175F3550EB443E...

DATED: _____    Defendant Simmons Bank

By: _____

Name: _____

Title: _____

APPROVED AS TO FORM AND CONTENT

DATED: _____    COHEN & MALAD, LLP

By: _____
    Lynn A. Toops

DATED: _____    PAUL LLP

By: _____
    Ashlea G. Schwartz

DATED: _____    JOHNSON FIRM

By: _____
    Christopher D. Jennings

DATED: _____    BRANSTETTER, STRANCH & JENNINGS PLLC

By: _____
    J. Gerard Stranch, IV

*Counsel for Plaintiffs and Class Counsel*

30

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, dated as of April __, 2022.

DATED: _____     Plaintiff Danny L. Walkingstick

DATED: _____     Plaintiff Whitnye A. Fort

DATED: _____     Defendant Simmons Bank

By: _____

Name: _____

Title: _____

APPROVED AS TO FORM AND CONTENT

4/26/2022
DATED: _____     COHEN & MALAD, LLP

By: _____
Lynn A. Toops

4/28/2022
DATED: _____     PAUL LLP

By: _____
Ashlea G. Schwartz

4/26/2022
DATED: _____     JOHNSON FIRM

By: _____
Christopher D. Jennings

4/28/2022
DATED: _____     BRANSTETTER, STRANCH & JENNINGS PLLC

By: _____
J. Gerard Stranch, IV

*Counsel for Plaintiffs and Class Counsel*

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, dated as of ~~April 4~~, 2022.
May

DATED: _____          Plaintiff Danny L. Walkingstick

DATED: _____          Plaintiff Whitnye A. Fort

DATED: _MAY 4, 2022_          Defendant Simmons Bank

By: _Bob Fehl_____

Name: _Bob Fehlman_____

Title: _President + COO_____

APPROVED AS TO FORM AND CONTENT

DATED: _____          COHEN & MALAD, LLP

By: _____
      Lynn A. Toops

DATED: _____          PAUL LLP

By: _____
      Ashlea G. Schwartz

DATED: _____          JOHNSON FIRM

By: _____
      Christopher D. Jennings

DATED: _____          BRANSTETTER, STRANCH & JENNINGS PLLC

By: _____
      J. Gerard Stranch, IV

*Counsel for Plaintiffs and Class Counsel*

746503386.4 22-Apr-22 14:32

DATED: 5/4/2022

MAYER BROWN LLP

By: _____
Debra Bogo-Ernst

*Attorneys for Defendant Simmons Bank, N.A.*

# EXHIBIT 1
# PROPOSED ORDER RE:
# PRELIMINARY APPROVAL

746503386.4 22-Apr-22 14:32

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DANNY L. WALKINGSTICK, | ) | |
| WHITNYE A. FORT, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | Case No. 6:19-cv-03184-RK |
| Plaintiffs, | ) | |
| | ) | Hon. Roseann A. Ketchmark |
| v. | ) | |
| | ) | |
| SIMMONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT;
CERTIFYING CLASS; APPROVING NOTICE; AND SETTING
DATE FOR FINAL APPROVAL HEARING**

**WHEREAS**, Plaintiffs Danny L. Walkingstick and Whitnye A. Fort ("Plaintiffs") and

Defendant Simmons Bank ("Simmons" or "Defendant") (together the "Parties"), have reached a

proposed Settlement of this Litigation, which is set forth in the Settlement Agreement and Release

filed with the Court as ECF No. __ ("Settlement Agreement"); and

**WHEREAS**, Plaintiffs have applied to the Court for preliminary approval of the proposed

Settlement, the terms and conditions of which are set forth in the Settlement Agreement, and for

conditional certification of a Settlement Class; and

**WHEREAS**, Defendant joins in the request for preliminary approval of the Settlement and

conditional certification of a Settlement Class; and

**WHEREAS**, the Court has fully considered the record of these proceedings, the Settlement

Agreement and all exhibits thereto, the representations, arguments, and recommendation of

counsel for the Parties and the requirements of law; and

1

**WHEREAS**, it appears to the Court upon preliminary examination that adequate investigation and research has been conducted such that the counsel for the Parties at this time are able to reasonably evaluate their respective positions. It further appears to the Court that settlement at this time will avoid substantial additional costs by all Parties, as well as avoid the delay and risks that would be presented by the further prosecution of this Litigation; and

**WHEREAS**, it appears to the Court upon the preliminary examination that the proposed Settlement is fair, reasonable, and adequate, and that a hearing should be held after notice to the Class of the proposed Settlement to finally determine whether the proposed Settlement is fair, reasonable, and adequate and whether a Final Approval Order and Judgment should be entered in this Litigation.

### THIS COURT FINDS AND ORDERS AS FOLLOWS:

1. The capitalized terms used in this Preliminary Approval Order shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2. Preliminary approval of the proposed settlement is granted and the Parties are ordered to direct notice of the proposed settlement to the Class, in the manner set forth below and in the Settlement Agreement. The Court finds that it likely will be able to approve the settlement pursuant to the standards set forth in Rule 23(e)(2)-(5) because it appears that (A) the Class Representatives and Class Counsel have adequately represented the Class; (B) the settlement was negotiated at arm's length; (C) the settlement provides adequate relief for the Class, taking into account the costs, risks, and delay of trial and appeal, the likely attorneys' fees to be awarded, the effectiveness of the proposed method of distributing relief to the Class, and all agreements related to the settlement identified by Class Counsel; and (D) the settlement treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)–(3). Furthermore, the settlement provides

Class members with an opportunity to opt out and to object. Fed. R. Civ. P. 23(e)(4)–(5). In addition, the Court has considered the four factors identified by the Eighth Circuit for determining whether a settlement is fair, reasonable, and adequate, *see In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005), and concludes that they support preliminary approval of the settlement. Specifically, the Court finds that the settlement is likely to be fair, reasonable, and adequate in light of (i) the merits of the plaintiffs' case, weighed against the terms of the settlement; (ii) the defendant's financial condition; (iii) the complexity and expense of further litigation; and (iv) the (anticipated) amount of opposition to the settlement. *Id.*; *accord Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015).

3. The Settlement Agreement was entered into by experienced counsel after substantial adversarial proceedings, including significant discovery and motions, and only after extensive arm's-length negotiations, including a full-day private mediation conducted by Judge Morton Denlow (ret.), an experienced mediator, and free of any apparent collusion.

4. For purposes of the Settlement only and subject the Settlement Agreement, the Court finds that the prerequisites for class certification under Rule 23 of the Federal Rules of Civil Procedure have been preliminarily satisfied, and conditionally certifies the following Class:

> All current and former holders of a Simmons Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder who, during the Class Period, incurred one or more Overdraft Fees or NSF fees when the Available Balance in the customer's Simmons account was negative but the customer's Ledger Balance (or any other account balance) in their Simmons's account was positive.

The Court excludes from the Class all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiffs' counsel and Simmons officers and employees. The persons potentially comprising the Class and to whom Notice is to be emailed

or mailed are identified in the Notice Database, as defined in the Settlement Agreement, which data will be maintained as indicated in the Settlement Agreement.

5.     For purposes of settlement only and subject to the Settlement Agreement, the Court further finds that "Class Period" means May 22, 2014 to and including the date of this Order.

6.     The Court preliminarily finds, for Settlement purposes only and subject to the Settlement Agreement, that the proposed Settlement Class satisfies the prerequisites for a settlement class action under Federal Rule of Civil Procedure 23 and, pursuant to Rule 23(b)(3), conditionally certifies the Settlement Class.   In particular, the Court finds, for purposes of settlement only, that the following requirements are met:

a.     The above-described Class is so numerous that joinder of all members is impracticable;

b.     There are questions of law or fact common to the Class;

c.     The claims of the Class Representatives are typical of the claims of the Class;

d.     The Class Representatives will fairly and adequately protect the interests of the Class;

e.     The questions of fact or law common to the members of the Class predominate over the questions affecting only individual members; and

f.     Certification of the Class is superior to other available methods for the fair and efficient adjudication of the controversy. The Court notes that, because the litigation is being settled, rather than litigated, it need not consider the manageability issues that would be presented by this litigation. *Amchem Prods. Inc. v. Windsor*, 117 S. Ct. 2231, 2240 (1997).

7.  The Court finds that it has personal jurisdiction over the subject matter of this Litigation and personal jurisdiction over the Parties and all Class Members, including the absent Class Members.

8.  Plaintiffs Danny L. Walkingstick and Whitnye A. Fort are hereby preliminarily appointed and designated as Class Representatives. This Court preliminarily finds that each will fairly and adequately represent and protect the interests of the absent Class Members.

9.  The Court appoints Lynn A. Toops of Cohen & Malad, LLP; Ashlea G. Schwarz of Paul LLP; Christopher D. Jennings of Johnson Firm; J. Gerard Stranch, IV of Brannstetter, Stranch & Jennings, PLLC; and Jeffrey D. Kaliel of Kaliel Gold PLLC, as settlement Class Counsel. This Court preliminarily finds that they are competent, capable of exercising all responsibilities as Class Counsel and will fairly and adequately represent and protect the interests of the absent Class Members.

10. Class Counsel is authorized to act on behalf of the Class Members with respect to all acts or consents required by, or which may be given pursuant to, the Settlement Agreement, and such other acts reasonably necessary to consummate the Settlement Agreement. Any Class Member may enter an appearance through counsel of his or her own choosing and at his or her own expense. Any Class Member who does not enter an appearance or appear on his or her own will be represented by Class Counsel.

11. The Court approves KCC Class Action Services LLC to serve as the Settlement Administrator in this Litigation, and to fulfill the functions, duties, and responsibilities of the Settlement Administrator as set forth in the Settlement Agreement and this Order. By accepting this appointment, the Settlement Administrator has agreed to the Court's jurisdiction solely for

purpose of enforcement of the Settlement Administrator's obligations under the Settlement Agreement.

12. Except as provided in the Settlement Agreement with respect to the *Wilkins* Litigation, any information comprising or derived from the Notice Database or Class List provided to the Settlement Administrator pursuant to the Settlement Agreement shall be provided solely for the purpose of providing Notice, or following final approval, Cash Awards or Charge Offs, to the Class Members and informing such Class Members about their rights further to this Settlement, shall be kept in strict confidence, shall not be disclosed to any third party other than as set forth in the Settlement Agreement to effectuate the terms of the Agreement or the administration process, shall be used for no other cases, and shall be used for no other purpose. To the extent that a Settlement Class Member has a question, Simmons shall disclose information about the identity of Settlement Class Members to the limited extent required for Class Counsel to provide necessary assistance in response to such a question.

13. To the extent that any federal or state law governing the disclosure and use of consumers' financial information (including but not limited to "nonpublic personal information" within the meaning of the Graham–Leach–Bliley Act, 15 U.S.C. § 6801 *et seq*., and its implementing regulations) permits such disclosure only as required by an order of a court, this order—

(a) qualifies as "judicial process" under 15 U.S.C. § 6802(e)(8), and

(b) authorizes the production of such information subject to this order's protections, in which case the producing party's production of such information in accordance with this order constitutes compliance with the applicable law's requirements. To the extent that any such law requires a producing or requesting party to give prior notice to the subject of any consumer

financial information before disclosure, the Court finds that the limitations in this order furnish good cause to excuse any such requirement, which the Court hereby excuses.

14.     If the Settlement is terminated or is not consummated for any reason, the foregoing conditional certification of the Class and appointment of the Class Representatives and Class Counsel shall be void and of no further effect, and the Parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order, without prejudice to any legal argument that any of the parties to the Settlement might have asserted but for the Settlement.

15.     A Final Approval Hearing shall be held before this Court on _____, 2022, at ____ _.m.,[1] to address, among other things: (a) whether the Court should finally certify the Settlement Class and whether the Class Representatives and Class Counsel have adequately represented the Settlement Class; (b) whether the proposed Settlement should be finally approved as fair, reasonable and adequate and whether the Final Approval Order and Judgment should be entered; (c) whether the Released Claims of the Settlement Class in this Litigation should be dismissed on the merits and with prejudice; (d) whether Class Counsel's Attorneys' Fees and Costs application and the Service Award for Named Plaintiffs should be approved; and (e) such other matters as the Court may deem necessary or appropriate.

16.     Papers in support of final approval of the Settlement, and in support of or opposition to the Service Award to the Class Representatives and Class Counsel's Attorneys' Fees and Costs application shall be filed with the Court according to the schedule set forth in Paragraph 28 below. The Final Approval Hearing may be postponed, adjourned, or continued by order of the Court without further notice to the Settlement Class. After the Final Approval Hearing, the Court may enter a Final Approval Order and Judgment in accordance with the Settlement Agreement that will

---

[1] A date not earlier than 120 days following entry of the Preliminary Approval Order as detailed in Paragraph 28 *infra.*

adjudicate the rights of all Settlement Class Members with respect to the Released Claims being settled. The Court may finally approve the Settlement at or after the Final Approval Hearing with any modifications agreed to by Simmons and the Class Representatives and without further notice to the Settlement Class, except such notice as may be provided through the Settlement Website.

17.     The Court approves, as to form and content, the use of a short-form Email Notice and Postcard Notice (together, the "Notice") substantially similar to the forms attached as Exhibits 3 and 4 to the Settlement Agreement, respectively. The Postcard Notice will be provided to members of the Class by first-class U.S. mail using Simmons's records as well as other investigations deemed appropriate by the Settlement Administrator, updated by the Settlement Administrator in the normal course of business. The Postcard Notice shall be mailed within 45 days of the date of entry of this Preliminary Approval Order (the Notice Deadline). The Email Notice will be emailed to Simmons accountholders who have provided their email address to Simmons, within 45 days of the date of entry of this Preliminary Approval Order. The Long Form Notice, Exhibit 5 to the Settlement Agreement, will be posted on the Settlement Website established by the Settlement Administrator, as set forth under the Settlement Agreement, within 45 days of the date of the entry of this Preliminary Approval Order (the Notice Deadline). Prior to the Final Approval Hearing, the Settlement Administrator will submit to the Court a declaration of compliance with these notice provisions.

18.     In the event the Postcard Notice is returned undeliverable with a forwarding address, the Settlement Administrator shall promptly re-mail the Postcard Notice to the indicated forwarding address. In the event the Postcard Notice is returned undeliverable without a forwarding address, the Settlement Administrator shall promptly perform reasonable address traces for such returned notices in accordance with the Settlement Agreement. The Settlement

8

Administrator shall complete the remailing of Mailed Notices to those Class Members who were identified as of that time through address traces or forwarding addresses promptly and within no later than 15 days after the initial Notice Deadline. In the event that the Email Notice is returned as undeliverable or invalid, the Settlement Administrator shall promptly mail the Postcard Notice via first-class U.S. mail to the most recent known address, based on Simmons's records as well as other investigations deemed appropriate by the Settlement Administrator, within 15 days after the initial Notice Deadline. Except as set forth herein, there shall be no further obligation or attempt to obtain a forwarding address for any such returned mail or to further re-mail any such Postcard Notice, Email Notice, or returned mail. Prior to the Final Approval Hearing, the Settlement Administrator will submit to the Court a declaration of compliance with these notice re-mailing provisions.

19. The Settlement Administrator shall have the discretion to make revisions to the format of the Notice in a reasonable manner to reduce mailing or administrative costs. Non-substantive changes may be made to the Notice by agreement of the Parties without further order of the Court.

20. The Notice, as directed in this Order and set forth in the Settlement Agreement, constitutes the best notice practicable under the unique circumstances of this case and is reasonably calculated to apprise the members of the Settlement Class of the pendency of this Litigation and of their right to object to the Settlement or exclude themselves from the Settlement Class. The Court further finds that the Notice Program is reasonable, that it constitutes due, adequate, and sufficient notice to all persons entitled to receive such notice and that it meets the requirements of due process and of Federal Rule of Civil Procedure 23.

21.     The cost of Notice and Administrative Expenses shall be paid from the Settlement Fund, as provided for in the Settlement Agreement.

22.     Any member of the Class who desires to be excluded from the Settlement Class, and therefore not be bound by the terms of the Settlement Agreement, must submit to the Settlement Administrator, pursuant to the instructions and requirements set forth in the Notice, a timely and valid written request for exclusion postmarked no later than 45 days following the Notice Deadline.

23.     Each request for exclusion, or "Opt-Out", must be personally signed by the individual Class Member; any so-called "mass" or "class" opt-outs shall not be allowed. Further, to be valid and treated as a successful exclusion or "Opt-Out" the request must include: (i) the requester's full name, address, the last four digits of the account number, and contact telephone number or email address; (ii) the case name and number of this Litigation; (iii) an unequivocal statement that the Requestor desires to be excluded from the Settlement Class, and (iv) the requestor's signature.

24.     No person shall purport to exercise any exclusion rights for any other person, or purport to exclude any other Class Member as a group, aggregate, or class involving more than one Class Member, or as an agent or representative. Any such purported exclusion shall be void and the person that is the subject of the purported opt-out shall be treated as a member of the Settlement Class and be bound by the Settlement.

25.     Any member of the Settlement Class who elects to be excluded shall not be entitled to receive any of the benefits of the Settlement, shall not be bound by the release of any claims pursuant to the Settlement Agreement, and shall not be entitled to object to the Settlement or appear at the Final Approval Hearing.

26. Any Class Member who does not submit a valid and timely request for exclusion may object to the proposed Settlement. Any such Class Member shall have the right to appear and be heard at the Final Approval Hearing, either personally or through an attorney retained at the Class Member's own expense. Any such Class Member must file with the Court and mail to the Settlement Administrator a written notice of intention to appear together with supporting papers, including a detailed statement of the specific objections made, delivered or postmarked no later than the Objection Deadline.[2] Each Objection must state (a) the case name and number of this Litigation; (b) objector's full name, current address, and the last four digits of the account number of any Simmons account the objector claims was charged Challenged Fees in this Litigation; (c) a statement that the Settlement Class Member objects to the Settlement, in whole or in part; (d) the reasons why the objector objects to the Settlement along with copies any documents or other supporting materials; (e) the identity of any lawyer who assisted, provided advice, or represents the objector as to this case or such objection, if any; and (f) whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing either *pro se* or through counsel and whether the objecting Settlement Class Member plans on offering testimony at the Final Approval Hearing; and (g) the objector's original signature. Persons wishing to speak at the hearing must file by the same Objection Deadline a Notice of Intent to Appear containing such information as explained fully in the approved Notices. Any Settlement Class Member that fails to do object in the manner set forth herein shall be deemed to have waived, and shall forever be foreclosed from raising, any objection or opposition, by appeal, collateral attack, or otherwise and shall be bound by all of the terms of this Settlement upon Final Approval and by all proceedings, orders and judgments, including but not limited to the Release in the Litigation.

---

[2] A date that is no later than 45 days following the Notice Deadline and which will be specified by reference to a date certain in the Notices.

27. Pending entry of the Final Approval Order and Judgment, the Plaintiffs, Class Members, and any person or entity purporting to act on their behalf, are preliminarily enjoined from commencing or prosecuting (either directly, representatively, or in any other capacity) any Released Claim against any of the Released Parties in any action, arbitration or proceeding in any court, arbitration forum, or tribunal; provided, however, that this injunction shall not apply to individual claims of any Class Members who timely exclude themselves in a manner that complies with this Order and the Settlement Agreement. This injunction is necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

28. Further settlement proceedings in this matter shall proceed according to the following schedule:

| EVENT | SCHEDULED DATE |
|---|---|
| Notice deadline (short-form Postcard Notice, Email Notice, and Long Form website posting) | 45 days after entry of Preliminary Approval Order |
| Attorney's Fees and Costs and Service Award application | 15 days before Objection Deadline |
| Last day for Class Members to opt out of Settlement (the Opt-Out Deadline) | 45 days after Notice Deadline |
| Last day for Class Members to Object to the Settlement (the Objection Deadline) | 45 days after Notice Deadline |
| Briefs in support of Final Approval or Opposition to any Objections due by | 14 days prior to the Final Approval Hearing |
| Simmons to file certification regarding CAFA notice requirements | 14 days prior to the Final Approval Hearing |

| Final Approval Hearing | On the date set in paragraph 15, but no earlier than 120 days after entry of Preliminary Approval Order |
|---|---|

29. Service of all papers on counsel for the parties shall be made as follows: for settlement Class Counsel to Lynn A. Toops, Cohen & Malad, LLP, One Indiana Square, Suite 1400, Indianapolis, Indiana 46204; for Defendant to Debra Bogo-Ernst, Mayer Brown LLP, 71 S. Wacker Dr., Chicago, IL 60606.

30. The address of this Court for purposes of any Objection as set forth in paragraph 26 is: Clerk of the Court, U.S. District Court for the Western District of Missouri, Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street, Kansas City, MO 64106.

31. In the event that a Final Approval Order and Judgment is not entered by the Court, or the Effective Date of the Settlement does not occur, or the Settlement Agreement otherwise terminates according to its terms, this Order and all orders entered in connection therewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever, including without limitation for any evidentiary purpose (including but not limited to class certification), in this Litigation or any other action. In such event the Settlement Agreement, exhibits, attachments and all negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all of the parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

32. Any deadlines set in this Preliminary Approval Order may be extended, or other aspects of the settlement modified, by order of the Court, for good cause shown, without further notice to the Settlement Class, except that notice of any such orders shall be posted by the Settlement Administrator to the Settlement Website that the Settlement Administrator will

establish and maintain in accordance with the Agreement. Class Members should check the Settlement Website regularly for updates, changes, and/or further details regarding extensions of deadlines, orders entered by the Court, and other information regarding the settlement.

33.     The Parties are hereby authorized to establish the means necessary to administer the Settlement.

34.     All discovery and other litigation activity and proceedings in this Litigation, other than as necessary to carry out the terms and conditions of the Settlement or the responsibilities related thereto, are hereby suspended and stayed pending final approval of the Settlement and further order of this Court.

35.     The Settlement shall not constitute an admission, concession, or indication of the validity of any claims or defenses in the Litigation, or of any wrongdoing, liability, or violation by Simmons, which vigorously denies all of the claims and allegations raised in the Litigation.

It is SO ORDERED.

Date: _____          _____
                                                            Hon. Roseann Ketchmark
                                                            United States District Court

# EXHIBIT 2
# PROPOSED ORDER RE:
# FINAL APPROVAL & JUDGMENT

746503386.4 22-Apr-22 14:32

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DANNY L. WALKINGSTICK, | ) | |
| WHITNYE A. FORT, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | Case No. 6:19-cv-03184-RK |
| Plaintiffs, | ) | |
| | ) | Hon. Roseann A. Ketchmark |
| v. | ) | |
| | ) | |
| SIMMONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT**

**WHEREAS,** on _____ 2022, this Court entered an Order Granting Preliminary Approval of Proposed Settlement Agreement (the "Preliminary Approval Order"), preliminarily approving the proposed settlement of this Litigation pursuant to the terms of the Parties' Settlement Agreement and Release ("Settlement Agreement") and directing that notice be given to the Class Members;

**WHEREAS,** pursuant to the Parties' plan for providing notice to the Class (the "Notice Program"), the Settlement Class was notified of the terms of the proposed settlement and of a Final Approval Hearing to determine, *inter alia*, whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release and dismissal of the Released Claims against the Released Parties as contemplated in the Settlement Agreement, and whether judgment should be entered dismissing the Litigation with prejudice; and

**WHEREAS,** a Final Approval Hearing was held on _____ ___, 2022. Prior to the Final Approval Hearing, proof of completion of the Notice Program was filed with the Court, along with declarations of compliance. Class Members were therefore notified of the terms of the

1

proposed settlement and their right to appear at the hearing in support of or in opposition to the proposed settlement, the amount of attorney's fees and costs requested by Class Counsel, and the Service Award requested for the Class Representatives;

**NOW, THEREFORE,** the Court, having heard the oral presentations made at the Final Approval Hearing, having reviewed all of the submissions presented with respect to the proposed settlement, having determined that the settlement is fair, adequate, and reasonable, having considered Class Counsel's Motion for Attorney's Fees and Costs and the Class Representatives' Service Award, together with any briefing and argument in support thereof or in opposition thereto, and having reviewed the materials in connection therewith, and good cause appearing, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The capitalized terms used in this Order shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2.      The Court has jurisdiction over the subject matter of this Litigation, all claims raised therein, and all Parties thereto, including Settlement Class Members.

3.      The Court finds, solely for purposes of considering this settlement and this Final Approval Order, that the requirements of Federal Rule of Civil Procedure 23 are satisfied, including requirements for the existence of numerosity, commonality, typicality, adequacy of representation, and manageability of the Settlement Class for settlement purposes, that common issues of law and fact predominate over individual issues, and that settlement and certification of the Settlement Class is superior to alternative means of resolving the claims and disputes at issue in this Litigation.

4.      The Settlement Class, which will be bound by this Final Approval Order, shall include all Class Members who did not submit a timely and valid Opt-Out request. The individuals

who have timely requested exclusion from the Settlement Class are identified in Exhibit A attached hereto. The individuals listed on Exhibit A are hereby excluded from the Settlement Class, are not bound by the Settlement Agreement, and shall not be entitled to any of the benefits afforded to Settlement Class Members under the Settlement Agreement.

5.     For purposes of settlement and this Final Approval Order only, Plaintiffs Danny L. Walkingstick and Whitnye A. Fort ("Plaintiffs") are appointed and shall serve as Class Representatives of the Settlement Class.

6.     For purposes of settlement and this Final Approval Order only, the Court appoints the following as Class Counsel on behalf of Plaintiffs and the Settlement Class: Lynn A. Toops of Cohen & Malad, LLP; Ashlea G. Schwarz of Paul LLP; Christopher D. Jennings of Johnson Firm; J. Gerard Stranch, IV of Brannstetter, Stranch & Jennings, PLLC; and Jeffrey D. Kaliel of Kaliel Gold PLLC.

7.     For purposes of settlement and this Final Approval Order only, the Court hereby certifies the following Settlement Class:

> All current and former holders of a Simmons Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder who, during the Class Period, incurred one or more Overdraft Fees or NSF fees when the Available Balance in the customer's Simmons account was negative but the customer's Ledger Balance (or any other account balance) in their Simmons's account was positive.

> The Settlement Class excludes all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiffs' counsel and Simmons officers and employees.

8.     The persons comprising the certified Settlement Class are identified in the Class List, as defined in the Settlement Agreement, which list will be maintained as indicated in the Settlement Agreement. The Settlement Class does not include the individuals listed on Exhibit A.

9. For purposes of settlement only, certification of the Settlement Class and this Final Approval Order, the Court further finds that "Class Period" means May 22, 2014 to and including [**date of preliminary approval**], 2022.

10. The Court finds for purposes of settlement only that the Settlement Class satisfies the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Court finds, for purposes of settlement only, that the following requirements are met: (a) the above-described Settlement Class Members are so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) Plaintiffs' claims are typical of Settlement Class Members' claims; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so, and Plaintiffs have retained experienced Class Counsel; (e) the questions of law and fact common to the Settlement Class Members predominate over any affecting any individual Settlement Class Member; and (f) a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23 and is superior to alternative means of resolving the claims and disputes at issue in this Litigation.

11. Notwithstanding the certification of the foregoing Settlement Class and the appointment of Class Counsel and of the Class Representatives for purposes of effecting the settlement, if this Order is reversed on appeal, or the Settlement is terminated or is not consummated for any reason, the foregoing certification of the Settlement Class and appointment of Class Counsel and of the Class Representatives shall be void and of no further effect, and the Parties to the proposed settlement shall be returned to the status each occupied before entry of this Order as if no Class was certified and without prejudice to any legal argument that any of the Parties to the settlement might have asserted but for the settlement.

4

12.     The Court finds that the Notice Program set forth in Section X of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute, and was reasonably calculated to provide and did provide, due and sufficient notice to the Settlement Class of the pendency of this Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, the date of the Final Approval Hearing, and the right to object and to appear at the Final Approval hearing or to exclude themselves from the settlement, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.

13.     The Court hereby approves the settlement, including the plan for the calculation and distribution of the Cash Awards and Forgiven Charge Offs, and finds that the settlement, as set forth in the Settlement Agreement and this Order, satisfies each of the requirements of Federal Rule of Civil Procedure 23(e)(2) and is in all respects fair, reasonable, adequate, and in the best interests of the Settlement Class, taking into account (i) the merits of the plaintiffs' case, weighed against the terms of the settlement; (ii) the defendant's financial condition; (iii) the complexity and expense of further litigation; and (iv) the amount of opposition to the settlement. *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). The Court further finds that the Class Representatives and Class Counsel have at all times adequately represented the Class and the settlement negotiations that resulted in the settlement were at all times conducted at arm's length. The Court also finds that Class Counsel have identified all required agreements related to the settlement and that, because the settlement provides a minimum award payment in equal amount to all Class Members from the Settlement Fund and also provides for a pro rata distribution of the Settlement

Fund commensurate with alleged harm to Class Members, the settlement treats all Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). The Court finds that the recovery provided by the settlement is reasonable, including in light of the merits and complexity of the case, and the degree of opposition to the settlement. *Marshall*, 787 F.3d at 508. For all of these reasons, the Court grants final approval of the settlement.

14. The Parties shall effectuate the Settlement Agreement according to its terms. The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an Order of this Court.

15. Provided the Effective Date has occurred, distribution of the Cash Awards to Settlement Class Members provided for in the Settlement Agreement shall be paid to Settlement Class Members, pursuant to the terms and conditions of the Settlement Agreement and Sections V and VI thereof.

16. The Court has considered all objections to the settlement, including the objections of _____. The Court finds these objections do not counsel against settlement approval and they are hereby overruled in all respects. [*IF NO OBJECTIONS, modify:* Settlement Class Members were duly afforded an opportunity to object to the settlement and there were no objections to the settlement].

17. Upon the Effective Date, the Releasors shall have, by operation of this Final Approval Order, fully, finally, and forever released, relinquished, and discharged the Released Parties from all Released Claims pursuant to Section VII of the Settlement Agreement.

18. Releasors are hereby permanently barred and enjoined from instituting, commencing, or prosecuting, either individually or as a class, or in any other capacity, any Released Claims against any of the Released Parties. In addition, Plaintiffs and each Settlement

6

Class Member are hereby enjoined from asserting as a defense, including as a set-off or for any other purpose, any argument that if raised as an independent claim would be part of the Released Claims.

19. This Final Approval Order, the Final Judgment, the Settlement Agreement, the settlement which it reflects, and any and all acts, statements, documents, or proceedings relating to the settlement are not, and shall not be construed as or used as an admission by or against Simmons or any other Released Party of any fault, wrongdoing, or liability on their part, or of the validity of any Released Claim or of the existence or amount of damages. This Final Approval Order and the Settlement Agreement do not constitute a concession and shall not be used as an admission or indication of any wrongdoing, fault, or omission by Simmons or any of the other Released Parties or any other person in connection with any transaction, event or occurrence, and neither this Final Approval Order nor the Settlement Agreement nor any related documents in this proceeding, nor any reports or accounts thereof, shall be offered or received in evidence in any civil, criminal, or administrative action or proceedings, other than such proceedings as may be necessary to consummate or enforce this Final Approval Order, the Settlement Agreement, and all releases given thereunder, or to establish the affirmative defenses of *res judicata* or collateral estoppel barring the pursuit of claims released in the Settlement Agreement. This Final Approval Order also does not constitute any opinion or position of the Court as to the merits of the claims and defenses related to this Litigation.

20. The claims of the Class Representatives and all Settlement Class Members in this Litigation, and as defined as Released Claims in Section VII of the Settlement Agreement, are hereby dismissed in their entirety with prejudice. Except as otherwise provided in this Order and/or in this Court's Order Awarding Attorneys' Fees and Costs in this Litigation, entered in

7

response to Class Counsel's motion therefor brought in connection with the settlement, the Parties shall bear their own costs and attorneys' fees. The Court reserves jurisdiction over the implementation of the settlement, including enforcement and administration of the Settlement Agreement, including any releases in connection therewith and any other matters related or ancillary to the foregoing.

21.     The Court, being fully advised and having afforded Class Members an opportunity to object, finds that the Class Settlement is fair and reasonable under Rule 23 of the Federal Rules of Civil Procedure, the Notice sent to Class Members satisfies the requirements of Rule 23 and due process, and the Parties have fully complied with the Preliminary Approval Order.

22.     The Court finds that Simmons provided Class Action Fairness Act ("CAFA") notice to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715.

23.     The Court finds that no reason exists for delay in entering this Final Approval Order. Accordingly, the Clerk is directed to enter this Final Approval Order and the accompanying Judgment of Dismissal.

24.     The Parties, without further approval from the Court, are hereby permitted to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Approval Order and Judgment of Dismissal and do not limit the rights of the Settlement Class Members.

25.     All Settlement Class Members are bound by this Final Approval Order and the Judgment of Dismissal. They are further bound by the terms of the Settlement Agreement including, but not limited to, its Release provisions.

26.     Notice of entry of this Order and the ensuing Judgment of Dismissal has been given

to Class Counsel on behalf of the Settlement Class. It shall not be necessary to send notice of entry of this Final Approval Order or ensuing Judgment of Dismissal to individual members of the Settlement Class.

27. In the event that the Settlement Agreement is terminated pursuant to its own terms; or the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of Dismissal are reversed, vacated, or modified in any material respect by this or any other court; then: (a) all orders entered pursuant to the Settlement Agreement shall be vacated, including this Final Approval Order; (b) the instant action shall proceed as though a Settlement Agreement had never been reached; and (c) no reference to the prior Settlement Agreement, or any documents or actions related thereto, shall be made for any purpose; provided, however, that the Parties to the Settlement Agreement agree to appeal an adverse ruling jointly and if the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of Dismissal are upheld on appeal in all material respects, then the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of Dismissal shall be given full force and effect.

28. Without affecting the finality of this Final Approval Order or the Judgment of Dismissal for purposes of appeal, the Court retains jurisdiction as to all matters related to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Approval Order and accompanying Judgment of Dismissal, and for any other necessary purpose.

It is SO ORDERED.

Date: _____          _____
                                        Hon. Roseann Ketchmark
                                        United States District Court Judge
                                        for the Western District of Missouri

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DANNY L. WALKINGSTICK, | ) | |
| WHITNYE A. FORT, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | Case No. 6:19-cv-03184-RK |
| Plaintiffs, | ) | |
| | ) | Hon. Roseann A. Ketchmark |
| v. | ) | |
| | ) | |
| SIMMONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## [PROPOSED] JUDGMENT OF DISMISSAL

This action came before the Court on Plaintiffs Danny L. Walkingstick's and Whitnye A. Fort's ("Plaintiffs") and Defendant Simmons Bank's ("Simmons") (together, the "Parties") Motion for Final Approval of the Parties' class action Settlement Agreement and Release ("Settlement Agreement").

The Court having entered its Order granting Final Approval of Settlement and directing entry of judgment of dismissal,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.  All Released Claims of all Settlement Class Members against Simmons, as defined in the Settlement Agreement, are dismissed with prejudice.

2.  All claims of Plaintiffs against Simmons are dismissed with prejudice.

3.  The Litigation is dismissed with prejudice.

4.  Notwithstanding the foregoing dismissal of claims and the Litigation in the preceding paragraphs, the Court shall retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement, and to

10

supervise and adjudicate any disputes arising from the disbursement of the Settlement Fund.

5.     All Settlement Class Members, as defined in this Court's Final Approval Order, are bound by the Release set forth in the Parties' Settlement Agreement at Section VII and are hereby permanently enjoined and restrained from filing, prosecuting, or otherwise asserting any Released Claims against any Released Party as those terms are defined in the Parties' Settlement Agreement.

6.     The Parties shall comply with and implement the Settlement Agreement and provide the Settlement Class Members with the benefits set forth therein.

IT IS SO ORDERED.


Date: _____          _____
                                       Hon. Roseann Ketchmark
                                       United States District Court Judge
                                       for the Western District of Missouri

# EXHIBIT 3:
# POSTCARD NOTICE

746503386.4 22-Apr-22 14:32

## COURT ORDERED NOTICE OF CLASS ACTION SETTLEMENT

You may be a member of the settlement class in *Walkingstick v. Simmons Bank*, No. 6:19-cv-03184-RK (W.D. Mo.), in which the plaintiff alleges that defendant Simmons Bank ("Defendant") incorrectly assessed overdraft fees on the available balance of accounts between May 22, 2014 and [date of preliminary approval]. If you are a Settlement Class Member and if the Settlement is approved, you may be entitled to receive an account credit, a cash payment from the $3,250,000.00 fund and/or have certain overdraft fees forgiven, all benefits established by the Settlement.

The Court has preliminarily approved this settlement. It will hold a Final Approval Hearing in this case on [PARTIES TO INSERT DATE]. At that hearing, the Court will consider whether to grant final approval to the settlement, and whether to approve payment from the Settlement Fund of up to $10,000 in service awards to each of the named plaintiffs, up to one-third of the Value of the Settlement as attorneys' fees, and reimbursement of costs to the attorneys and the Settlement Administrator. If the Court grants final approval of the settlement and you do not request to be excluded from the settlement, you will release your right to bring any claim covered by the Settlement. In exchange, Defendant has agreed to issue a credit to your account, a cash payment to you if you are no longer a member, and/or to forgive certain overdraft fees.

**To obtain a long form class notice and other important documents please visit www.WalkingstickFeeSettlement.com. Alternatively, you may call [INSERT PHONE #].**

*If you do not want to participate in this settlement—you do not want to receive a credit or cash payment or the forgiveness of certain overdraft fees and you do not want to be bound by any judgment entered in this case—you may exclude yourself by submitting an opt-out request postmarked no later than [PARTIES TO INSERT DATE]. If you want to object to this settlement because you think it is not fair, adequate, or reasonable, you may object by submitting an objection postmarked no later than [PARTIES TO INSERT DATE]. You may learn more about the opt-out and objection procedures by visiting www.WalkingstickFeeSettlement.com or by calling [Insert Phone #].*

# EXHIBIT 4:
# INDIVIDUAL EMAIL NOTICE

<u>**LEGAL NOTICE BY ORDER OF COURT**</u>

**This Notice describes rights you may have in connection with the settlement of a lawsuit:**

**IF YOU WERE ASSESSED OVERDRAFT OR NSF FEES ON A PERSONAL OR BUSINESS CHECKING ACCOUNT MAINTAINED BY SIMMONS DURING THE CLASS PERIOD, YOU MAY BE ELIGIBLE FOR A CASH PAYMENT, AN ACCOUNT CREDIT OR FORGIVENESS OF CHARGED OFF FEE AMOUNTS FROM A CLASS ACTION SETTLEMENT.**

*The United States District Court for the Western District of Missouri authorized this Notice. This is not a solicitation from a lawyer. **This is <u>not</u> a legal action against you.***

**Why Am I Getting This Notice?** You are receiving this notice because Simmons Bank ("Simmons")'s records indicate that you had or have a consumer or business checking account with Simmons, and were charged one or more overdraft or nonsufficient funds (NSF) fees (collectively, the "Challenged Fees") on that account during the Class Period. Therefore, **you may be eligible for a cash payment, an account credit or forgiveness of charged off fee amounts from a class action settlement**. Specifically, a settlement has been reached in a class action lawsuit entitled *Walkingstick v. Simmons Bank*, Case No. 6:19-cv-03184-RK (W.D. Mo.). The individuals who brought this case allege that Simmons breached its customer agreements and related obligations by deeming accounts overdrawn and charging Challenged Fees when customers' "available balance" (*i.e.*, the balance of a customer's checking account that is the result of the total debit and credit activity—including, without limitation, float, memo-posted debits, memo-posted credits, and holds—as of a specific date and time) was negative, but their "ledger" balance (*i.e.*, the balance of a customer's checking account without regard to holds, memo-posted credits, and memo-posted debits) or other balance was still positive. Simmons's records indicate that you were assessed Challenged Fees during the Class Period, and therefore are eligible to receive a benefit from the settlement.

**What Does the Settlement Provide?** The proposed settlement provides for a funding total of $3,250,000, which will be used to make payments to the class members after first making deductions for notice and administrative costs, a Service Award to the Class Representatives, and attorneys' fees for Class Counsel.

**Has The Court Decided Who Is Right**? No. By conditionally certifying a settlement class and ordering that this Notice be provided, the Court has not decided whether Plaintiffs will win or lose. Your job right now is to decide whether you want to stay in this case (by doing nothing), or exclude yourself.

**What Happens If I Do Nothing?** By doing nothing, you will stay in the Class. **If you stay in, and the settlement is approved by the court and becomes final, you will receive a deposit into your Simmons checking account, a check in the mail reflecting your share of the settlement, and/or forgiveness of charged off fee amounts; you will also be legally bound by the settlement agreement.**

**What Happens If I Exclude Myself?** Alternatively, if you do not want to be legally bound by

the settlement, you can **opt out** from the Class—that is, be excluded from the Class. **If you exclude yourself from the Class, and the Class gets any money or other benefits, you will not be able to get any of that money or those benefits**. However, if you exclude yourself, you will not be legally bound by the Court's judgments in this case and you will be able to sue Simmons on your own about the same legal claims that are involved in this case, now or in the future, to the extent you have claims against Simmons. If you exclude yourself and pursue your own lawsuit, you'll have to hire and pay your own lawyer and you'll have to prove your claims in that case.

**How Do I Opt Out?** You must send a letter to the Settlement Administrator identifying:

1. Your name, mailing address, contact telephone number or email address, and the last four digits of your Simmons account number;
2. the name and case number of this lawsuit (*Walkingstick v. Simmons Bank*, Case No. 6:19-cv-03184-RK (W.D. Mo.));
3. a statement that you wish to exclude yourself from the Settlement Class; and
4. your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is postmarked no later than [date]:

Settlement Administrator: [address]

*REQUESTS FOR EXCLUSION FROM THE CLASS THAT ARE NOT POSTMARKED ON OR BEFORE [date] WILL NOT BE HONORED.*

**What Other Rights Do I Have**? If you stay in the settlement, you may object to it by [date] ("Objection Deadline"). The Court is currently scheduled to hold a hearing on [date] to consider whether to approve the settlement, Class Counsel's request for attorneys' fees and expenses, and a Service Award for the Class Representatives. You can appear at the hearing, but you do not have to appear. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. If you object to any part of the settlement, fee request, or Service Award, you must provide a written objection, <u>signed by you</u>, to the Settlement Administrator and the Court, by the Objection Deadline, with the following information: (a) the case name and number of this Litigation; (b) your full name, current address, and the last four digits of the account number of any Simmons account that you claim was charged Challenged Fees; (c) a statement that you object to the Settlement, in whole or in part; (d) the reason(s) why you object to the settlement along with any supporting materials; (e) the identity of any lawyer who assisted, provided advice, or represents you as to this case or such objection, if any; and (f) whether you will appear, either on your own or through counsel, at the final hearing regarding the settlement and whether you plan on offering testimony at the Final Approval Hearing. Please note that the hearing date is subject to change; contact the Settlement Administrator at the number below or visit the Settlement Website for the most up-to-date information and complete instructions regarding how to object.

**When Will the Court Decide Whether to Grant Final Approval to the Settlement?** The Court has preliminarily approved this settlement. It will hold a Final Approval Hearing in this case on [PARTIES TO INSERT DATE]. At that hearing, the Court will consider whether to grant final approval to the settlement, and whether to approve payment from the Settlement Fund of up to $10,000 in service awards to each of the named plaintiffs, up to one-third of the Value of the

Settlement as attorneys' fees, and reimbursement of costs to the attorneys and the Settlement Administrator. If the Court grants final approval of the settlement and you do not request to be excluded from the settlement, you will release your right to bring any claim covered by the Settlement. In exchange, Defendant has agreed to issue a credit to your account, a cash payment to you if you are no longer a member, and/or to forgive certain overdraft fees.

The foregoing description of the Settlement Agreement and Release does not purport to be complete and is qualified in its entirety by reference to the full text of the Settlement Agreement and Release, a copy of which is available on the settlement website: **www.WalkingstickFeeSettlement.com**. In the event of a conflict between the foregoing description and the provisions of the Settlement Agreement and Release, the provisions of the Settlement Agreement and Release prevail.

**FOR MORE INFORMATION, call the Settlement Administrator's toll free number (\*\*\*-\*\*\*-\*\*\*\*), or visit www.WalkingstickFeeSettlement.com.**

# EXHIBIT 5:

# LONG FORM NOTICE

## LEGAL NOTICE BY ORDER OF COURT

**IF YOU WERE ASSESSED OVERDRAFT OR NSF FEES ON A PERSONAL OR BUSINESS CHECKING ACCOUNT MAINTAINED BY SIMMONS DURING THE CLASS PERIOD, YOU MAY BE ELIGIBLE FOR A CASH PAYMENT, AN ACCOUNT CREDIT OR FORGIVENESS OF CHARGED OFF FEE AMOUNTS FROM A CLASS ACTION SETTLEMENT.**

**This Notice describes rights you may have in connection with the settlement of a lawsuit.**

*The United States District Court for the Western District of Missouri authorized this Notice. This is not a solicitation from a lawyer. **This is not a legal action against you.***

- Simmons Bank ("Simmons") has agreed to pay $3,250,000 into a fund from which eligible persons will receive cash payments or account credits. The fund also will be used to pay settlement Administrative Expenses and any Court-awarded Service Awards, attorneys' fees, and costs.

- The settlement resolves a lawsuit brought against Simmons regarding the use of accountholders' "Available Balance" (the balance of a customer's checking account that is the result of the total debit and credit activity (including, without limitation, float, memo-posted debits, memo-posted credits, and holds) as of a specific date and time) in assessing overdraft and NSF fees (collectively "Challenged Fees").

- If you were assessed any Challenged Fees during the Class Period by Simmons on a business or personal checking account based on your "Available Balance" when your Ledger Balance (the balance of a customer's checking account without regard to holds, memo-posted credits, and memo-posted debits) or any other account balance was positive, you fit the description of the Settlement Class (as defined below), and are eligible to receive a payment, an account credit or forgiveness of charged off fee amounts.

- Court-appointed lawyers for the Settlement Class ("Class Counsel") will ask the Court for a payment of up to $ _____ from the fund as attorneys' fees, which is equal to one-third of the Value of the Settlement. Class Counsel also will ask the Court to reimburse them for the out-of-pocket expenses they paid to investigate the facts and litigate the case.

- The two named Plaintiffs each will also seek approval of a $10,000 Service Award from the Court.

- The two sides disagree on whether the named Plaintiffs and the Settlement Class could have won at trial.

- Your legal rights are affected whether you act or don't act. Read this Notice carefully.

- The foregoing description of the Settlement Agreement and Release does not purport to be complete and is qualified in its entirety by reference to the full text of the Settlement Agreement and Release, a copy of which is available on the settlement website:

**www.WalkingstickFeeSettlement.com**.  In the event of a conflict between the foregoing description and the provisions of the Settlement Agreement and Release, the provisions of the Settlement Agreement and Release prevail.

FOR ADDITIONAL INFORMATION REGARDING THIS SETTLEMENT, OR FOR INFORMATION ON HOW TO REQUEST EXCLUSION FROM THE SETTLEMENT CLASS OR FILE AN OBJECTION, PLEASE CONTACT THE SETTLEMENT ADMINISTRATOR AT _____.  **Please do not** call or write the Court, the Court Clerk's office, Simmons, or Simmons's Counsel for more information. They will not be able to assist you.

| BASIC INFORMATION |
|---|
| The purpose of this Notice is to let you know that a proposed settlement has been reached in a proposed class action case entitled *Walkingstick v. Simmons Bank*, Case No. 6:19-cv-03184-RK, pending in the U.S. District Court for the Western District of Missouri. Plaintiffs have alleged that: (1) Simmons breached its customer contracts and implied duty of good faith and fair dealing by assessing accountholders overdraft and NSF fees based on their "Available Balance" rather than ledger or other balance; and (2) that Simmons was unjustly enriched by its collection of such overdraft and NSF fees.  Simmons denies Plaintiffs' allegations, denies that it did anything wrong, and maintains that it assessed overdraft and NSF fees consistent with industry best practices. The Court has not decided who is right. |
| You have legal rights and options that you may act on before the Court decides whether to approve the proposed settlement. Because your rights will be affected by this settlement, it is extremely important that you read this Notice carefully. This Notice summarizes the settlement and your rights under it. |

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **DO NOTHING** | If you are eligible for a Cash Award or a forgiveness of charged off fee amounts, you do not need to submit a claim to receive the settlement benefits. If you are a current Simmons accountholder and are eligible for a Cash Award, you will receive a direct deposit into your checking account reflecting your share of the settlement; if you are a former Simmons accountholder and are eligible for a Cash Award, you will receive a check sent to the most recent address that the Settlement Administrator can locate for you.  If you are eligible for a forgiveness of charged off fee amounts, Simmons's records will be updated accordingly. |
| **EXCLUDE YOURSELF BY [DATE]** | If you choose to exclude yourself from the settlement, you will get no benefit from the settlement fund, but you will keep any rights you have to bring your own suit against Simmons at your own expense. This is the only option that allows you |

| | |
|---|---|
| | to ever be part of any other separate lawsuit against Simmons about the legal claims in this case. |
| **OBJECT BY [DATE]** | Write to the Court explaining why you don't like the settlement. |
| **ATTEND A HEARING ON [DATE]** | Ask to speak in Court about the fairness of the settlement. |

The Court in charge of this case still has to decide whether to approve the settlement. If it does and any appeals are resolved, benefits will be distributed to those who qualify and do not exclude themselves. Please be patient.

### WHAT THIS NOTICE CONTAINS [ADD PAGE #S AFTER FINALIZED]

1. WHO IS IN THE SETTLEMENT? ·······················································

2. WHAT IS THIS LITIGATION ABOUT? ·················································

3. WHO REPRESENTS ME? ·······························································

4. WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT? ·············

5. DO I HAVE TO PAY THE LAWYERS REPRESENTING ME? ····················

6. WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT
CLASS IN THIS CASE? ·································································

7. WHAT IF I DO NOT AGREE WITH THE SETTLEMENT? ·······················

8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS? ········

9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND
ASKING TO BE EXCLUDED? ·························································

10. WHAT IF I DO NOTHING AT ALL? ··················································

11. WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING? ······

12. IS THIS THE ENTIRE SETTLEMENT AGREEMENT? ···························

13. WHERE CAN I GET MORE INFORMATION? ·····································

## 1. WHO IS IN THE SETTLEMENT CLASS?

The judge in the case has certified the following Class for settlement purposes only (hereinafter, the "Settlement Class"):

> All current and former holders of a Simmons Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder who, during the Class Period, incurred one or more Overdraft Fees or NSF Fees when the Available Balance in the customer's Simmons account was negative but the customer's Ledger Balance (or any other account balance) in their Simmons's account was positive.

> The Class excludes all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiffs' counsel and Simmons officers and employees.

If you received notice of the settlement directed to you, records indicate that you are a member of the Class.

If you are not sure whether you are in the Settlement Class, or have any other questions about the Settlement, you may contact the Settlement Administrator at ▮▮▮▮▮▮▮▮.

## 2. WHAT IS THIS LAWSUIT ABOUT?

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. All of these people are a class, or class members. One court resolves the issues for all class members, except those who exclude themselves from the class.

The Class Representatives allege that Simmons did not properly apply or disclose the methodology it used to assess when a customer's account was "overdrawn" for purposes of assessing overdraft and NSF fees, and that, by so doing, Simmons purportedly breached the terms of its customer agreements and was unjustly enriched. This is just a summary of the allegations. The operative complaint in the lawsuit is available online at **www.WalkingstickFeeSettlement.com** and contains all of the allegations. Simmons denies these allegations; however, in order to avoid the expense, inconvenience, and distraction of continued litigation, the Parties have agreed to the settlement described herein in this notice and the entire Settlement Agreement and Release is available at **www.WalkingstickFeeSettlement.com**.

## 3. WHO IS REPRESENTING ME?

Danny L. Walkingstick and Whitnye A. Fort sued Simmons, and the Court has appointed them to be Class Representatives for the Settlement Class.

The Court also approved Lynn A. Toops of Cohen & Malad, LLP; Ashlea G. Schwarz of Paul LLP; Christopher D. Jennings of Johnson Firm; J. Gerard Stranch, IV of Brannstetter, Stranch & Jennings, PLLC ; and Jeffrey D. Kaliel of Kaliel Gold PLLC as Class Counsel. Class

Counsel represents the Class of which you are a part, but if you want to be represented by your own individual lawyer, you may hire one at your own expense.

## 4.     WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT?

Simmons has agreed to pay $3,250,000 to be divided among all Settlement Class Members who do not exclude themselves from the Settlement after any fees, costs, Service Awards to the named plaintiffs, and settlement expenses have been deducted. Your share of the settlement will be calculated as a pro rata proportion of the Net Settlement Fund, based on the number of qualifying Overdraft or NSF fees you were assessed during the Class Period.

If you do not exclude yourself from the Settlement Class, and are a current Simmons accountholder, you will receive a direct deposit equivalent to your pro rata share of the Settlement; if you are not a current Simmons accountholder, the Settlement Administrator will mail you a check. You may be required to first provide certain tax-related documentation to the Settlement Administrator in order to be eligible to receive your account credit or check, including an IRS Form W-9.

If you receive a check, you will have 120 days from the date of the check to cash the check. If you do not cash the check within 120 days, your check will be void and the funds will be used as the Court deems appropriate, including redistribution to other Class Members or distribution to a charitable organization.

In addition, for Settlement Class Members with uncollected, negative account balances as a result of Challenged Fees (to the extent that Simmons has records to identify such uncollected, Challenged Fees), Settlement Class Members will receive Forgiven Charge Offs, that is, Simmons will forgive, and not attempt to collect on, all uncollected Challenged Fees, up to $500 per overdrawn account.   The $500 limit will apply regardless of the number of accountholders associated with the account.  The amount of any Forgiven Charge Offs will be updated and reflected in Simmons's business records.  Settlement Class Members cannot receive both Forgiven Charge Offs and *de minimis* Cash Awards.

## 5.     DO I HAVE TO PAY THE LAWYERS REPRESENTING ME?

No.  Class Counsel will ask the Court to approve payment of up to one-third of the Value of the Settlement. Class Counsel also will ask to be reimbursed for any out-of-pocket expenses. These payments would pay Class Counsel for their time investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also request a Service Award of up to $10,000 to each of the Class Representatives (Plaintiffs Danny L. Walkingstick and Whitnye A. Fort) in recognition of their service to the Settlement Class. The amount of any fee or Service Award will be determined by the Court. Class Counsel's contact information is as follows:

| | |
|---|---|
| Lynn A. Toops<br><br>COHEN & MALAD, LLP<br>One Indiana Square, Suite 1400<br>Indianapolis, Indiana 46204<br>(317) 636-6481<br>ltoops@cohenandmalad.com<br><br>Jeffrey D. Kaliel<br><br>KALIEL GOLD PLLC<br>1100 15th Street, NW, 4th Fl.<br>Washington, DC 20005<br>(202) 615-3948<br>jkaliel@kalielpllc.com<br><br><br>Ashlea G. Schwartz<br><br>Paul LLP<br>601 Walnut Street, Suite 300<br>Kansas City, Missouri 64106<br>(816) 984-8100<br>Ashlea@PaulLLP.com | Christopher D. Jennings<br><br>JOHNSON FIRM<br>610 President Clinton Avenue, Suite 300<br>Little Rock, Arkansas 72201<br>(501) 372-1300<br>chris@yourattorney.com<br><br><br>J. Gerard Stranch, IV<br><br>BRANSTETTER, STRANCH & JENNINGS, PLLC<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, Tennessee 37203<br>(615) 254-8801<br>gerards@bsjfirm.com |

## 6. WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT CLASS IN THIS CASE?

Unless you exclude yourself, you will be part of the Settlement Class, and you will be bound by the release of claims in the settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be part of any lawsuit against Simmons or the other Released Parties asserting a "Released Claim," as defined below. It also means that the Court's Order approving the settlement and the judgment in this case will apply to you and legally bind you.

The "Released Claims" that you will not be able to assert against Simmons or the Released Parties if you remain a part of the Settlement Class are as follows: "Released Claims" means any and all claims, demands, damages, costs, attorneys' fees, disputes, liabilities, actions, rights, suits or causes of action, losses or remedies of any kind or nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or any legal or equitable theory, right of action or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of, or relate to, or are based upon or in any manner related or connected with: (i) any Challenged Fee incurred by any Simmons Bank personal or business checking account based on Simmons' use of an account's Available Balance (rather than its Ledger Balance or any other balance) to assess such fees, regardless of the state of residence or citizenship of the accountholder; (ii) a claim that Simmons assessed a Challenged Fee on any Simmons personal or business checking account transaction that purportedly did not "overdraw" the account,

under any methodology; and (iii) any alleged failure to adequately or clearly disclose Simmons's practices and policies related to the use of the Available Balance rather than any other balance (including but not limited to the Ledger Balance) to assess the Challenged Fees. Such release applies regardless of how such claims are pled. This Agreement does not imply that any such claims exist or are valid.

"Released Parties" means Simmons and each of its respective past, present, and future parents, subsidiaries, acquired and affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, agents, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives.

## 7.    WHAT IF I DO NOT AGREE WITH THE SETTLEMENT

If you are a member of the Settlement Class, and you do not exclude yourself from the settlement, you may object to the settlement or any part of the settlement that you think the Court should reject, and the Court will consider your views. To object, you must send your objection to the Court and the Settlement Administrator, providing:

1.    the case name and case number of this Litigation (*Walkingstick v. Simmons Bank*, Case No. 6:19-cv-03184-RK (W.D. Mo.));

2.    your full name, current address, email address, and the last four digits of your Simmons account number;

3.    a statement that you object to the Settlement, in whole or in part;

4.    the reasons why you object to the settlement along with any supporting materials;

5.    the identity of any lawyer who assisted, provided advice, or represents you as to this case or such objection, if any;

6.    your signature; and

7.    whether you will appear, either on your own or through counsel, at the final hearing regarding the settlement and whether you plan on offering testimony at the Final Approval Hearing.

**Your objection must be postmarked no later than [date].** Objections must be mailed to all of the following addresses:

Case 6:19-cv-03184-RK   Document 155-1   Filed 05/06/22   Page 80 of 126

| The Settlement Administrator | The Court |
|---|---|
| KCC Class Action Services LLC<br><br>[Address] | Clerk of the Court<br>U.S. District Court<br>Charles Evans Whittaker U.S. Courthouse<br>400 E. 9th Street<br>Kansas City, MO 64106 |

## 8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS?

If you want to exclude yourself from the Settlement Class, sometimes referred to as "opting-out," you will not be eligible to recover any benefits as a result of this settlement. However, you will keep the right to sue or continue to sue Simmons or Released Parties on your own and at your own expense about any of the Released Claims.

To exclude yourself from the Settlement Class, you must send a letter to the Settlement Administrator identifying:

> 1. your name, address, telephone number or email address, and the last four digits of your account number;

> 2. the name and case number of this lawsuit (*Walkingstick v. Simmons Bank*, Case No. 6:19-cv-03184-RK (W.D. Mo.));

> 3. a statement that you wish to exclude yourself from the Settlement Class; and

> 4. your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is postmarked no later than [date]:

Settlement Administrator: [address]

*REQUESTS FOR EXCLUSION FROM THE CLASS THAT ARE NOT POSTMARKED ON OR BEFORE [date] WILL NOT BE HONORED.*

## 9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED?

Objecting means telling the Court that you do not like something about the settlement. You can object to the settlement only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the settlement because it no longer affects you.

## 10. WHAT IF I DO NOTHING AT ALL?

You will remain a member of the Settlement Class and be eligible to receive a cash payment and/or Forgiven Charge Offs**.** See Part 4 above.

## 11.     WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING?

The Court will hold a hearing to decide whether to approve the settlement and any requests for fees, expenses, and Service Award (the "Final Approval Hearing"). The Final Approval Hearing is currently set for [date] at [time], at the United States District Court for the Western District of Missouri [or via Zoom], Southern Division, in Courtroom 8E of the Charles Evans Whittaker U.S. Courthouse at 400 E. 9th Street, Kansas City, MO 64106. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Court's docket or the settlement website for updates.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. The Court will also consider the request by Class Counsel for attorneys' fees and expenses and Service Award for the Class Representatives. If there are objections, the Court will consider them at the Final Approval Hearing. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

You may attend the hearing, at your own expense, but you do not have to do so. You cannot speak at the hearing if you exclude yourself from the settlement.

If you have objected to the settlement and want to attend the hearing you must state in your objection that you intend to appear at the Final Approval Hearing either personally or through counsel.

## 12.     DOES THIS NOTICE CONTAIN THE ENTIRE SETTLEMENT AGREEMENT?

No. This is only a summary of the settlement. If the settlement is approved and you do not exclude yourself from the Settlement Class, you will be bound by the release contained in the Settlement Agreement, and not just by the terms of this Notice. Capitalized terms in this Notice are defined in the Settlement Agreement. If you wish to view the full Settlement Agreement, you can do so on the settlement website at **www.WalkingstickFeeSettlement.com** or write or call the settlement administrator at the address and phone number below for more information.

## 13.     WHERE CAN I GET MORE INFORMATION?

For more information, you may call the Settlement Administrator at 1-999-999-9999, or you may contact Class Counsel as set forth in Section 5, above. You may also visit the settlement website at **www.WalkingstickFeeSettlement.com**.

**NOTE:** PLEASE **DO NOT** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, SIMMONS, OR SIMMONS'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU.

# EXHIBIT 2

# COHEN & MALAD, LLP

One Indiana Square | Suite 1400 | Indianapolis, IN | 46204 |
www.cohenandmalad.com

Complex Litigation
Resume

# Directory

Introduction...........................................................................................................2

Attorney Biographies…..……………………………………………………....3

Antitrust Cases…...……………………………………………………….....9

Consumer Protection Cases …………………………………………….……9

Bank Fee Cases………………………………………………………….12

Human Rights Cases.………………………………………………….........14

Health Care/Insurance Cases.…………………………......……………….....14

Securities Fraud Cases.……………………………………………………15

Mass Medical Malpractice Cases.…………………………………………...16

Mass Tort Pharmaceutical Drug & Medical Device Cases.……………….…….16

**Introduction**

Cohen & Malad, LLP is a litigation firm founded in 1968 by a former Indiana Attorney General, a former United States Attorney and three other distinguished lawyers. With 25 experienced attorneys, we litigate cases across multiple practice areas including: class action, mass torts and individual personal injuries, business litigation, family law, as well as commercial litigation and appeals.

Cohen & Malad, LLP enjoys a reputation as one of Indiana's leading class action law firms. Over the last 50 years, the firm has served as class counsel in numerous local, statewide, multi-state, nationwide, and even international class actions. We have also served in leadership positions in numerous multidistrict litigation matters. Our personal injury and medical malpractice trial lawyers have handled high profile cases against medical providers who subjected hundreds of their patients to unnecessary procedures, sometimes leading to deaths.

**Significant Class Actions**
*Lead Counsel, Co-lead Counsel, or Executive Committee*

❖ *In re Holocaust Victim Assets Litigation;* Settlement of $1.25 billion for claims relating to conversion of bank accounts and property of victims of the Holocaust during the Nazi era.

❖ *Raab v. R. Scott Waddell, in his official capacity as Commissioner of The Indiana Bureau of Motor Vehicles et al.*, Settlements (including settlement after trial and judgment) of approximately $100 million in overcharges for motor vehicle and license fees.

❖ *In re Ready-Mixed Concrete Antitrust Litigation;* Settlements of over $60 million for price fixing claims.

❖ *In re Iowa Ready-Mix Concrete Antitrust Litigation;* Settlement of over $18 million for price fixing claims.

❖ *Moss v. Mary Beth Bonaventura, in her official capacity as Director of the Department of Child Services et al.* Settlement for underpayment of per diem subsidies owed to families who adopted special needs children out of foster care.

❖ *Bank Fee Litigation.* Litigation of hundreds of lawsuits against financial institutions for improper fee assessment and achieving dozens of settlements.

**Significant Mass Tort Litigation**
*Leadership positions in federal multidistrict litigations and state court consolidations*

❖ *Gilead Tenofovir Cases, JCCP No. 5043, Superior Court for the County of San Francisco, California. Cohen & Malad, LLP is currently representing patients against Gilead Sciences who were prescribed its TDF-based drugs to treat HIV, for pre-exposure prophylaxis (PrEP) to mitigate HIV risk, or to treat Hepatitis, and suffered serious kidney and bone injuries.*

3

- ❖ *In Re: Zofran (Ondansetron) Products Liability Litigation. Litigation on behalf of women who took Zofran while pregnant and gave birth to a baby who suffered from a serious birth defect. Litigation is currently pending.*

- ❖ *In re: Fresenius Granuflo/Naturalyte Dialysate Products. Litigation on behalf of dialysis patients alleging Fresenius' dialysis products caused cardiac injuries and death. $250 million global settlement.*

- ❖ *Pain Pump Device Litigation. Cohen & Malad, LLP served in a National Coordinated Counsel role in litigation against pain pump manufacturers who marketed pain pumps to orthopedic surgeons for continuous intra-articular uses, despite the fact that intra-articular placement of the pain pump catheters was not approved by the FDA. The use of pain pumps in the joint space resulted in deterioration of cartilage, severe pain, loss of mobility or decreased range of motion and use of shoulder.*

- ❖ *In Re: Prempro Products Liability Litigation. Litigation on behalf of women who took the hormone replacement therapy drug Prempro manufactured by Wyeth and suffered strokes, heart attacks, endometrial tumors or breast cancers. Global settlement for more than $890 million to settle roughly 2,200 claims.*

## Significant Mass Medical Malpractice Actions
*Co-Lead counsel for mass litigation*

- ❖ *Mass tort medical malpractice cases involving over 280 claimants against an ENT physician settled for more than $59 million*

- ❖ *Mass tort medical malpractice cases involving more than 260 claimants against a Northwest Indiana cardiology group settled for more than $67 million*

## Our Attorneys



Irwin B. Levin, Managing Partner

Irwin joined Cohen & Malad, LLP in 1978 and concentrates his practice in the areas of class action, mass torts and commercial litigation. Irwin served on the Executive Committee in litigation against Swiss Banks on behalf of Holocaust victims around the world which culminated in an historic $1.25 billion settlement. He has also served as lead counsel in class action cases around the country since 1983 including two class action cases against the Indiana Bureau of Motor Vehicles, which settled for nearly $100 million, and was Co-Lead Counsel in two major antitrust cases against the concrete industry. Those cases settled for over $75 million. Irwin has also served in leadership in various MDL and mass tort cases such as Pain Pump and Hormone Therapy litigation. Irwin currently is counsel for dozens of Indiana cities and counties in litigation against companies responsible for the opioid epidemic.

4

## David J. Cutshaw



David's practice includes both class action and mass medical malpractice litigation. He served as co-lead counsel to successfully negotiate over $59 million in settlements for more than 280 plaintiffs against former ENT surgeon Mark Weinberger who performed unnecessary sinus surgeries, negligent surgeries, and abandoned his patients. Weinberger was sentenced to seven years in jail for health care fraud. David acted as co-lead counsel in 263 claims against a Northwest Indiana cardiology group alleged to have unnecessarily implanted pacemakers and defibrillators and performed unnecessary cardiac vessel stenting. Those claims were recently settled for over $67 million. He has also tried numerous medical malpractice jury trials as first chair.



## Gregory L. Laker

Greg is the chair of the personal injury practice group and oversees the firm's dangerous drug and defective medical device litigation team. Greg and his team have held leadership positions in several multidistrict litigations including In re: Prem Pro Products Liability, Pain Pump Device Litigation, In re: Consolidated Fresenius Cases (Granuflo), In re: Testosterone Replacement Therapy Products Liability, and others. Greg also oversees the firm's sexual abuse litigation team and litigates cases involving molestation committed by perpetrators in institutional care facilities, sports and organizational groups, churches, schools, and doctor or medical offices.

## Richard E. Shevitz



Richard is the chair of the class action practice group and handles a wide variety of class action lawsuits, including claims against insurance companies, manufacturers, and governmental entities. He led the trial court proceedings and handled the appeal of a class action on behalf of drivers who had been overcharged for fuel prices by a publicly held trucking company, which resulted in a judgment of approximately $5 million which was upheld on appeal. He also played a key role in the historic class action litigation bringing Holocaust-era claims against Swiss banks, which resolved for $1.25 billion, as well as the prosecution of Holocaust-related claims against leading German industrial enterprises, which were resolved through a $5 billion fund.

5



## Lynn A. Toops

Lynn is a partner in the class action group and focuses her practice on high-stakes consumer protection litigation. Lynn and her team are currently litigating hundreds of class actions against financial institutions across the country for the improper assessment of various fees. In dozens of bank fee cases, Lynn and her team have obtained tens of millions in settlements on behalf of consumers. Lynn is also a nationwide leader in data breach litigation and is currently litigating and settling dozens of those cases on behalf of consumers. Lynn also represents cities and counties across Indiana that are battling the opioid prescription epidemic via litigation against manufacturers and distributors of prescription opioids. Lynn also served in a leading role in litigation against the state of Indiana for failure to pay promised adoption subsidy payments to families who adopted special needs children out of the state's foster care program.

## Arend J. Abel



Arend's practice includes complex litigation and appeals. His clients range from governmental entities to businesses of all sizes, from Fortune 500 companies to sole proprietors. His legal career includes work for former Indiana attorney general Pamela Carter, for whom he served as special counsel. In that role, Arend briefed and argued two cases on the merits before the United States Supreme Court. He has also briefed and argued numerous cases before the Indiana State Supreme Court and State and Federal Trial and Appellate Courts. Arend supports the class action practice group via briefing on complex issues at the trial and appellate court level.

## Scott D. Gilchrist



Scott is a class action attorney and concentrates his practice on antitrust, securities fraud, and consumer protection matters. Scott was a principal attorney in two antitrust cases against suppliers of ready-mixed concrete on behalf of small businesses, farmers and individuals. In re: Ready Mixed Concrete Antitrust Litigation, which settled for nearly $60 million and In re: Iowa Ready Mix Concrete Antitrust Litigation, which settled for more than $18 million.

6

### Vess A. Miller



Vess is a class action attorney and focuses his practice on consumer protection matters. He uncovered hundreds of illegal charges made by the Indiana BMV and gave closing arguments at trial. After a ruling for drivers, that case settled for over $62 million in refunds. Vess has also successfully litigated predatory lending claims against payday lenders that charged interest rates exceeding 1,000% APR. He defeated arbitration clauses that would have left consumer with no recovery, and successfully defended the wins at the Indiana Court of Appeals, the Indiana Supreme Court, and ultimately the United States Supreme Court.



### Gabriel A. Hawkins

Gabriel is a class action and complex litigation attorney. He is an integral part of the firm's mass medical malpractice litigation team. He helped represent over 280 plaintiffs in lawsuits against former ENT surgeon Mark Weinberger who performed unnecessary sinus surgeries, negligent surgeries, and abandoned his patients. Weinberger was sentenced to seven years in jail for health care fraud. Gabriel's work contributed to the successful $59 million global settlement for these plaintiffs.

### Lisa M. La Fornara



Lisa handles complex civil litigation, including class and representative actions, with a focus on consumer protection, financial services, and data security matters. Lisa has actively litigated hundreds of actions against financial institutions and has helped consumers recover tens of millions of dollars in improperly collected fee revenue. Lisa has helped achieve leading settlements in actions against companies that failed to protect their customers' most sensitive data, providing meaningful equitable and financial relief for victims who experienced or are likely to experience identity theft and fraud. Lisa has also uncovered and obtained refunds for consumers who were systematically underpaid by their insurers following the total loss of their vehicles and has represented whistleblowers in *qui tam* and False Claims Act cases involving fraud against the government.



Tyler B. Ewigleben

Tyler focuses his practice on consumer protection litigation on both a local and national scale. He is an advocate for consumers, businesses, and municipalities who have been harmed or victimized by an unfair practice, policy, or event that has also affected hundreds or sometimes thousands of other individuals. Tyler is currently litigating hundreds of class actions against financial institutions across the country for the improper assessment of various fees. He has played a critical role in obtaining tens of millions of dollars in settlements on behalf of consumers through his mastery of case initiation, managing complex discovery, and briefing complex legal issues. Tyler also represents consumers and businesses in data breach litigation across the country, with dozens of cases currently being litigated and settled.

Natalie A. Lyons



Natalie Lyons focuses on complex and class action matters. Over her career, she has represented consumer and civil rights plaintiffs in federal and state class actions around the country—including two federal civil rights trials that resulted in merits wins for plaintiffs. She has litigated against the federal Departments of Homeland Security and Education, state correctional agencies, and an array of commercial defendants. She is presently litigating complicated class actions in state and federal courts under consumer protection laws, the Telephone Consumer Protection Act and state contract and fraud laws.

Prior to joining Cohen & Malad, LLP, Natalie advocated on behalf of marginalized communities in litigation, direct representation and policy advocacy at the Southern Poverty Law Center (Montgomery, AL), Housing & Economic Rights Advocates (Oakland, CA) and Equal Rights Advocates (San Francisco, CA). In her role as an advocate for racial and social justice, she has appeared on panels; authored reports, op-eds and white papers; and testified on behalf of legislation. Here in Indiana, she served on the 2017 Spirit & Place Festival panel: Liberty & Justice for All?

*Natalie has submitted her application to the Indiana State Bar for licensure. Her application is presently in review.*

8

## April F. Williams Shaw



April handles complex litigation matters including class action and business litigation. She is part of the opioid litigation team representing Indiana cities and counties in lawsuits against manufacturers and distributors of prescription opioids to combat the opioid prescription epidemic.



## Edward 'Ned' B. Mulligan V

Ned handles product liability matters in the firm's dangerous pharmaceutical drug and defective medical device practice group. He has served in mass tort leadership roles on several multidistrict litigations including, In re: Testosterone Replacement Therapy Products Liability Litigation, and In re: Consolidated Fresenius Cases (Granuflo). Ned is a named member of the Plaintiff Steering Committee for In re: Zofran (Ondansetron) Products Liability Litigation. Ned has also written articles regarding mass tort litigation for Trial Magazine.

## Jonathon A. Knoll

Jon is a product liability attorney in the firm's dangerous pharmaceutical drug and defective medical device practice group. He has served in mass tort leadership roles for Biomet Metal on Metal Hip Replacement System Litigation in Indiana state court, *Gilead Tenofovir Cases*, JCCP No. 5043, as well as the multidistrict litigation *In re: Consolidated Fresenius Cases* (Granuflo). Jon speaks nationally on various topics related to mass tort litigation and has also written articles regarding mass tort litigation for Trial Magazine.





## Laura C. Jeffs

Laura is a class action and product liability attorney. Her work includes class action privacy claims involving data breaches and consumer protection claims. Laura represents people who have been injured by dangerous pharmaceutical and defective medical devices in litigation involving pain pump devices, hormone replacement therapy, transvaginal mesh implants, tainted steroid injections, talcum powder ovarian cancer claims, and tenofovir drug litigation.

9

## Antitrust Cases

- ***In re Bromine Antitrust Litigation,*** U.S. District Court, Southern District of Indiana.
  Liaison Counsel for the class in price-fixing issue. Settlement valued at $9.175 million.

- ***In re Ready-Mixed Concrete Antitrust Litigation,*** U.S. District Court, Southern District of Indiana.
  Co-Lead Counsel in a consolidated class action alleging a price-fixing conspiracy among all of the major Ready-Mixed Concrete suppliers in the Indianapolis area. The total settlements provided for a recovery of $60 million, which allowed for a net distribution to class members of approximately 100% of their actual damages.

- ***In re Iowa Ready-Mix Concrete Antitrust Litigation,*** U.S. District Court, District of Iowa.
  Co-lead counsel in class action alleging a price-fixing conspiracy among major suppliers of Ready-Mixed Concrete in northwest Iowa and the surrounding states. Settlements totaled $18.5 million, which allowed for a net distribution to class members of approximately 100% of their actual damages.

## Consumer Protection Cases

- ***Raab v. R. Scott Waddell, in his official capacity as Commissioner of The Indiana Bureau of Motor Vehicles et al.,*** and ***Raab v. Kent W. Abernathy, in his official capacity as Commissioner of The Indiana Bureau of Motor Vehicles et al.,*** Marion County Indiana, Superior Court.
  Actions on behalf of Indiana drivers who had been systematically overcharged by the Indiana Bureau of Motor Vehicles for driver's licenses, registrations, and other fees. Achieved a combined total $100 million recovery providing either credits or refund checks to over 4 million drivers in amounts that equaled the agreed overcharge amounts.

- ***Moss v. Mary Beth Bonaventura, in her official capacity as Director of The Indiana Department of Child Services, et al.,*** LaPorte County Indiana, Superior Court.
  Action on behalf of Indiana families that adopted special needs children from out of DCS foster care and who were denied an adoption subsidy payment. Achieved settlement over $15 million providing checks to benefit over 1,880 special needs children, with the average settlement check near $5,000 and a substantial number exceeding $10,000.

- ***Coleman v. Sentry Insurance,*** United States District Court, Southern District of Illinois.
  Class action on behalf of insured for failure to honor premium discounted features of automobile insurance policy; Settled for $5.7 million cash fund, with direct payments to class members averaging over $550.

10

- ***Econo-Med Pharmacy v. Roche,*** United States District Court for the Southern District of Indiana.
  $17 million common fund recovery in TCPA class action.

- ***Plummer v. Nicor Energy Services Company,*** U.S. District Court, Southern District of Indiana.
  Class counsel in multistate class action on behalf of utility customers for deceptive charges on utility bills. Resolved for $12 million cash settlement.

- ***Price v. BP Products North America Inc.,*** U.S. District Court, Northern District of Illinois.
  Class counsel in multi-state class action on behalf of motorists that purchased contaminated gasoline recalled by BP. Achieved settlement of $7 million.

- ***Wilmoth et al. v. Celadon Trucking Services,*** Marion County Indiana, Superior Court.
  Appointed Class Counsel and obtained judgment, which was upheld on appeal, for approximately $5 million in favor of nationwide class of long-distance drivers who had compensation improperly withheld by Celadon from fuel purchases.

- ***Means v. River Valley Financial Bank, et al.,*** Marion County Indiana, Superior Court.
  Action involving prepaid burial goods and services in Madison, Indiana. Cemetery owners and banks who served as the trustees for the prepaid burial funds violated the Indiana Pre-Need Act and other legal duties, which resulted in insufficient funds to provide class members' burial goods and services at death. Settlements valued at $4 million were achieved to ensure that thousands of class members' final wishes will be honored.

- ***Meadows v. Sandpoint Capital, LLC,*** and ***Edwards v. Apex 1 Processing, Inc.,*** Marion County Indiana, Circuit Court.
  Class actions brought against internet-based payday lenders. Settlement provided reimbursement for fees and expenses that exceeded amounts permitted by the Indiana payday loan act.

- ***Edwards v. Geneva-Roth Capital, Inc.,*** Marion County Indiana, Circuit Court. Class action brought against internet-based payday lenders. Achieved settlement over $1 million providing checks for over 6,000 individuals.

- ***Colon v. Trinity Homes, LLC and Beazer Homes Investment Corp,*** Hamilton County Indiana, Superior Court.
  Class counsel in statewide settlement providing for remediation of mold and moisture problems in over 2,000 homes. Settlement valued at over $30 million.

- ***Whiteman v. Time Warner Entertainment Company, L.P.,*** Marion County, Indiana, Superior Court.
  Successfully appealed to the Indiana Supreme Court challenging the application of the voluntary payment doctrine for class of cable subscribers. Following this victory, Cohen & Malad, LLP negotiated a multi-million-dollar settlement for class members.

- ***Hecht v. Comcast of Indianapolis,*** Marion County Indiana, Circuit Court. Represented a class of Comcast cable subscribers challenging arbitrarily determined late fees as unlawful liquidated damages. Obtained a multi-million-dollar settlement on the eve of trial.

- ***Littell et al. v. Tele-Communications, Inc. (AT&T) et al.,*** Morgan County, Indiana, Superior Court.  Lead counsel in nationwide class action challenging late fee charges imposed by cable television companies. The total value of the nationwide settlement exceeded $106 million.

- ***Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires Products Liability Litigation,*** U.S. District Court, Southern District of Indiana.
  Court-appointed Liaison Counsel and Executive Committee Member in consolidated litigation involving international distribution of defective tires.

- ***Tuck v. Whirlpool et al.,*** Marion County, Indiana, Circuit Court.
  Appointed Class Counsel in nationwide class action regarding defective microwave hoods. Settlement achieved in excess of $7 million.

- ***Hackbarth et al. v. Carnival Cruise Lines,*** Circuit Court of Dade County, Florida.
  Class Counsel in nationwide action challenging cruise lines' billing practices. Settlement valued at approximately $20 million.

- ***Kenro, Inc. v. APO Health, Inc.,*** Marion County Indiana, Superior Court. Appointed Class Counsel in case alleging violations of the Federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Settlement negotiated to create a common fund of $4.5 million and provide benefits to class members of up to $500 for each unsolicited fax advertisement received.

- ***Shilesh Chaturvedi v. JTH Tax, Inc. d/b/a Liberty Tax Service,*** Court of Common Pleas, Allegheny County, Pennsylvania.
  Class Counsel in case involving Federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Settlement valued at $45 million.

- ***Kenro, Inc. and Gold Seal Termite and Pest Control Company v. PrimeTV, LLC, and DirecTV, Inc.,*** Marion County Indiana, Superior Court.
  Class Counsel in case involving the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Following certification, the parties entered into nationwide settlement providing class members with benefits

12

worth in excess of $500 million.

- ***Econo-Med Pharmacy, Inc. v. Roche Diagnostics Corp. et al.,*** U.S. District Court, Southern District of Indiana.
  Class Counsel in Telephone Consumer Protection Act case alleging medical device company sent unsolicited junk faxes to 60,000 U.S. pharmacies. Settlement for $17 million.

- ***McKenzie et. al. v. Allconnect, Inc.,*** U.S. District Court, Eastern District of Kentucky.
  Class action on behalf of consumers whose highly sensitive personally identifiable information was compromised as a result of a data breach. Settlement for $500,000, five (5) years of credit monitoring services, and monetary payments of $100 to each settlement class member.

Bank Fee Cases

- ***Hill v. Indiana Members Credit Union,*** Marion County Indiana, Superior Court.
  Class action on behalf of credit union members who were improperly assessed (1) non-sufficient funds fees on accounts that were never actually overdrawn; (2) multiple non-sufficient funds fees on a single transaction; (3) out of network ATM withdrawal fees; and (4) ATM balance inquiry fees. Settlement for $3 million.

- ***Plummer v. Centra Credit Union,*** Bartholomew County Indiana, Superior Court.
  Class action on behalf of consumers who were improperly assessed overdraft fees on accounts that were never actually overdrawn. Settlement for $1.5 million.

- ***Terrell et. al. v. Fort Knox Federal Credit Union,*** Hardin County Kentucky, Circuit Court.
  Class action on behalf of consumers who were improperly assessed (1) overdraft fees on transactions that were previously authorized on a sufficient available balance and (2) multiple insufficient funds fees on a single transaction. Settlement for $4.5 million.

- ***Martin v. L&N Federal Credit Union,*** Jefferson County Kentucky, Circuit Court.
  Class action on behalf of consumers who were improperly assessed overdraft fees on accounts that had sufficient funds to cover the transactions. Settlement for $2.575 million.

- ***Cauley v. Citizens National Bank,*** Sevier County Tennessee, Circuit Court.
  Class action on behalf of consumers who were improperly assessed overdraft fees on transactions that did not actually overdraw checking accounts. Settlement for $500,000.

13

- ***Norwood v. The Camden National Bank,*** Cumberland County Maine, Business and Consumer Court.
  Class action on behalf of consumers who were improperly assessed overdraft fees on accounts that were never actually overdrawn and also on phantom transactions—where an accountholder never made a withdrawal request and where an account balance was never reduced. Settlement for $1.2 million.

- ***Tisdale v. Wilson Bank and Trust,*** Davidson County Tennessee, Chancery Court.
  Class action on behalf of consumers who were improperly assessed overdraft fees on transactions that were previously authorized on an account with sufficient funds. Settlement for $550,000.

- ***Johnson et. al. v. Elements Financial Credit Union,*** Marion County Indiana, Commercial Court.
  Class action on behalf of consumers who were improperly assessed (1) overdraft fees on accounts that were never actually overdrawn; and (2) multiple insufficient funds fees on a single transaction. Settlement for $775,000.

- ***Holt v. Community America Credit Union,*** U.S. District Court, Western District of Missouri.
  Class action on behalf of consumers who were improperly assessed overdraft fees on accounts that were never overdrawn and multiple fees on a single item or transaction returned for insufficient funds. Settlement for $2.325 million.

- ***Hawley et. al. v. ORNL Federal Credit Union,*** Anderson County Tennessee, Circuit Court.
  Class action on behalf of consumers who were improperly assessed (1) overdraft fees on transactions that did not actually overdraw checking accounts; (2) overdraft fees on transactions made on the same day that a direct deposit should have been made available to cover the transaction subject to an overdraft fees; and (3) multiple non-sufficient funds fees on a single transaction. Settlement for $470,000.

- ***Graves v. Old Hickory Credit Union,*** Chancery Court of Tennessee.
  Action on behalf of credit union members who were charged overdraft fees on debit card and ATM transactions when the member's Available Balance was negative, but the member's Ledger Balance was positive. Settlement for $500,000.

Human Rights Cases

- ***In re Holocaust Victims Assets Litigation,*** U.S. District Court, Eastern District of New York.
  Selected as one of ten firms from the U.S. to serve on the Executive Committee in the prosecution of a world-wide class action against three

14

major Swiss banks to recover assets from the Nazi era. This litigation resulted in a $1.25 billion settlement in favor of Holocaust survivors.

- ***Kor v. Bayer AG,*** U.S. District Court, Southern District of Indiana. Action against an international pharmaceutical company for participating in medical experiments on concentration camp inmates during World War II. This action was resolved as part of a $5 billion settlement negotiated under the auspices of the governments of the U.S. and Germany and led to the creation of the *Foundation for Remembrance, Responsibility and the Future.*

- ***Vogel v. Degussa AG,*** U.S. District Court, District of New Jersey. Action against a German industrial enterprise for enslaving concentration camp inmates during World War II for commercial benefit. This action also was resolved in connection with the settlement which created the *Foundation for Remembrance, Responsibility and the Future.*

## Health Care / Insurance Cases

- ***In re Indiana Construction Industry Trust,*** Marion County, Indiana, Circuit Court.
  Lead Counsel in action against an insolvent health benefits provider from Indiana and surrounding states. Recovered approximately $24 million for enrollees, providing nearly 100% recovery to victims.

- ***Coleman v. Sentry Insurance a Mutual Company,*** United States District Court, Southern District of Illinois.
  Class Counsel on behalf of 6,847 policy holders in 11 states against insurer for breaching refund feature of auto insurance policies, which resulted in recovery of $5,718,825.

- ***Davis v. National Foundation Life Insurance Co.,*** Jay County, Indiana, Circuit Court.
  Class Counsel in action involving insureds who were denied health insurance benefits as a result of National Foundations' inclusion and enforcement of pre-existing condition exclusionary riders in violation of Indiana law. Settlement provided over 85% recovery of the wrongfully denied benefits.

## Securities Fraud Cases

- ***Grant et al. v. Arthur Andersen et al.,*** Maricopa County Arizona, Superior Court.
  Lead counsel in class action arising from the collapse of the Baptist Foundation of Arizona, involving losses of approximately $560 million. Settlement achieved for $237 million.

- ***In re: Brightpoint Securities Litigation,*** U.S. District Court, Southern District of Indiana.

15

Class Counsel in securities fraud action that resulted in a $5.25 million settlement for shareholders.

- ***City of Austin Police Retirement System v. ITT Educational Services, Inc., et al,*** U.S. District Court, Southern District of Indiana.
  Co-lead counsel in action alleging misrepresentations by defendant and certain principals concerning enrollment and graduate placement, and a failure to disclose multiple federal investigations into defendant's operations and records.

- ***Beeson and Gregory v. PBC et al.,*** U.S. District Court, Southern District of Indiana.
  Class Counsel in a nationwide class action with ancillary proceedings in the District of Connecticut, and the Southern District of Florida. Multi-million-dollar settlement that returned 100% of losses to investors.

- ***In re: Prudential Energy Income Securities Litigation,*** U.S. District Court, Eastern District of Louisiana.
  Counsel for objectors opposing a $37 million class action settlement. Objection successfully led to an improved $120 million settlement for 130,000 class members.

- ***In re: PSI Merger Shareholder Litigation,*** U.S. District Court, Southern District of Indiana.
  Obtained an injunction to require proper disclosure to shareholders in merger of Public Service Indiana Energy, Inc. and Cincinnati Gas & Electric.

- ***Dudley v. Ski World, Inc.,*** U.S. District Court, Southern District of Indiana.
  Class counsel for over 5,000 investors in Ski World stock. Multi-million-dollar settlement.

- ***Stein v. Marshall,*** U.S. District Court, District of Arizona.
  Class Counsel Committee member in action involving the initial public offering of Residential Resources, Inc. Nationwide settlement achieved on behalf of investors.

- ***Dominijanni v. Omni Capital Group, Ltd. et al.,*** U.S. District Court, Southern District of Florida.
  Co-lead counsel in securities fraud class action. Nationwide settlement on behalf of investors.

Mass Medical Malpractice

- **Weinberger Litigation,** $59 million in settlements.
  This litigation involved 282 plaintiffs who were patients of former ENT surgeon Mark Weinberger of Merrillville, Indiana. This mass medical malpractice included complaints ranging from unnecessary sinus surgeries and negligently performed surgeries to patient abandonment.

16

Weinberger fled the country after more than a dozen medical malpractice lawsuits were filed against him. He was also indicted on 22 counts of health care fraud and was later apprehended at the foot of the Italian Alps. Weinberger was ultimately sentenced to 7 years in prison for insurance fraud. Cohen & Malad, LLP attorneys served as Co-Counsel in these medical malpractice lawsuits and successfully negotiated $59 million in settlements for the people Weinberger harmed.

- **Northwest Indiana Cardiology Group Litigation,** $67 million settlement. This litigation involved over 260 claimants who were patients of a cardiology practice in northwest Indiana. This mass tort medical malpractice included complaints of unnecessary heart surgeries, coronary artery stenting, peripheral stenting, and pacemaker and defibrillator implantations, as well as negligent credentialing claims. Cohen & Malad, LLP attorneys are served as Co-Counsel in these medical malpractice lawsuits and successfully negotiated a settlement of over $67 million.

Mass Tort Pharmaceutical Drug and Medical Device Litigation

- ***Gilead Tenofovir Cases,*** JCCP No. 5043 *(pending)*
  Cohen & Malad, LLP is currently representing patients against Gilead Sciences who were prescribed its TDF-based drugs to treat HIV, for pre-exposure prophylaxis (PrEP) to mitigate HIV risk, or to treat Hepatitis, and suffered serious kidney and bone injuries. Thousands of cases are pending in the Superior Court for the County of San Francisco, California.

- **Strattice Biologic Mesh** *(pending)*
  Cohen & Malad, LLP is representing patients against LifeCell Corporation and Allergen who suffered injuries, including revision or removal surgeries, after receiving a Strattice mesh product for hernia repairs. These cases are currently pending in New Jersey State Court.

- ***In Re: Zofran (Ondansetron) Products Liability Litigation,*** MDL No. 2657 (D. Mass) (pending)
  Cohen & Malad, LLP serves on the Plaintiff's Steering Committee, Narrative Committee, and Discovery, Briefing, and Science Committees in an action on behalf of women who took Zofran while pregnant and gave birth to a baby who suffered from a serious birth defect.

- ***In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation,*** MDL No. 2738 (D. N.J.) (pending)
  Cohen & Malad, LLP is currently representing women who used Johnson & Johnson's talcum powder products for feminine hygiene and were diagnosed with ovarian cancer. Thousands of cases are currently pending.

- ***In Re: National Prescription Opiate Litigation,*** MDL No. 2804 (N.D. Ohio) (pending)

Cohen & Malad, LLP is currently representing dozens of Indiana cities and counties in litigation against the manufacturers and distributors of opioid pain medications. This litigation is focused on combating the prescription opioid epidemic and replenishing valuable resources for Indiana communities that have spent vital economic resources responding to public health and safety issues resulting from this epidemic.

- **Biomet Metal on Metal Hip Replacement System** (pending)
  Cohen & Malad, LLP is representing patients in Indiana state court who were implanted with a Biomet M2a metal on metal hip replacement system and suffered serious injuries such as significant pain, tissue destruction, bone destruction, and metallosis. In many cases, revision surgeries were necessary within just a few years of implantation.

- ***In Re: Zantac (Ranitidine) Products Liability Litigation***, MDL No. 2924, (S.D. FL.) *(pending)*
  Cohen & Malad, LLP is representing patients who were diagnosed with cancer following the use of Zantac (ranitidine). The U.S. Food and Drug Administration issued a recall for all Zantac (ranitidine) drugs including over the counter and prescription formulas on April 1, 2020.

- ***In Re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation***, MDL No. 2570 (S.D. Ind.) *(pending)*
  Cohen & Malad, LLP is representing patients alleging serious injury related to the use of Cook Medical's inferior vena cava (IVC) filters.

- ***In Re: Prempro Products Liability Litigation***, MDL No. 1507
  Cohen & Malad, LLP litigated hundreds of claims against Wyeth, the manufacturer of Prempro, for women who took hormone replacement therapy drug Prempro and suffered stroke, heart attacks, endometrial tumors or breast cancers. Wyeth agreed to a global settlement for more than $890 million to settle roughly 2,200 claims.

- **Pain Pump Device Litigation**
  No MDL existed for this litigation. Cohen & Malad, LLP served in a National Coordinated Counsel role. This litigation was against pain pump manufacturers who marketed pain pumps to orthopedic surgeons for continuous intra-articular uses, despite the fact that intra-articular placement of the pain pump catheters was not approved by the FDA. The use of pain pumps in the joint space resulted in deterioration of cartilage, severe pain, loss of mobility or decreased range of motion and use of shoulder.

- **Yaz**
  Cohen & Malad, LLP represented hundreds of women in claims against Bayer over its Yaz and Yasmin birth control oral contraceptive. These drugs contained a synthetic version of estrogen called drospirenone that was linked to an increased risk for blood clots, stroke, and heart attack. As

18

of January 2016, Bayer agreed to pay $2.04 billion to settle over 10,000 claims for blood-clot injuries.

- **Transvaginal Mesh**
  Cohen & Malad, LLP represented hundreds of women in claims against transvaginal mesh manufacturers Ethicon, C.R. Bard, Boston Scientific, and American Medical Systems. Mesh implants are synthetic material used to support organs in women who suffer from pelvic organ prolapse and stress urinary incontinence. The FDA received thousands of complaints from women who suffered serious personal injury including perforated organs, infection, severe pain, and erosion of the mesh.

- ***In Re: Testosterone Replacement Therapy Products Liability Litigation,*** MDL No. 2425 (N.D. Ill.)
  Cohen & Malad, LLP served on the discovery team in action on behalf of men who took drug manufacturers' testosterone replacement therapy products and suffered injuries such as blood clots, heart attacks, strokes and death.

- ***In Re: Consolidated Fresenius Cases (Granuflo),*** MICV2013-3400-O, Commonwealth of Massachusetts, Middlesex County,
  Cohen & Malad, LLP served on the Plaintiff's Steering Committee, bellwether discovery program committee, and privilege log committee in an action on behalf of dialysis patients alleging the defendant's dialysis products caused cardiac injuries and death. There was a $250 million global settlement.

19

# EXHIBIT 3





**NASHVILLE**

**The Freedom Center**
223 Rosa L. Parks Ave., Ste 200
Nashville, Tennessee 37203
Tel: 615-254-8801
Fax: 615-255-5419



**LOUISVILLE**

**Central Park**
515 Park Avenue
Louisville, Kentucky 40208
Tel: 502-636-4333
Fax: 502-636-4342



**CINCINNATI**

**US Bank Building**
425 Walnut Street, Suite 2315 Cincinnati, OH 45202
Tel: 513-381-2224



**WASHINGTON, D.C.**

**Georgetown Place**
1101 30th St. NW., Ste 500
Washington, D.C. 20007
Tel: 615-254-8801

**For over sixty-five years**, Branstetter, Stranch & Jennings, PLLC has been known for the quality

1

of its advocacy, and the integrity of its attorneys. The Firm enjoys a national reputation of prominence in the complex litigation arena for its work in class actions, shareholder derivative claims, securities, ERISA, labor and employment, and other complex cases, both at the trial and appellate levels.

The Firm has three offices providing a full range of legal services to its diverse clientele both regionally and nationwide. In addition to providing quality legal services, the firm is proud of the professional and civic leadership that its members have provided both locally and nationally. Our former Managing Partner, Jane Branstetter Stranch, was nominated by President Obama to the United States Court of Appeals for the Sixth Circuit, and now serves as judge on that court following her confirmation by the U.S. Senate. Branstetter, Stranch & Jennings, PLLC firm is listed in the Bar Register of Preeminent Lawyers, and was recently named among "Best Law Firms" by U.S. News & World Report for 2018-2021, receiving the highest possible Nashville ranking as a Tier 1 in two practice areas.

## Statement of Practice:

General Litigation Practice in State, Federal and Appellate Courts; Class Actions and Complex Litigation; Mass Tort; Antitrust Law; Securities Law; Shareholder Derivative Law; Wage & Hour Law; Consumer Protection; Labor and Employment Law; ERISA and Pension Law; Commercial Litigation; Utility Law; Municipal Law; Personal Injury; Workers' Compensation; and, Social Security Claims.

## Members and Attorneys:

**Cecil D. Branstetter**, (Member Emeritus – Deceased May 7, 2014) born Morgan County, Tennessee; admitted to bar, 1949, Tennessee. **Education:** Lincoln Memorial University and George Washington University (B.A., 1946); Oxford University, England and Vanderbilt University (J.D., 1949). Order of the Coif; Delta Theta Phi. Member, Board of Editors, Vanderbilt Law Review, 1949. Member, Tennessee Legislature, 1951-1953. **Member:** Past Chairperson, Tennessee Disciplinary Board of Tennessee; Nashville Bar Association (President, Junior Section, 1952-1953) and American Bar Associations; Nashville and Tennessee Bar Foundations; Tennessee Association of Criminal Defense Lawyers, Tennessee Trial Lawyers; American Board of Trial Advocates; The Association of Trial Lawyers of America; Founder, Tennessee Environmental Council; Past President, Tennessee Conversation League; Recipient, John Tune Award, Nashville Bar Association. **Practice Areas:** Personal Injury; Public Utility Law; Regulated Industries; Municipal Law; Labor & Employment; Administrative Law; Civil Litigation; Criminal Law.

**James G. Stranch, III,** (Member) born Abbeville, South Carolina; admitted to bar, 1973, Tennessee; 1974, U.S. District Court, Middle District of Tennessee; U.S. Tax Court; 1980, U.S. Supreme Court; 1982, U.S. Court of Appeals, Sixth Circuit, 1986; Eight Circuit, 2011; Ninth Circuit, 2008; U.S. District Court, Eastern District of Tennessee; 2008, U.S. District Court, Western District of Tennessee; 2002, U.S. District Court, Colorado. **Education:** Dobbins-Bennett High School, Kingsport, Tennessee; University of Tennessee (B.S., 1969; J.D., 1973). Phi Delta Phi. **Member:** Tennessee State Ethics Commission (Chairman, 2011 – Present); Tennessee Appellate Court Nominating Committee (Secretary, 1985-1991); AFL-CIO Lawyer's Coordinating Advisory Committee (1980-presnt); Nashville Bar Association (1973 – Present); Tennessee Bar Association (Chairman, Labor Law Section, 1991-1992; member 1973-present) and American Bar Associations (1973-present); American and Tennessee Association for Justice (1974 – Present); **Practice Areas:** Labor & Employment; Class Actions and Complex Litigation; Shareholder Derivative Law; Consumer Protection; ERISA; Securities Law; Civil Litigation; Personal Injury; Auto & Trucking; and Municipal Law.

**R. Jan Jennings**, (Member); admitted to bar, 1975, Tennessee and U.S. District Court, Eastern District of

2

Tennessee; 1976, Georgia and U.S. Court of Appeals, Fifth Circuit; 1979, U.S. Court of Appeals, Sixth Circuit; 1981, U.S. Court of Appeals, Eleventh Circuit; 1984, U.S. Court of Appeals for the Federal Circuit and U.S. Supreme Court. **Education:** East Tennessee State University (B.S., 1964; M.B.A., 1966); University of Tennessee at Knoxville (J.D., 1974). Editor, Tennessee Law Review, 1973-1974. Member, Panel of Arbitrators, American Arbitration Association. **Member:** Tennessee Bar Association; State Bar of Georgia. **Practice Areas:** Litigation; ERISA; Labor; Personal Injury.

**J. Gerard Stranch, IV**, (Member) born Nashville, Tennessee; admitted to bar, 2003, Tennessee, U.S. District Court, Middle District of Tennessee; 2005, U.S. District Court, Eastern District of Tennessee; 2008, U.S. District Court for Western Tennessee; 2004 U.S. Court of Appeals, Sixth Circuit. **Education:** Emory University (B.A. 2000); Vanderbilt University Law School (J.D., 2003). Adjunct Professor of Law, Vanderbilt University Law School (2011 – Present). **Member:** Nashville and Tennessee Bar Associations; American and Tennessee Association for Justice (Governor), Class Action Trial Lawyers Association executive committee member, and AFL-CIO Lawyers Coordinating Committee; Top 40 Under 40 by the National Trial Lawyers Association. **Practice Areas:** Class Actions and Complex Litigation; Mass Torts; Securities Law; Labor & Employment; Consumer Protection; ERISA; Civil Litigation; Personal Injury and Wrongful Death.

**Joe P. Leniski, Jr.**, (Member), admitted to bar, 2003, Tennessee; 2004, U.S. District Court, Middle District of Tennessee; 2005, U.S. District Court, Eastern District of Tennessee; 2008, U.S. District Court, Western District of Tennessee; 2005, U.S. District Court, Eastern District of Arkansas, 2016, U.S. Court of Appeals for the First, Third, Sixth, and Eighth Circuits; **Education:** University of Notre Dame (B.A., cum laude, 2000), Vanderbilt University Law School (J.D., 2003). Vanderbilt Bar Association, President; Trial Advocacy Association, member; Vanderbilt Juvenile Practice Clinic. **Member:** Nashville and Tennessee Bar Associations; American Bar Association; American Association of Justice; Public Justice; Harry Phillips American Inn of Court; Super Lawyers, 2012-2019; Class Action Trial Lawyers Top 25; Mass Tort Trial Lawyers Top 25; The National Trial Lawyers Top 100 Civil Plaintiff. **Practice Areas:** Civil Litigation; Class Actions and Complex Litigation; Antitrust Law; Shareholder Derivative Law; Labor & Employment; Consumer Protection; and ERISA.

**Michael G. Stewart,** (Member), admitted to bar, 1994, Tennessee. **Education:** University of Pennsylvania (B.A. 1987); University of Tennessee College of Law (J.D. 1994). **Member:** Nashville, Tennessee, and American Bar Associations; Member & House Caucus Leader, Tennessee House of Representatives (2008 – Present). **Practice Areas:** Class Actions and Complex Litigation; Securities; Consumer Protection.

**Michael J. Wall**, (Member) born Cincinnati, Ohio; admitted to bar, 2005, Tennessee; 2006, U.S. District Court, Middle District of Tennessee; 2008, U.S. District Court, Western District of Tennessee; 2009, U.S. District Court, Eastern District of Tennessee; 2006, U.S. Court of Appeals, 6th Circuit; 2010, U.S. Court of Appeals, 11th Circuit; 2011, U.S. Court of Appeals, 8th Circuit; 2009, U.S. Supreme Court. **Education:** Vanderbilt University (B.A., 2002); Vanderbilt University Law School (J.D., 2005). **Member:** Nashville, Tennessee, and American Bar Associations. **Practice Areas:** Civil Litigation; Labor & Employment; ERISA; Class Actions and Complex Litigation.

**Karla M. Campbell**, (Member), admitted to Tennessee Bar 2008, U.S. District Court, Middle District of Tennessee 2011, U.S. Court of Appeals, 6th Circuit 2011; **Education**: University of Virginia (B.S., 2002); Georgetown University Law Center (J.D., 2008); **Clerkship:** Hon. Jane B. Stranch, U.S. Court of Appeals, 6th Circuit (2010-2011); **Member**: Nashville, Tennessee, and American Bar Associations; **Director:** AFL-CIO Lawyers Coordinating Committee; **Practice Areas**: Civil Litigation; Labor & Employment; Complex Litigation; ERISA. Also noteworthy is that Ms. Campbell speaks fluent Spanish.

**Benjamin A. Gastel**, (Member), admitted to Georgia Bar 2007, Georgia Court of Appeals 2008, U.S. District Court, Northern District of Georgia 2008, Georgia Supreme Court 2010, Tennessee Bar 2010, Tennessee Supreme Court 2010, U.S. District Court, Middle District of Tennessee, 2011. **Education**: University of Dayton (B.S., 2004); Vanderbilt School of Law (J.D., 2007). **Member**: Nashville, Tennessee, Georgia, and American Bar Associations. **Practice Areas**: Class Actions and Complex Litigation; Civil Litigation; Consumer Securities and Fraud, Antitrust Litigation; and Labor & Employment.

**Tricia Herzfeld**, (Member), admitted to the Tennessee Bar (2007), Florida Bar (2001), and West Virginia Bar (2004), U.S. District Court Middle District of Tennessee (2008), U.S. District Court Eastern District of Tennessee (2010), U.S. District Court of Western Tennessee, 2010, U.S. District Court Southern District of West Virginia (2005), U.S. Court of Appeals, Sixth Circuit (2017), U.S. District Court, Fifth Circuit (2013), U.S. Immigration Courts (2015). **Education:** George Washington University (B.A.1998); George Washington University Law School (2001). **Member:** Super Lawyers (2012-2016), Davidson County Election Commission, (2012-present). **Practice Areas:** Complex Litigation, Personal Injury, and Civil Rights.

**David O'Brien Suetholz**, (Member), admitted to the Kentucky Bar (2004), Indiana Bar (2005), U.S. District Court Eastern District of Kentucky (2004), U.S. District Court Western District of Kentucky (2004), U.S. District Court of Southern District of Indiana, 2005; U.S. Court of Appeals, Sixth Circuit (2005), U.S. Court of Appeals for the Federal Circuit; Supreme Court of the United States of America (2010) **Education:** Villanova University (B.A.2000); Notre Dame Law School (2003). **Experience:** General Counsel Kentucky Labor Cabinet 2009-2011; *Thompson v. North American Stainless, L.P.*, 562 U.S. 170 (2011) (expanded Title VII protection nationwide) **Practice Areas:** Union-side Labor Law.

**Anthony A. Orlandi,** (Member), admitted to Tennessee Bar 2015; Massachusetts Bar 2006; U.S. District Court, District of Massachusetts; U.S. District Courts, Eastern, Middle, and Western Districts of Tennessee, Eastern and Western Districts of Arkansas; U.S. Court of Appeals for the Sixth Circuit; **Education:** Brown University, B.A., Public Policy & American Institutions, Phi Beta Kappa; University of Virginia School of Law (J.D.), Earle K. Shawe Labor Relations Award **Member**: Member, American, Tennessee, and Nashville Bar Associations; Phi Beta Kappa, National Chapter and Rhode Island Chapter Board Member Law Association for Women, Nashville Chapter Board Member; Nashville Bar Association Diversity Committee; Nashville Bar Association Social Committee; Harry Phillips American Inn of Court; Tennessee Bar Association Leadership Law Class of 2017, Nashville Bar Foundation 2015 Young Leadership Forum **Experience:** Law Clerk, Hon. Aleta A. Trauger, U.S. District Court for the Middle District of Tenn. **Practice Areas:** Complex Litigation; Constitutional Rights Litigation; Personal Injury; Products Liability

**Edward Gleason,** (Member), admitted to Pennsylvania Bar 1989, Washington, Washington, D.C. Bar 1991, U.S. Courts of Appeal for the Second, Third, Seventh, Ninth, D.C. Circuits, United States Supreme Court 1998, **Education:** Fordham University *Phi Beta Kappa* (B.A. 1986); Dickinson School of Law *with distinction*, (1989). **Experience:** Adjunct Professor Georgetown University Law Center for fourteen years; Pro-Bono International Labor Rights; General Counsel of Marine Engineers Beneficial Association (1996-99, 2002-2007); Counsel for International Brotherhood of Teamsters, Carhaul and Airline Divisions (2007-

4

2013); Chief Counsel to Teamsters Local 1224 (2013-present). **Practice Areas:** Union-side Labor Law, ERISA, Labor and Employment Related Civil Litigation, and Labor and Employment Related Administrative Proceedings.

---

**Jessica Myers**, (Of Counsel), admitted to Tennessee Bar, 2006, U.S. District Court, Middle District of Tennessee, 2007; U.S. District Court, Eastern District of Tennessee, 2014; U.S. District Court, Western District of Tennessee, 2015. **Education**: Barnard College, Columbia University (B.A., 2000); Harvard Law School (J.D., 2006). **Practice Areas**: Civil Litigation.

**Pamela Newport**, (Senior Associate), admitted to the Ohio bar, 2005, U.S. District Court, Southern District of Ohio, U.S. District Court, Northern District of Ohio. **Education**: University of Cincinnati (B.A., 2001); University of Cincinnati (M.A., 2004); University of Cincinnati (J.D. 2005). **Member**: AFL-CIO Lawyers Coordinating Committee, NAACP, Adjunct Professor, University of Cincinnati College of Law, 2009-2011, Cincinnati Interfaith Workers Center, Board Member, 2006-2008; **Experience**: Kircher, Suetholz and Associates (2017-2018), General Counsel, UFCW Local 75 (2008-2016), Manley Burke, LPA (2005-2008) **Practice Areas**: Union-side Labor and Employment.

**Marty Schubert**, (Senior Associate), admitted to the New York bar, 2014, Tennessee bar, 2016, and U.S. District Court, Western District of Tennessee. **Education**: Georgetown University (B.S., 2006); Loyola Marymount University (M.A., 2008); Brooklyn Law School (J.D., 2013). **Experience**: Waller Lansden Dortch & Davis, LLP (2016-2019), Linklaters LLP (2013-2016) **Practice Areas**: Complex Civil Litigation.

**Daniel Hull**, (Associate), admitted to Tennessee Bar, 2005, U.S. District Court for the Middle District of Tennessee, 2006, U.S. District Court for the Eastern District of Tennessee, 2011, U.S. District Court for the Western District of Tennessee, 2019, U.S. District Court for the Western District of Kentucky (*pro hac vice*), U.S. District Court for the District of Montana (*pro hac vice*). **Education**: Carson-Newman University (B.A., 1999); University of Tennessee (M.A., 2001); University of Tennessee College of Law (J.D., 2005). **Practice Areas**: Complex Civil Litigation, Class Action, including Mass Tort Litigation, Construction Law, Employment Law, Public Utility and Eminent Domain.

**Alyson Beridon**, (Associate), admitted to the Ohio bar, 2011, Kentucky bar, 2017, U.S. District Court, Southern District of Ohio, Western District of Kentucky and Eastern District of Kentucky. **Education**: Salmon P. Chase College of Law at Northern Kentucky University. **Experience**: Beridon Law Office (2011-2016), Kircher, Suetholz and Associates (2016-2018). **Practice Areas**: Union-side Labor and Employment.

**Clement L. Tsao**, (Associate), admitted to the Ohio bar, 2013, admitted to the Kentucky bar, 2014, U.S. District Court, Southern District of Ohio, U.S. District Court, Northern District of Ohio, U.S. District Court, Eastern District of Kentucky, U.S. Court of Federal Claims, U.S. Federal Circuit Court of Appeals; **Education**: Brown University (A.B., 2003); University of Cincinnati College of Law (J.D.. 2012); **Member**: American Bar Association - Labor and Employment Section, AFL-CIO Lawyers Coordinating Committee (Board Member, 2016-2018); **Experience**: Cook & Logothetis, LLC (associate, 2013-2019); **Practice Areas**: Union-side Labor and Employment.

**Janna Maples**, (Associate). Admitted to Tennessee Bar, 2013 **Education**: Auburn University (B.A., 2010); Vanderbilt University School of Law (J.D., 2013). **Practice Areas**: Complex Litigation, Mass Tort.

**Kathleen Grace Stranch,** (Associate), admitted to the Tennessee Bar 2014, U.S. District Court of Eastern Tennessee, U.S. District Court of Middle Tennessee; U. S. District Court of Western Tennessee. **Education**: Rhodes College (2010); University of Tennessee College of Law (2014); **Practice Areas**: Union-side Labor and Employment, Utility, Social Security, Probate, and Civil Litigation.

**Peter Jannace**, (Associate), admitted to Kentucky Bar, 2014, U.S. District Court Western District of Kentucky, 2014, U.S. Court of Appeals 6th Circuit, 2019. **Education**: University of Louisville (B.S., 2010); Hofstra University School of Law (J.D., 2013). **Experience**: Gordon Mize & Jannace LLP (2014-2020). **Practice Areas**: Union-side Labor and Employment, Administrative Law, Appellate Advocacy, Civil Rights, Class Actions and Complex Litigation, Constitutional Law.

**Megan Killion**, (Staff Attorney), admitted to Tennessee Bar, 2008. **Education**: Belmont University (B.S., 2005); Vanderbilt University School of Law (J.D., 2008). **Experience**: Metropolitan Nashville Department of Law. **Practice Areas**: Antitrust, Class Actions and Complex Litigation, Personal Injury.

**Matthew McGraw**, (Staff Attorney), admitted to Tennessee Bar, 2013, and U.S. District Court for the Middle District of Tennessee, 2017. **Education**: The University of the South (B.A., 2010); University of Tennessee College of Law (J.D., 2013). **Experience**: Reid Leitner Law Group, PLLC (2016-2017), The Wooden Law Firm, PC (2014-2015). **Practice Areas**: Class Actions, Complex Litigation.

**Jack Smith**, (Staff Attorney), admitted to Tennessee Bar, 2018, U.S. District Court for the Middle District of Tennessee, 2019. **Education**: The Ohio State University (B.A., 2016); University of Tennessee College of Law (J.D., 2018). **Practice Areas**: Complex Litigation, Wage and Hour.

**Matthew Jacobs**, (Staff Attorney), admitted to Tennessee Bar, 2019. **Education**: Eastern Illinois University (2015); Vanderbilt University Law School (J.D., 2018). **Practice Areas**: Complex Litigation, Contract Law.

**Branstetter, Stranch & Jennings, PLLC** has served either as lead counsel or as an plaintiffs' executive committee member in a substantial number of precedent setting labor, class actions, shareholder derivative, securities, and other complex cases both in state and federal courts throughout the nation. The firm's efforts have produced significant monetary recovery and/or benefits for plaintiffs from many jurisdictions. While the firm has also defended numerous such actions, the following is a list of notable complex litigation cases that the firm is currently prosecuting, or has prosecuted to a successful conclusion:

### TENNESSEE DRUG DEALER LIABILITY ACT

- <u>Staubus et al., v. Endo Pharmaceuticals, Inc., et al., C-41916 (Circuit Court for Sullivan County at Kingsport, Tennessee) (J. Moody)</u>.  The Firm brought claims on behalf of twenty-seven cities and counties and one child born drug-dependent in upper Northeast Tennessee against numerous prescription drug manufacturers and doctors under the Tennessee Drug Dealer Liability Act due to their participating in an illegal drug market for opioids. Two defendants, Purdue Pharma and Mallinckrodt, declared bankruptcy in during the litigation.  Plaintiffs reached a settlement with doctor defendants, and the remaining manufacturing defendants, Endo Pharmaceuticals, Inc., and Endo Health Solutions, Inc., settled the plaintiffs' claims on the eve of trial for $35 million, representing the largest single recovery against these manufacturer defendants in any opioid-related litigation in the country to that point.

### CONSUMER PROTECTION ACTIONS

- <u>In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,</u> MDL No. 2672 CRB (N.D. Cal.) (J. Breyer).  The Firm serves on the Plaintiffs' Steering Committee in a coordinated action consisting of nationwide-cases of consumer and car dealerships alleging that Volkswagen AG and Volkswagen Group of America, and other defendants illegally installed so-called "defeat devices" in their vehicles which allowed the cars to pass emissions testing but enabled them to emit nearly forty-times the allowable pollution during normal driving conditions.  In October, 2016, the court granted final approval to a settlement fund worth over $10 billion to consumers with 2.0 liter diesel engines, and in May, 2017, the court granted final approval to a $1.2 billion settlement for consumers with 3.0 liter diesel engines, and a $357 million settlement with co-defendant Bosch.

- <u>In re Anthem, Inc. Data Breach Litig., MDL 2617 LHK, (N.D. Cal. 2016)</u>. The firm served as counsel for Plaintiffs in a coordinated action consisting of nationwide-cases of consumer harmed by the 2015 criminal hacking of servers of Anthem, Inc. containing over 37.5 million records on approximately 78 million people receiving insurance and other coverage from Anthem's health plans. The case settled in 2017 for $115 million dollars and has received final approval.

- <u>McKenzie et al. v. Allconnect, Inc., 5:18-cv-00359 (E.D. Ky.) (J. Hood)</u>.  The Firm served as class counsel in an action brought on behalf of over 1,800 current and former employees of Allconnect, Inc., whose sensitive information contained in the W-2 statements was disclosed to an unauthorized third party who sought the information through an e-mail phishing scheme.  After surviving a motion to dismiss and conducting informal discovery, BSJ negotiated a settlement providing for direct cash payments to all class members, credit monitoring and identity theft protection plan at no cost, capped reimbursement of documented economic losses incurred per class member, notice costs, and other remedial measures.  Settlement value was approximately $2.2 million, resulting in one of the largest

7

per capita recoveries in a W-2 phishing litigation and the only that counsel are aware of with direct cash payments to all class members.

- <u>M.S. Wholesale v. Westfax et al., 58CV-15-442 (Circuit Court of Pope County, Arkansas) (J. Sutterfield)</u>.  The Firm served as co-lead counsel on behalf of individuals and entities in a nationwide class action under the Telephone Consumer Protection Act (TCPA) involving the sending of illegal junk facsimiles.  The Court granted final approval to a class settlement worth $5.45 million.

- <u>Horton v. Molina Healthcare, Inc., 4:17-CV-0266-CVE-JFJ (N.D. Okla.) (J. Eagan).</u>  The Firm served as co-lead counsel on behalf of individuals and entities in this national class action under the TCPA regarding the sending of illegal junk facsimiles.  Court granted final approval to a class settlement worth $3.5 million.

- <u>Davis Neurology, P.A. v. Dental Equities LLC, d/b/a Peer United et al.</u>, Case No. 4:16-cv-00371-BSM (E.D. Ark.) (J. Miller).  The Firm served as lead counsel in this nationwide class action brought under the TCPA regarding the sending of illegal junk facsimiles to individuals and business entities. Court finally approved a $1.525 million class-wide settlement.

- <u>Irika Skeete et al. v. RePublic Schools Nashville</u>, No. 3:16-cv-0043 (M.D. Tenn.) (J. Crenshaw).  The Firm was appointed class counsel on behalf of a certified class of individuals having claims under the TCPA who received unsolicited spam texts to their cellular telephones.  The Court approved a $2.2 million settlement, resulting in claimants receiving over one-thousand dollars each in what is believed to be amongst the highest per-claimant TCPA recoveries.

- <u>Heilman et al. v. Perfection Corporation, et al.</u>, Civ. No. 99-0679-CD-W-6 (W.D. Missouri).  The firm served on Executive Committee in a nation-wide consumer class action composed of all owners or purchasers of a hot water heater manufactured by defendants with a defective dip tube.  Settlement reached involved 100% recovery of damages for a possible 14.2 million hot water heaters and any other property damages caused by a defective hot water heater.

- <u>Cox v. Shell Oil et al.</u>, Civ. No. 18844 (Weakley Chancery, Tennessee) (Judge Malon).  Intervened in consumer class action composed of all persons throughout the United States, who owned or purchased defective polybutylene piping systems used in residential constructions or mobile homes. A global settlement was reached that resolved two competing lawsuits that was valued at $1 billion.

- <u>Davidson v. Bridgestone/Firestone, Inc and Ford Motor Co</u> No. 00-C2298 (Davidson Circuit, Tennessee) (Soloman/Brothers).  Lead counsel in a consumer action filed on behalf of a nationwide class of consumers against Bridgestone/Firestone, Inc and Ford Motor Co. that was certified as a nationwide class action concerning defective tires.  Settlement was reached in conjunction with a companion case in Texas.  Settlement was valued at $34.4 million.

- <u>Winsouth Credit Union v. Mapco Express Inc., and Phillips v. Mapco Express, Inc.</u> Case Nos. 3:14-cv-1573 and 1710 (M.D. Tenn.) (J. Crenshaw). The Firm served as Liaison Counsel in consumer class action and financial institution class action stemming from the 2013 hacking of computer systems maintained by Mapco Express, Inc. The cases settled in 2017 for approximately $2 million.

**MASS TORT ACTIONS**

- In re: New England Compounding Pharmacy Product Liability Action, 1:13-md-02419 (D. Mass) (J. Zobel). Serving on the Plaintiffs' Steering Committee, Mr. Gerard Stranch represents hundreds of individuals injured as a result of exposure to tainted pharmaceuticals manufactured at New England Compounding Pharmacy in Framingham, Massachusetts. This litigation stems from the 2012 nationwide outbreak of fungal meningitis that, according to the Center for Disease Control, injured over 750 people nationwide and led to over 60 deaths. Mr. Stranch also serves as lead Tennessee Plaintiffs' Counsel in this case. Over 100 Tennesseans were injured as a result of the catastrophe and 17 Tennesseans lost their lives. Following NECC's bankruptcy, Mr. Stranch was instrumental in guiding settlement of claims against the bankrupt estate that resulted in the creation of a $210 million tort trust. The litigation then turned to litigating the remaining claims against the doctors, clinics, and other healthcare providers that exposed their patients to tainted pharmaceuticals from NECC. The Court determined the first bellwether trials were to be against Tennessee-based defendants. All of the Tennessee cases were settled just prior to the first bellwether trial.

### ERISA AND RELATED CASES (401K, ESOP, TRUST LAW)

- Deschamps v. Bridgestone Americas, Inc. (M.D. Tenn.) (Sharp). Successfully recovered promised pension benefits for long-time Bridgestone employee via summary judgment, which was upheld by the Sixth Circuit Court of Appeals. Both courts published their opinions.

- Ewing et al. v. Neuhoff, et al. (Law and Equity Court, Montgomery County, Tennessee) (Judge Boles). Lead counsel in a class action that resulted in a successful jury verdict against directors of Frosty Morn, Inc. for unlawful activities in running the corporation that directly impacted employee benefit plans. Employees received 100% of their losses.

- In re Providian Financial Corp. ERISA Litigation, No. C 01-5027 (N.D. C.A.) (Breyer). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of the pension plan against fiduciaries of Providian Financial Corp. for violation of ERISA duties. Settlement provided $8.6 million cash payment to the Plan for participants, lifted company stock sales restrictions in the Plan valued between $3.66 million and $5.85 million, and allowed Plan to recover in a parallel securities action.

- In re Montana Power ERISA Litigation, No. 4:02-0099 (D. Mont.) (Haddon). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries of Montana Power, Touch America and Northwestern Energy and against the Trustee, Northern Trust, for violation of duties owed under ERISA. Settlement was reached that provided a minimum recovery of $4.9 million plus access to additional monies held by others.

- In re Nortel Networks Corp. "ERISA" Litigation, No. 3:03-MD-1537 (M.D. Tenn.) (Nixon). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries of Nortel Network Corp. for violation of duties owed under ERISA. Court approved a settlement that provided a minimum recovery of $21.5 Million plus access to additional monies held by others.

- In re: Qwest Savings and Investment Plan ERISA Litigation, No. 02-RB-464, (D. Colo.) (Blackburn). Co-lead counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries at Qwest Communications and the Trustee, Bankers Trust/Deutsche Bank, for violation of duties owed under ERISA. A settlement was reached which provided a $33 million cash payment from Qwest Communications to the Plan for participants, a $4.5 million cash payment from

Bankers Trust/Deutsche Bank to the Plan for participants, a $20 million guarantee from Qwest Communications from a parallel securities action with the opportunity of more cash from the parallel securities action, and an undetermined amount of cash from a distribution through the U.S. Securities and Exchange Commission Fair Fund established pursuant to Section 308 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. §§7201 *et seq*.

- <u>In re Global Crossing Ltd. ERISA Litigation</u>, No. 02 Civ. 7453 (S.D. N.Y.) (Lynch).  One of several counsel in a 401k/ESOP class action suit brought on behalf of pension plan participants against fiduciaries at Global Crossing for violation of duties owed under ERISA.  Settlement reached that provided a $79 million cash payment to the Plan for participants and allowed Plan to recover in parallel securities action.

- <u>In re Xcel Energy, Inc. ERISA Litigation</u> Civ. 02-2677 (D. Minn.) (Doty).  Co-lead counsel in a 401k/ESOP class action suit brought on behalf of the pension plan against fiduciaries of Providian Financial Corp. for violation of duties owed under ERISA.  Settlement reached that provided an $8.6 million cash payment to the Plan for participants, lifted stock restrictions in the Plan with a value between $38 million and $94 million, and allowed the Plan to recover in parallel securities action.

## ANTITRUST CASES

- <u>Dahl v. Bain Capital Partners, LLC,</u> No. 07-cv-1238 (D. Mass) (J. Young). The Firm served on the Executive Committee in this Federal antitrust case challenging bid rigging and market allocation in the private equity/leveraged-buyout industry. The parties reached a $590.5 million settlement approximately two months before trial, and the Court finally approved this settlement in 2015.

- <u>Plumbers & Pipefitters Local 572 Health & Welfare Fund et al. v. Bristol-Myers Squibb Co.</u>, No. 00-C-2524, (Davidson Circuit, Tennessee) (Judge Shipley).  Lead counsel in action against Bristol-Myers alleging violations of the Tennessee Consumer Protection Act and the Tennessee Trades Practice Act and other theories as a result of anti-competitive, unfair and deceptive acts and practices regarding Bristol-Myers' marketing and selling of the drug Taxol.  A global settlement was reached in conjunction with a multi-state indirect companion case in the District of Columbia.

- <u>Sherwood et al. v. Microsoft Corporation</u>, No. 99-C-3562 (Davidson Circuit, Tennessee) (Judge Kurtz).  Lead counsel in a consumer and indirect purchaser Tennessee class action against Microsoft Corporation alleging violation of the Tennessee Consumer Protection Act and the Tennessee Trades Act.  Settlement was reached that was valued at $64 million.

- <u>Lankford v. Dow Chemical et al.,</u> No. 04-1517 (Davidson Circuit, Tennessee) (Judge Shipley).  Lead counsel in a consumer and indirect purchaser class action filed on behalf of Tennessee purchasers of products containing neoprene against Dow Chemical Company, E.I. du Pont de Nemours and DuPont Dow Elastomers LLC alleging violation of the Tennessee Consumer Protection Act and the Tennessee Trades Act.  A multi-state settlement was reached that was valued at $4.2 million.

- <u>In re: Wellbutrin XL Antitrust Litigation</u>, No. 08-2433 (E.D. Penn.) (Judge McLaughlin).  Branstetter, Stranch & Jennings served as Co-Lead counsel in an antitrust class action against pharmaceutical companies GlaxoSmithkline and Biovail on behalf of third-party payors alleging that defendants violated Tennessee, California, Florida, Wisconsin, and Nevada laws by colluding to illegally suppress a cheaper generic form of the blockbuster drug Wellbutrin XL from reaching the market.  Through the efforts of the Firm and other co-lead counsel, plaintiffs were able to achieve certification of a class of

indirect purchasers. Biovail reached a settlement and the remaining claims were resolved in GSK's favor.

- <u>In re: Prograf Antitrust Litigation</u>, No. 11621 (D. Mass) (J. Zobel). Serving in the role of Co-Lead Counsel, Branstetter, Stranch & Jennings represented a putative class of indirect purchaser plaintiffs in a nationwide antitrust action against Astellas Pharma, Inc., alleging that defendant illegally delayed entry of generic Prograf into the marketplace by filing a sham Citizen Petition with the Food and Drug Administration. Achieved partial class certification and withstood motions for summary judgment. The Court granted final approval in November, 2016 to a class-wide settlement award of $13.25 million.

- <u>In re: Skelaxin (Metaxalone) Antitrust Litigation</u>, No. 1:12-cv-194 (E.D. Tenn.) (J. Collier). The Firm was appointed Lead Counsel in an antitrust class action on behalf of end-payors regarding monopoly practices which prevented the sale of generic Skelaxin, a muscle-relaxant prescription drug. The case against defendant Mutual Pharmaceuticals, Inc. was settled on a class basis for a sum total of $9 million, and has been finally approved. The lawsuit against defendant King Pharmaceuticals, Inc. was settled on a non-class basis on behalf of the named plaintiffs.

- <u>In re: Lipitor Antitrust Litigation</u>, No. 3:12-cv-2389 (D.N.J) (J. Sheridan). The Firm serves on the Executive Committee representing a class of end-payors in multidistrict litigation accusing Pfizer of giving Ranbaxy the right to sell generic versions of its blockbuster Lipitor product abroad in exchange for Ranbaxy pulling a patent challenge that could have led to Pfizer losing its exclusivity in the U.S., which imposed supracompetitive prices on the end-payor class. The end-payors were originally dismissed by the district court in 2014, but were revived by the Third Circuit in August 2017. The case is currently in discovery phase.

- <u>In re: Loestrin 24 FE Antitrust Litigation</u>, No. 1:13-md-2472-S-PAS (D.R.I.) (J. Smith). The Firm serves on the Executive Committee of purchasers claiming that Warner Chilcott PLC signed a series of anti-competitive deals with Watson Pharmaceuticals Inc. and Lupin Pharmaceuticals Inc. that settled litigation over Loestrin and another oral contraceptive with a variety of early entry dates and exclusive sales rights. Though initially dismissed by the district court, the First Circuit revived the case in February 2016. The district court rejected the drugmakers' renewed dismissal efforts in August, 2017. End payors moved for class certification.

- <u>In re: Columbia/HCA Healthcare Corporation Billing Practices Litigation</u>, No. 3-98-MDL-1227 (M. D. Tenn.) (Higgins). The firm served as liaison counsel in a multi-district litigation brought on behalf of all third-party payers against Columbia Health Care Corporation/HCA Healthcare Corporation alleging over-billing for services. Settlement was reached on a cash payment, modifications in billing documents and admission practices.

- <u>In re: Effexor Antitrust Litigation</u>, No. 3:11-cv-5661 (D.N.J.) (J. Pisano). The Firm's client serves on the Executive Committee overseeing this end payor antitrust class action against defendants Wyeth Pharmaceuticals, manufacturer of antidepressant medication Effexor XR, and Teva Pharmaceuticals. This lawsuit alleges Defendant Wyeth unlawfully procured the patents underling Effexor XR, filed sham litigation against generic competitors, and then entered into anti-competitive settlement agreement with Teva in order to delay the arrival of generic forms of Effexor XR, causing plaintiffs to pay supracompetitive prices for Effexor XR, when they could have paid for far cheaper generics. The case is currently in the discovery phase.

- In re: Pharmaceutical Industry Average Wholeseale Price Litig., MDL No. 1456, No. 01-cv-12257-PBS (D. Mass). Counsel in a consolidated nationwide class action against pharmaceutical manufacturers, alleging that defendants published fictional Average Wholesale Prices which artificially inflated the prescription drug prices charged to the Firm's clients and other third-party payors throughout the nation. The case was ultimately settled with various defendants for approximately $350 million.

- In re: Metroprolol Succinate End-Payor Antitrust Litigation, No. 06-71 (GMS) (D. Del.) (Judge Sleet). Counsel in an antitrust class action on behalf of end-payors against manufacturers of the brand-name drug Toprol XL. The case was resolved through a settlement totaling $11 million.

- Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company et al. (Doryx Indirect Purchaser Antitrust Action), No. 2:12-cv-03824 (E.D. Penn.) (J. Diamond). The Firm served as counsel in an antitrust class action on behalf of indirect purchasers regarding antitrust conduct committed by the manufacturer of brand drug Doryx. The case was settled on a class basis for $8 million.

## SECURITIES AND SHAREHOLDER DERIVATIVE CASES

- In re: Omnivision Technologies, Inc. Securities Litigation, Civil No. 5:11-cv-05235 (N.D. Cal.). Co-Lead counsel in securities litigation alleging material misstatements in communications with investors related to Omnivision's supplier contract with Apple, Inc. The case was ultimately settled on a class basis for $12.5 million, and was formally approved in 2015.

- Arlow, et al., v. Miller Energy Resources, Inc., Civil No. 3:11-CV-386 (E.D. Tenn.) (Judge Varland). Liason counsel in securities litigation alleging fraudulent accounting practices that overvalued assets and inflated stock prices. The case was ultimately settled and approved for $2.9 million.

- In re: Regions Morgan Keegan Securities, Derivative & ERISA Litigation, Closed-End Fund Litigation, Civil No. 07-cv-02830 (W.D. Tenn.) (Judge Mays). Liason counsel for lead plaintiffs in securities litigation alleging fraud in the marketing and selling of corporate bonds and preferred stocks by failing to disclose investments in asset backed securities and mortgage-backed securities. The parties settled the case for $62 million.

- In re: King Pharmaceuticals, Inc. Derivative Litigation, Civil. No. B0019077 (M) (Sullivan Chancery, Tennessee) (Judge McLellan). Lead counsel in a shareholder derivative action against the Board of Directors and certain officers at King Pharmaceuticals alleging various breaches of fiduciary duty, abuse of control, unjust enrichment and waste of corporate assets. The parties settled the case for substantial and material revisions to the Company's corporate governance practices.

- Carolinas Electrical Workers Retirement Fund v. Kramer et al., Civ. No. H-01-1176 (S.D. TX). Co-lead counsel in a shareholder derivative suit brought on behalf of American General Corporation alleging that its directors breached fiduciary duties in connection with a purposed merger with Prudential Insurance Company. The case was successfully resolved when the merger was cancelled.

- Holle v. Prison Realty, Inc., Case No. 99-1719-III, (Davidson County Chancery) (Chancellor Lyle). Shareholder class action on behalf of shareholders of Prison Realty Trust against its board of directors for breaches of fiduciary duties and self-dealings. Settlement was reached in conjunction with a global settlement of a securities case in federal court.

12

- <u>Brand et al. v. Welch et al.</u>, Case No. 00C-3066 (Davidson County Circuit) (Judge Gayden). Counsel in a shareholder action alleging breaches of fiduciary duties in connection with the merger between Quorum Corporation and Triad. A settlement was reached in which shareholders received greater value for their stock than offered in the original merger.

- <u>Dollar General Derivative Litigation (Dixon et al v. Turner, et al)</u>, Case No. 01C-1322 (Davidson County Circuit, Tennessee) (Judge Shipley). Lead counsel in a shareholder derivative action against directors of Dollar General Corporation alleging breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and gross mismanagement. Settlement of the case included $31.5 million cash payment to the corporation and significant corporate governance changes. The settlement is the largest derivative settlement in Tennessee history.

- <u>Benkler v. Miller et al.</u>, Case No. 00C-2630 (Davidson County, Tennessee) (Judge Soloman). Counsel in a shareholder derivative action against directors of Sirrom Capital Corporation alleging breaches of fiduciary duties in connection with merger between Sirrom Capital Corporation and Finova Financial. A global settlement was reached in conjunction with securities cases that were filed or transferred to Arizona.

- <u>Central Laborers' Pension Fund v. Chellegren</u>, Civ. No. 02-CI-02174 (Kenton Circuit, Kentucky). Settlement in a shareholder derivative action against the Board of Directors and certain officers at Ashland, Inc. relating to accounting practices which harmed the company. The settlement resulted with a cash payment and significant corporate governance changes.

- <u>In re: Clayton Homes Derivative Litigation,</u> Case No. E-19723 (Blount Circuit, Tennessee) (Young). Lead counsel in a shareholder derivative action originally against the Board of Directors and certain officers at Clayton Homes for breaches of fiduciary duties and corporate waste. During the litigation, Clayton Homes was purchased by Berkshire Hathaway. Settlement was reached with shareholders obtaining additional money for their shares of Clayton Homes in the purchase

- <u>National Commerce Financial Shareholder Litigation,</u> CT-002672-04 (Shelby Circuit, Tennessee). Counsel in a shareholder action contesting the value of National Commerce stock in its merger with SunTrust. Settlement was reached.

- <u>Accredo Health Derivative Ligation</u>, Case No. CT-002203-03 (Shelby Circuit, Tennessee) (Judge Fields). Co-lead counsel in a shareholder derivative action against the Board of Directors and certain officers at Accredo Health alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets. Accredo merged during the litigation. Settlement was reached.

- <u>Provident Financial Derivative Litigation</u>, No. C-1-08-168 (S.D. Ohio). Counsel in a shareholder derivative action against the Board of Directors and certain officers at Provident Financial alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets. Settlement was reached.

- <u>In re: Worldcom Securities Litigation</u>, No. 03-27211 (Davidson Chancery, Tennessee) (Judge McCoy). Co-lead counsel in a securities action by the Tennessee Consolidated Retirement System against the banks that underwrote Worldcom bonds during a period of time in which Worldcom was manipulating its accounting. Settlement was reached that provided a recovery to the retirement system of $7 million.

13

- <u>In re: Unumprovident Derivative Litigation</u>, No. 1:02CV-386 (E.D. Tenn.) (Judge Collier). Co-lead counsel in a shareholder derivative action against the Board of Directors and certain officers of UnumProvident alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets. A settlement of this case that involves a payment of $30 million to the company plus significant corporate governance changes has been approved by the court.

- <u>In re: AFC Enterprises Derivative Litigation</u>, Civil No. 1:03-CV-2095TWT (N.D. Ga.) (Thrasher). One of three lead counsel in a shareholder derivative action against the Board of Directors and certain officers at AFC Enterprises alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets resulting from improper accounting practices and insider trading. Settlement was reached which provided for corporate governance changes.

- <u>In re: Dynegy, Inc., Derivative Litigation</u>, Civil No. 2002-25250 (Harris County, Texas) (Jamison). Co-lead counsel in a shareholder derivative action against the Board of Directors and certain officers at Dynegy, Inc. alleging various breaches of fiduciary duty, abuse of control, and waste of corporate assets. Settlement was reached with significant corporate changes and resignation of key officeholders.

- <u>In re: Direct General Corporation Derivative Litigation,</u> Civil No. 3:05-CV-00158 (M.D. Tenn.)(Campbell). Co-lead counsel in litigation against the Board of Directors and certain officers of Direct General Corporation alleging various breaches of fiduciary duty resulting from financial manipulations, insider selling, and misconduct in connection with a proposed private-equity sale of the company. The parties ultimately reached a settlement for additional material disclosures in the proxy materials and a substantial payment to shareholders if the company is sold by the acquiring entity for more than the merger consideration within nine months of the consummation of the private-equity sale.

- <u>In re: Caremark RX, Inc. Stock Option Litigation</u>, Civil No. 06-C-1329 (Davidson County, Tennessee). Co-lead counsel in litigation against the board of directors of Caremark RX, Inc. alleging breach of fiduciary duties resulting from the Board's attempt to merge the company with CVS Corporation, Inc. and extinguish their liability for improperly backdating stock option grants to certain Board members and high-ranking officers at the Company. A settlement was reached that provided for corporate governance reforms concerning the granting of options, additional disclosures to voting shareholders prior to the merger vote, and recognition that the case indirectly resulted in additional compensation to shareholders.

- <u>In re: HCA Inc. Shareholder Litigation</u>, Civil No. 3:05-CV-0968 (M.D. Tenn.) (J. Haynes). Co-lead counsel representing shareholders of Hospital Corporation of America (HCA) Inc., alleging that the company's board of directors breached their fiduciary duties by approving a private-equity buyout of the company at an unfair price via an unfair process. A settlement was reached with provided for enhanced appraisal rights for shareholders, reduced termination fee, a "majority of the minority" provision, and additional material disclosures in the proxy materials.

- <u>Fisk v. Alfa Corporation</u>, Civil No. 03-CV-2007-900485.00 (Montgomery County, Alabama). Co-lead counsel representing shareholders of Alfa Corporation, alleging that the company's board of directors breached their fiduciary duties by engaging in self-dealing and approving a sale of the company to private interests for grossly inadequate consideration. A settlement was reached that resulted in an approximate additional $161 million being paid to the shareholder class.

14

## WAGE & HOUR AND WARN ACT CLAIMS

- <u>Drummond et al. v. C.E.C. Electrical Contractors, Inc.</u>, 98-1811-III (Davidson Chancery, Tennessee) (Chancellor Lyle). Lead counsel in a class action settlement by employees against their employer for wages and benefits due from a school construction contract between their employer and the Metropolitan-Davidson County Board of Education. Settlement reached in which employees received 100% of their wages and benefits.

- <u>Kizer v. Summit Partners</u>, Case No. 1:1-CV-38 (E.D. Tenn.) Counsel in class actions on behalf of employees of a closed Summit Partners facility located in Chattanooga, Tennessee in 2011. Case was successfully settled for $275,000.

- <u>Owens v. Carrier Corp.</u>, Case No. 2:08-2331-SHM P (W.D. Tenn.) Lead Counsel in class action on behalf of former Carrier Corp. employees at plant in Collierville, Tennessee that closed in 2008. Case was successfully settled on behalf of former employees for $2.1 million after Lead Counsel successfully obtained class certification over plaintiffs' WARN Act claims.

- <u>In re Sofa Express Inc.</u>, Case No. 07-924 (Bank. M.D. Tenn.) Lead counsel in class action on behalf of former Sofa Express, Inc. employees at a distribution center and headquarters in Groveport, Ohio in 2007. Case was successfully settled on behalf of former employees for $398,000.

- <u>Robertson et. al v. DSE Inc.</u>, Case No. 8:13-cv-1931-T-AEP (M.D. Fla.). Lead counsel in class action on behalf of former DSE Inc. employees at manufacturing facilities in in Florida and South Carolina. Case successfully settled on behalf of former employees for over $1 million.

- <u>Alfonso Pena et al. v. MR Drywall, LLC et al.</u> 19-CI-007852 (Jefferson Cir. Ct. KY). The Firm successfully resolved a class action for 178 primarily immigrant framers, drywall hangers and finishers who were denied overtime on a hotel project in downtown Louisville, KY. All class members received their full wages and a portion for liquidated damages under the settlement.

## LABOR and EMPLOYMENT CASES

- <u>Thompson v. North American Stainless, L.P.</u>, 562 U.S. 170 (2011). Member David O'Brien Suetholz litigated a Title VII retaliation case for seven years on behalf of the son of a Union pipefitter who was terminated shortly after his fiancé filed an EEOC complaint against their mutual employer. The unresolved question was whether a third party is protected from retaliation solely because of their close relationship with the person engaging in protected activity. After winning at the Sixth Circuit Court of Appeals and losing before the *en banc* Sixth Circuit Court of Appeals the Supreme Court of the United States accepted and resolved the question in favor of the Plaintiff Eric Thompson. Justice Antonin Scalia wrote for the unanimous Court that Title VII prohibits retaliation against closely related third parties because harming loved ones is the oldest and most effective form of retaliation.

- <u>Int'l Brh'd of Teamsters, Local 651 v. Philbeck</u>, 5:10-cv-105-DCR (E.D.KY 2018). Firm successfully litigated action requesting temporary restraining order and permanent injunction by Local Union to secure control of facebook page belonging to the Union.

- <u>Matthew Denholm, RD of NLRB Region 9 v. Smyrna Ready Mix Concrete, LLC</u>, 5:20-cv-320-REW (E.D.KY 2019). Firm successfully litigated NLRB charges culminating in complaint for 10(j) injunctive

relief where federal district court order the reinstatement of seven drivers and their plant manager and the reopening of a concrete plant.

- <u>Zeon Chemicals, L.P. v. UFCW Local 72-D</u>, 949 F.3d 980 (6th Cir. 2020). The Firm successfully appealed a district court's reversal of the Union's arbitration victory for an unjustly terminated member who was ordered reinstated with full back pay.

- <u>Churchill Downs Racetrack LLC v. Laborers Local 576</u>, 2020 WL 6946574 (W.D.KY 2020). The Firm successfully defended an arbitration award that ordered the company to cease subcontracting housekeeping and maintenance work at an off-track facility covered by the contract. The effect of the arbitrator and district court's holding was to increase the size of the Union's bargaining unit by one-third.

- <u>Workforce Development Cabinet v. Gaines</u>, 276 S.W.3d 789 (KY 2008). Member David O'Brien Suetholz successfully appealed to the Kentucky Supreme Court a decision that denied the protection of the public whistleblower protection statute to a state employee who reported waste, fraud or abuse to officials in her own Cabinet. The Supreme Court decision had the effect of expanding whistleblower protections for public employees in Kentucky.

# EXHIBIT 4



## KALIEL GOLD PLLC

Kaliel Gold PLLC was founded in 2017 and is a 100% contingency Plaintiff-side law firm. Our attorneys have decades of combined experience and have secured hundreds of millions of dollars for their clients. Our firm's practice focuses on representing consumers in class action litigation and specifically on cases in the consumer financial services sector. In the four years since our firm was founded, our firm has been appointed lead counsel or co-lead counsel in numerous class action and putative class action lawsuits in state and federal courts nationwide including most recently in *Roberts v. Capital One*, No. 1:16-cv-04841 (S.D.N.Y.); *Walters v. Target Corp.,* No. 3:16-cv-00492 (S.D. Cal.); *Robinson v. First Hawaiian Bank*, Civil No.17-1-0167-01 GWBC (1st Cir. Haw.); *Liggio v. Apple Federal Credit Union*, No. 18-cv-01059 (E.D. Va.); *Morris et al. v. Bank of America, N.A.,* No. 3:18-cv-00157-RJC-DSC (W.D.N.C.); *Brooks et al. v. Canvas Credit Union*, 2019CV30516 (Dist. Ct. for Denver Cnty., Colo.); *Figueroa v. Capital One, N.A.*, Case No. 3:18-cv-00692-JM-BGS (S.D. Cal.); *White v. Members 1st Credit Union*, Case No. 1:19-cv-00556-JEJ (M.D. Pa.); *Plummer v. Centra Credit Union*, Case No. 03D01-1804-PL-001903 (Cnty. Of Bartholomew, Ind.); *Holt v. Community America Credit Union*, Case No. 4:19-cv-00629-FJG (W.D. Mo.); *Trinity Management v. Charles Puckett*, Case No. GCG-17-558960 (Super. Ct., San Francisco Cnty, Cal.); *Martin v. L&N Federal Credit Union.* No. 19-CI-022873 (Jefferson Cir. Ct., Div. One); *Clark v. Hills Bank and Trust Company*, No. LACV080753 (Iowa Dist. Ct. Johnson Cnty.); *Morris v. Provident Credit Union*, Case No. CGC-19-581616 (Super. Ct., San Francisco Cnty., Cal.).

As shown in the biographies of our attorneys and the list of class counsel appointments, Kaliel Gold PLLC is well versed in class action litigation and zealously advocates for its clients. To learn more about Kaliel Gold PLLC, or any of the firm's attorneys, please visit www.kalielgold.com.



**JEFFREY D. KALIEL**

Jeffrey Kaliel earned his law degree from Yale Law School in 2005. He graduated from Amherst College summa cum laude in 2000 with a degree in Political Science, and spent one year studying Philosophy at Cambridge University, England.

Over the last 10 years, Jeff has built substantial class action experience. He has received "Washington D.C. Rising Stars Super Lawyers 2015" recognition.

Jeff has been appointed lead Class Counsel in numerous nationwide and state-specific class actions. In those cases, Jeff has won contested class certification motions, defended dispositive motions, engaged in data-intensive discovery and worked extensively with economics and information technology experts to build damages models. Jeff has also successfully resolved numerous class actions by settlement, resulting in hundreds of millions of dollars in relief for millions of class members.

Currently Jeff is actively litigating several national class action cases, including actions against financial services entities and other entities involved in predatory lending and financial services targeting America's most vulnerable populations.

Jeff's class action successes extend beyond financial services litigation. He seeks to lead cases that serve the public interest. Jeff has worked with nonprofits such as the Humane Society, Compassion Over Killing, and the National Consumers League to fight for truth in the marketplace on food and animal products.

Jeff has over a decade of experience in high-stakes litigation. He was in the Honors Program at the Department of Homeland Security, where he worked on the Department's appellate litigation. Jeff also helped investigate the DHS response to Hurricane Katrina in preparation for a Congressional inquiry. Jeff also served as a Special Assistant US Attorney in the Southern District of California, prosecuting border-related crimes.

Jeff is a former Staff Sergeant in the Army, with Airborne and Mountain Warfare qualifications. He is a veteran of the second Iraq war, having served in Iraq in 2003.

Jeff is admitted to practice in California and Washington, DC, and in appellate and district courts across the country.

Jeff lives in Washington, D.C. with his wife, Debbie, and their three children.



## SOPHIA GOREN GOLD

Sophia Goren Gold is a third-generation Plaintiff's lawyer. A *summa cum laude* graduate of Wake Forest University and the University of California, Berkeley, School of Law, Sophia has spent her entire career fighting for justice.

A fierce advocate for those in need, Sophia's practice centers around taking on financial institutions, insurance companies, and other large corporate interests. Sophia has participated in hundreds of individual and class cases in both state and federal courts across the country. Collectively, she has helped secure tens of millions of dollars in relief on behalf of the classes she represents.

In addition to providing monetary relief, Sophia's extensive litigation experience has resulted in real-world positive change. For example, she brought litigation which resulted in the elimination of the Tampon Tax in the State of Florida, and she was influential in changing the state of Delaware's Medicaid policy, resulting in greater access to life-saving medication.

Sophia is currently representing consumers in numerous cases involving the assessment of improper fees by banks and credit unions, such as overdraft fees, insufficient funds fees, and out of network ATM fees. She is also currently representing consumers who have been the victims of unfair and deceptive business practices.

Sophia is admitted to practice in California and Washington, D.C. When not working, Sophia enjoys spending time with her husband, daughter, and their goldendoodle.

 KalielGold

**BRITTANY CASOLA**

Brittany Casola attended the University of Central Florida in Orlando and graduated in 2012 with a bachelor's degree in Political Science and a minor in Spanish. Brittany earned her Juris Doctorate from California Western School of Law in 2015 and graduated magna cum laude in the top 10% of her class.

Throughout the course of her law school career, she served as a judicial extern to the Honorable Anthony J. Battaglia for the United States District Court, Southern District of California and worked multiple semesters as a certified legal intern for the San Diego County District Attorney's Office. Brittany was awarded Academic Excellence Awards in law school for receiving the highest grade in Trial Practice, Health Law & Policy, and Community Property.

Before joining Kaliel Gold PLLC, Brittany worked as a judicial law clerk for the Honorable Anthony J. Battaglia and as an associate attorney for Carlson Lynch LLP, specializing in consumer complex litigation.



**AMANDA ROSENBERG**

Amanda Rosenberg graduated *cum laude* from the University of California, Hastings College of the Law in 2011 and the University of California, San Diego in 2008, where she earned departmental Honors with Highest Distinction in history.

Before joining Kaliel Gold PLLC, Amanda represented and advised small businesses and financial institutions in litigation matters including employment disputes, merchant disputes, credit and charge card disputes, wrongful foreclosures, and securities. She has successfully litigated cases in California, Illinois, and Michigan.

Amanda is an active volunteer in her community and has helped numerous individuals understand and navigate their rights in the workplace.

In law school, Amanda worked as an extern for the Honorable Judge Vaughn Walker in the United States District Court, Northern District of California. Amanda was awarded academic excellence awards for receiving the highest grades in Trial Advocacy and Litigating Class Action Employment.

When not working, Amanda loves exploring Michigan's outdoors with her husband, kids, and rescue dog.



## CLASS COUNSEL APPOINTMENTS

- *Roberts v. Capital One*, No. 1:16-cv-04841 (S.D.N.Y.);
- *Walters v. Target Corp.,* No. 3:16-cv-00492 (S.D. Cal.);
- *Figueroa v. Capital One, N.A.*, Case No. 3:18-cv-00692-JM-BGS (S.D. Cal.).
- *Robinson v. First Hawaiian Bank*, Civil No.17-1-0167-01 GWBC (1st Cir. Haw.);
- *Brooks et al. v. Canvas Credit Union*, 2019CV30516 (Dist. Ct. for Denver Cnty., Colo.).
- *Liggio v. Apple Federal Credit Union*, Civil No. 18-cv-01059 (E.D. Va.);
- *Morris et al. v. Bank of America, N.A.,* Civil No. 3:18-cv-00157-RJC-DSC (W.D.N.C.);
- *White v. Members 1st Credit Union*, Case No. 1:19-cv-00556-JEJ (M.D. Pa.);
- *Plummer v. Centra Credit Union*, Case No. 03D01-1804-PL-001903 (Bartholomew Cnty., Ind.);
- *Holt v. Community America Credit Union*, Case No. 4:19-cv-00629-FJG (W.D. Mo.);
- *Trinity Management v. Charles Puckett*, Case No. GCG-17-558960 (Super. Ct., San Francisco, Cnty., Cal.);
- *Martin v. L&N Federal Credit Union.* No. 19-CI-022873 (Jefferson Cir. Ct., Division One);
- *Clark v. Hills Bank and Trust Company*, No. LACV080753 (Iowa Dist. Ct. Johnson Cnty.);
- *Morris v. Provident Credit Union*, Case No. CGC-19-581616 (Super. Ct. San Francisco Cnty., Cal.).
- *Bodnar v. Bank of America, N.A.*, 5:14-cv-03224 (E.D. Pa.);
- *In re Higher One OneAccount Marketing and Sales Practice Litigation.*, No. 12-md-02407-VLB (D. Conn.).
- *Shannon Schulte, et al. v. Fifth Third Bank.*, No. 1:09-cv-06655 (N.D. Ill.);
- *Kelly Mathena v. Webster Bank*, No. 3:10-cv-01448 (D. Conn.);
- *Nick Allen, et al. v. UMB Bank, N.A.*, et al., No. 1016 Civ. 34791 (Cir. Ct. Jackson Cnty., Mo.);
- *Thomas Casto, et al. v. City National Bank, N.A.*, 10 Civ. 01089 (Cir. Ct. Kanawha Cnty., W. Va.);
- *Eaton v. Bank of Oklahoma, N.A.*, and *BOK Financial Corporation, d/b/a Bank of Oklahoma, N.A.*, No. CJ-2010-5209 (Dist. Ct. for Tulsa Cnty., Okla.);
- *Lodley and Tehani Taulva, et al., v. Bank of Hawaii and Doe Defendants 1-50*, No. 11-1-0337-02 (Cir. Ct. of 1st Cir., Haw.);
- *Jessica Duval, et al. v. Citizens Financial Group, Inc., et al*, No. 1:10-cv-21080 (S.D. Fla.);
- *Mascaro, et al. v. TD Bank, Inc.*, No. 10-cv-21117 (S.D. Fla.);
- *Theresa Molina, et al., v. Intrust Bank, N.A.*, No. 10-cv-3686 (18th Judicial Dist., Dist. Ct. Sedgwick Cnty., Kan.);
- *Trombley v. National City Bank*, 1:10-cv-00232-JDB (D.D.C.); *Galdamez v. I.Q. Data Internatonal, Inc.*, No. l:15-cv-1605 (E.D. Va.);
- *Brown et al. v. Transurban USA, Inc. et al.*, No. 1:15-CV-00494 (E.D. Va.);
- *Grayson v. General Electric Co.*, No. 3:13-cv-01799 (D. Conn.);
- *Galdamez v. I.Q. Data Internatonal, Inc.*, No. l:15-cv-1605 (E.D. Va.).